## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MSR MEDIA SKN LTD., MSR
HOTELS & CO. LTD., MSR
MEDIA INTERNATIONAL LLC,
and PHILIPPE MARTINEZ

        Plaintiffs,

                  Case No:

LESLIE KHAN, CARIBBEAN
GALAXY REAL ESTATE CORP.,
CARIBBEAN GALAXY REAL
ESTATE LTD., YING JIN,
TIMOTHY HARRIS, DENZIL
DOUGLAS, CARIB TRUST LTD.,
FARON LAWRENCE, ST.
KITTS-NEVIS-ANGUILLA
NATIONAL BANK LTD., and MC
CLAUDE EMMANUEL

        Defendants.

## COMPLAINT AND DEMAND FOR A JURY TRIAL

Plaintiffs MSR Media SKN Ltd., MSR Hotels & Co. Ltd., MSR

Media International, LLC ("MSR Entities"), and Philippe Martinez

(collectively, "Plaintiffs") allege as follows:

## INTRODUCTION

1.     For years, an organized group of individuals and entities,

including some of the most powerful politicians in the Federation of

Saint Christopher and Nevis ("St. Kitts and Nevis" or "SKN") and Saint Lucia ("St. Lucia" or "SLU"), engaged in a scheme to defraud the people of St. Kitts and Nevis and St. Lucia as well as American investors. Members of the enterprise have admitted in recorded conversations illegal and illicit conduct aimed at enriching themselves to the detriment of Plaintiffs and the MSR Entities' American investors.[1] Defendants' conduct not only creates global risk by allowing criminals to obtain visa-free or visa-on-arrival entry to the United States, Europe, and other countries, but also jeopardizes all citizenship by investment ("CBI") programs, which are intended to help build industries and infrastructure and benefit the people of the CBI countries.

2.      The enterprise's scheme centers on the corrupt issue of thousands of valuable St. Kitts and Nevis CBI shares to Defendant Caribbean Galaxy Real Estate Corporation in St. Kitts and Nevis and Citizenship by Investment Programme ("CIP") shares to Defendant Caribbean Galaxy Real Estate Limited in St. Lucia (together "Caribbean Galaxy").  Caribbean Galaxy is a Chinese real estate

---

[1]      All references to recorded conversations and recordings obtained by Plaintiffs were legally obtained in accordance with the law of the country in which the recording was obtained or recorded.

development firm who, together with corrupt SKN and SLU officials, manipulated the U.S. banking system in order to perpetuate the sale of these citizenship shares at prices that were a fraction of the legal rate under the laws of St. Kitts and Nevis and St. Lucia and represented to good-faith international investors, including Plaintiffs and the MSR Entities' American investors. Plaintiffs and their investors expected to realize their substantial investments in the economy of St. Kitts and Nevis by participating in an open and transparent citizenship marketplace but have been precluded from doing so as a result of the corrupt conduct of Defendants and their co-conspirators. These Defendants and co-conspirators include two former Prime Ministers of St. Kitts and Nevis, the former head of the St. Kitts and Nevis Citizenship by Investment Unit ("CIU"), the head of the St. Lucia CIP program, and the National Bank of St. Kitts and Nevis. It is Plaintiffs' belief that the value of the fraud and corruption perpetrated by Defendants and their co-conspirators in connection with St. Kitts and Nevis alone, carried out over more than a decade, is greater than USD $1 billion—an unforgivable theft from the people of St. Kitts and Nevis

as well as the local and international investors who have sought to support the development of the country.

3.     Each member of the enterprise profited from the sale of CBI shares, known colloquially as "golden passports," and the execution of an improper discounting and financing scheme.  As a result of corruption within the CIU, the government of St. Kitts and Nevis granted an unprecedented number of 5,500 CBI shares representing as many as 22,000 passports to Chinese company Defendant Caribbean Galaxy to be sold in an international marketplace for such shares. Defendant Caribbean Galaxy then sold these CBI shares for substantially lower prices than what was legally mandated.  Defendant Timothy Harris, the former Prime Minister and a current Member of Parliament in St. Kitts and Nevis, and Defendant Leslie Khan, the former head of the CIU, conspired with Defendant Caribbean Galaxy to bypass certain standard CBI requirements, including a requirement to hold CBI funds in escrow in St. Kitts and Nevis.  Defendant Caribbean Galaxy also influenced Defendant Khan to allow the mandatory due diligence on CBI applicants to be conducted by a Chinese company selected by Defendant Ying Jin, who served as Defendant Caribbean

Galaxy's CEO, which Defendant Khan admitted in a recorded conversation.  Similarly in St. Lucia, Defendant Caribbean Galaxy sold—and continues to sell—CIP shares significantly below the statutory amount.  As in St. Kitts and Nevis, in St. Lucia all due diligence on potential CIP applicants is performed by foreign due diligence companies.  As a result, thousands of individuals from China and other countries were granted SKN and SLU passports with questionable due diligence from a Chinese due diligence company, allowing for Defendants to profit from the sale of each CBI share.  This corruption represents a national security risk to the United States and other countries, as these countries face considerable challenges in tracking individuals attempting to travel with these passports. Plaintiffs believe that these underpriced and discounted passports were unlawfully obtained, should be revoked, and Defendant Caribbean Galaxy should return all ill-gotten gains from this scheme to the relevant countries in order to ensure the continued validity and efficiency of citizenship by investment programs.[2]  More importantly for

---

[2]    Plaintiffs' legal counsel in St. Kitts and Nevis is currently pursuing such revocation in the proper forum in tandem with this Complaint.

purposes of this proceeding, Plaintiffs and other U.S. investors were defrauded by this scheme, and Defendants capitalized on loopholes in the U.S. banking system in order to launder the proceeds of their fraud.

4.    Caribbean Galaxy transferred illicit proceeds from each sale back to government officials in St. Kitts and Nevis, including Defendants Khan, Harris, and Douglas.  On information and belief, these officials used these proceeds to enrich themselves and purchase, *inter alia*, real estate in the United States, Europe, and Dubai, and luxury goods.

5.    Material aspects of this scheme occurred by manipulating the U.S. banking system.  Defendant National Bank processed transactions under the scheme as the primary CBI bank in St. Kitts and Nevis.  Indeed, St. Kitts and Nevis bank personnel were aware of the illegal discounting and underselling and were involved in processing CBI shares in their personal capacity while also acting as representatives of Defendant National Bank.  National Bank received the funds obtained through this illegal scheme from U.S. bank accounts in U.S. dollars ("USD") and moved proceeds of the illicit transactions into and out of the United States though correspondent accounts for the

benefit of other members of the enterprise. National Bank maintained a correspondent bank account with Bank of America so that all transactions in USD could be routed in and out of St. Kitts and Nevis to/from the United States, Dubai, Europe, China, and elsewhere. At the same time, Defendant Carib Trust and its operator, Defendant Lawrence, held Caribbean Galaxy's CBI funds in an escrow account in St. Kitts and Nevis. This scheme is not limited to the National Bank in St. Kitts and Nevis. In St. Lucia too, the payment for every single CIP application is conducted in USD and is statutorily required to be processed by an authorized St. Lucian agent.

6.    The scheme was illegal in St. Kitts and Nevis because under the law, only applicants who purchased CBI shares for at least USD $175,000 were eligible to apply for citizenship. However, as was well known to the Defendants and other enterprise members, the shares were sold for a fraction of that amount, and the applications were nevertheless and fraudulently submitted to the CIU of St. Kitts and Nevis for processing and ultimate issue of passports to the applicants who were not eligible under St. Kitts and Nevis to receive those passports.

7.     Plaintiff Martinez, who is a U.S. resident, and his domestic and international companies under the MSR umbrella as well as their American investors entered the CBI industry in St. Kitts and Nevis and made investments in the country based on the understanding that the industry was in place to benefit the people of St. Kitts and Nevis and build up the tourism and other industries and infrastructure of the country—not to benefit a Chinese company or enrich the country's officials.  This understanding was in part caused by misleading statements made to Mr. Martinez and MSR's American investors by several Defendants named here in order to encourage the Plaintiffs' investment in the CBI program.  The corruption, discounting and financing, and other acts of the enterprise significantly undercut the market value in the U.S. (a target market for Plaintiffs) and elsewhere of the CBI shares that were granted to Plaintiffs by the government of St. Kitts and Nevis as "Approved Public Benefactors."

8.     The current government of St. Kitts and Nevis has known about the scheme and failed to take appropriate action to stop the continued corruption.  The current Attorney General, Garth Wilkin, even observed that Defendant Caribbean Galaxy sold CBI shares for

well below the statutory amount at an extremely high volume, resulting in at least USD $60 million in revenue from the sale of CBI shares associated with their construction of a national jail ("Jail Project"). He also stated the actions of Defendants Harris and Caribbean Galaxy represented a "good scam."



*Screenshot of conversation between Attorney General Garth Wilkin (messages with white background) and an MSR advisor, Dwyer Astaphan (message with green background), discussing Defendant Caribbean Galaxy's scam, received by Plaintiffs on August 14, 2023.[3]*

---

[3]     The full relevant portion of the conversation between Mr. Astaphan and Attorney General Wilkin is attached as Exhibit 1.

9.    Similarly in St. Lucia, the current government has known about the scam for years.  In 2019, when he was a member of the opposition party, co-conspirator Ernest Hilaire publicly stated his concerns about allowing Defendant Caribbean Galaxy to operate in St. Lucia considering the issues the company had in completing projects in St. Kitts and Nevis.  Yet, once he was elected as Deputy Prime Minister, Mr. Hilaire not only did nothing to stop Caribbean Galaxy but encouraged their participation in the CIP program and continues to allow them to undersell the CIP shares and defraud the international market to the detriment of the people of St. Lucia and the international citizenship by investment market.

10.    Plaintiffs are aware that Defendant Caribbean Galaxy is perpetrating the same scheme in St. Lucia with the support of St. Lucian officials, including Defendant Emmanuel and co-conspirator Hilaire.  Defendant Caribbean Galaxy sells CIP shares significantly below the statutory price set by the government of St. Lucia.  In order to perpetuate this scheme, Defendant Caribbean Galaxy requires all sales of its CIP shares to be conducted using its preferred local agents.

11.    In response to the enterprise's criminal scheme, material aspects of which were perpetrated through the U.S. financial system, and a portion of which was directed at the United States and harmed Plaintiffs in the United States as well as American investors, Plaintiffs now bring this action under the Racketeering Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961, *et seq.*  The enterprise's efforts to conceal its criminal conduct included the commission of numerous predicate acts under RICO, including money laundering, conspiracy to commit money laundering, and fraud.  Allegations made in this Complaint have been substantiated by documentary evidence in Plaintiffs' possession, including recorded conversations with Defendants and co-conspirators.  Upon information and belief, bank records available in the United States and elsewhere will further document the corruption, money laundering and fraud.

12.    Due to the corruption and Caribbean Galaxy's discounting scheme, the MSR Entities are unable to sell any citizenships in the United States and elsewhere or otherwise participate in the corrupt Caribbean CBI market because Plaintiffs are unwilling to illegally discount the price and participate in the corrupt scheme.  In the

meantime, Plaintiffs have accrued (and continue to accrue) interest on loans from American investors who, along with Plaintiffs, were misled by Defendants into believing that MSR would be investing in a fair and reputable CBI program.

13.    As alleged in further detail below, Plaintiffs have suffered significant and direct harm in the United States from these predicate criminal acts.  That harm, which includes the lost value of the MSR Entities' 600 citizenship shares valued at USD $150 million and millions of dollars in interest on financing that the MSR Entities incurred because they were unable to realize their investments, was foreseeable and intended by the enterprise.  Plaintiffs are therefore entitled to recover treble damages from the Defendants and to other relief for the harm they have suffered at the hands of the enterprise as a result of this scheme.

## PARTIES

### Plaintiffs

14.    MSR Media SKN Limited ("MSR Media SKN") is a film production company that produces and films movies in the Federation of Saint Christopher and Nevis ("St. Kitts and Nevis" or "SKN").  MSR Media SKN employs local Kittitians and Nevisians and provides on-the-job training in an expanding local film industry.  MSR Media SKN is incorporated in St. Kitts and Nevis and is registered to do business and headquartered at Unit #5, Long Stone House, Main Street, Charlestown, Nevis.

15.    MSR Hotels & Co. Limited ("MSR Hotels") owns and operates MSR Hotels – Saint Kitts.  MSR Hotels serves as the headquarters of MSR Media's Caribbean film production operation and is the epicenter of the film industry in St. Kitts and Nevis.  MSR Hotels is incorporated in St. Kitts and Nevis and is registered to do business and headquartered at Unit #5, Long Stone House, Main Street, Charlestown, Nevis.  MSR Hotels purchased the former OTI Hotel on the island of St. Kitts at the suggestion of Defendant Khan and on the insistence of Prime Minister Terrance Drew and then-Chairman of the

Board of Directors of the CIU Sylvester Anthony. Prime Minister Drew told Plaintiffs that it was crucial to the country for MSR to purchase the hotel.

16.    MSR Media International, LLC ("MSR Media International") is a dynamic international sales company focusing on commercial feature films and television series for audiences around the world. MSR Media International has served as an international distributor of all ten of the movies that have been filmed in the St. Kitts and Nevis. MSR Media International is incorporated in Delaware and registered to do business and headquartered at 100 Second Avenue South, Suite 706 S, St. Petersburg, Florida 33701.

17.    Philippe Martinez is a U.S. resident and successful film producer with a primary place of business in Florida. Martinez has produced over sixty (60) successful movies in over thirty (30) years in the movie business. Martinez founded MSR Media SKN and MSR Hotels to bring the film industry to St. Kitts and Nevis. Martinez currently maintains a place of business at 100 Second Avenue South, Suite 706 S, St. Petersburg, Florida 33701.

**RICO Defendants**

18.    Defendant Leslie Khan ("Khan") is currently the Chief Executive Officer ("CEO") of International Operations of Galaxy Group, a Chinese real estate development company.  Khan was the CEO of the St. Kitts and Nevis CIU from approximately August 2016 to approximately January 1, 2023.  Khan was reportedly asked to resign from his position at the CIU by the then-incoming administration of Prime Minister Terrance Drew due to concerns about corruption.  Khan tendered his resignation on December 5, 2022, and his resignation was effective on January 1, 2023.  Subsequently, Khan began working at Galaxy Group in January 2023.  Khan is a U.S. citizen with a place of residence at 16405 Avila Boulevard, Tampa, Florida 33613.  Khan also recently purchased property at 5521 15th Avenue South, Gulfport, Florida 33707, on or around October 7, 2022.  Khan previously owned property at 1207 Seabrook Avenue, Cary, North Carolina 27511, which was sold recently, on or around January 15, 2023.

19.    Defendant Caribbean Galaxy Real Estate Corporation ("Caribbean Galaxy SKN") is a Chinese real estate development company registered in St. Kitts and Nevis, located at Building 21, Porte

Zante, Basseterre, St. Kitts. Caribbean Galaxy SKN has been awarded several projects by the Government of St. Kitts and Nevis in exchange for citizenship shares under the country's CBI program, including the construction of the Ramada by Wyndham St. Kitts Resort in St. Pauls, St. Kitts ("Ramada Hotel"), as well as the construction of a national jail. Caribbean Galaxy SKN at one point controlled up to 90% of the CBI market in St. Kitts and Nevis and has provided cash payments to Defendants Harris, Khan, and Douglas associated with the sale of CBI shares awarded under Harris's administration and Douglas's administration. Caribbean Galaxy SKN and its parent company, Galaxy Group, also carry out real estate development projects in St. Lucia.

20.    Defendant Caribbean Galaxy Real Estate Limited ("Caribbean Galaxy SLU") is a Chinese real estate development company incorporated in St. Lucia, located at TaylorMarc Court, Rodney Bay, Gros Islet, St. Lucia. The sole director of Caribbean Galaxy SLU is Defendant Ying Jin, who also owns 100% of the shares of the company.

21.     Defendant Ying Jin is the former CEO of Caribbean Galaxy, having served in this position until recently.  Ying Jin, who is also known as "Bianca," has maintained close relationships with current and former high-ranking members of the government of St. Kitts and Nevis, including Defendant Khan.  In September 2022, Ying Jin was an official guest of the delegation of the government of St. Kitts and Nevis to the United Nations General Assembly invited by Defendant Douglas. Defendant Khan has admitted in a recorded conversation that it is "possible" Defendant Ying Jin "could be" an operative for a Chinese intelligence agency.  Ying Jin is a Chinese citizen currently residing in St. Pauls, St. Kitts.  Ying Jin frequently spends time and conducts business in the United States and maintains a residence in California.

22.     Defendant Timothy Harris ("Harris") is a Member of Parliament in St. Kitts and Nevis and was Prime Minister of St. Kitts and Nevis from February 2015 until August 2022.  During his time as Prime Minister, Harris used his position to benefit Defendant Caribbean Galaxy in order to corruptly enrich himself.  By accepting bribes, Harris exceeded his authority as Prime Minister and acted contrary to his obligations to St. Kitts and Nevis.  In August 2022,

17

Harris lost his position as Prime Minister after an election campaign that focused on concerns about corruption involving the conduct of Harris, the CIU, and Defendants Khan and Caribbean Galaxy SKN. Harris is a citizen and resident of St. Kitts and Nevis and resides in Tabernacle, St. Kitts.

23.    Defendant Denzil Douglas is the current Minister of Foreign Affairs of St. Kitts and Nevis.  Douglas was Prime Minister of St. Kitts and Nevis from 1995 to 2015.  In a video recording, Defendant Khan identified Defendant Douglas as a silent partner of CS Global and assisting co-founder Gurdip "Dev" Bath in founding CS Global, a United Kingdom-based company that serves as St. Kitts and Nevis's exclusive CBI marketer and which receives a fee for the marketing services for every single CBI share sold in the country.  According to Defendant Khan in a video recording, Douglas allowed Defendant Caribbean Galaxy's fraudulent application for passports to continue when the Drew administration was elected because, according to Khan, CS Global receives USD $5,000 per application and Douglas was a silent partner. Additionally, Khan alleges that both Defendants Douglas and Harris received major cash payments delivered by Defendant Faron Lawrence

on behalf of Caribbean Galaxy.  Douglas acted contrary to his duties as
Foreign Minister by allowing this scheme to occur in order to enrich
himself through CS Global, which received a fee for every one of the
thousands of CBI shares sold by Defendant Caribbean Galaxy.  In order
to continue receiving these payments, Douglas turned a blind eye to the
underselling by Caribbean Galaxy in violation of St. Kitts and Nevis
law.  Douglas is a citizen and resident of St. Kitts and Nevis and resides
at 858 Frigate Bay Road, Frigate Bay, St. Kitts and Nevis.

24.    Defendant Carib Trust Limited ("Carib Trust") is a Limited
Liability Company registered in St. Kitts and Nevis authorized to carry
on an unrestricted trust business, including the provision of services
related to undertaking or executing trusts, providing trustees or
protectors for trusts, maintaining the office of services of trusts, and
managing or administering trusts. Carib Trust holds funds used to
purchase St. Kitts and Nevis passports in trust, or escrow, pursuant to
government regulations.  Defendant Carib Trust was Defendant
Caribbean Galaxy's escrow agent for the Ramada Hotel project and
assisted Defendant Caribbean Galaxy in executing its illegal "round
robin" scheme.  Defendant Khan has expressed concern to Plaintiffs

that if a foreign investigation took place of Carib Trust's books and records, the entire "round robin" scheme, whereby Caribbean Galaxy uses a single escrow payment for multiple passport sales, would be discovered.  Nevertheless, when Plaintiffs entered the St. Kitts and Nevis CBI market, Defendant Khan told Plaintiffs and the MSR Entities' local lawyer in St. Kitts and Nevis to use Defendant Carib Trust if they wanted to sell cheaper passports and execute a similar corrupt scheme as Defendant Caribbean Galaxy.

25.    Defendant Faron Lawrence operates Defendant Carib Trust. Defendant Lawrence organized and executed the "round robin" scheme for Caribbean Galaxy' Ramada Hotel project.  Defendant Lawrence also acted as a courier for cash bribe payments from Defendant Caribbean Galaxy to Defendants Harris and Douglas.  Mr. Lawrence resides in Frigate Bay, St. Kitts and Nevis.

26.    Defendant St. Kitts-Nevis-Anguilla National Bank Limited ("National Bank") is a financial institution headquartered at Central Street, Basseterre, St. Kitts and Nevis.  National Bank receives and processes USD associated with the CBI program in St. Kitts and Nevis. National Bank also acts as an escrow agent for the CBI program and is

uniquely situated to determine whether a CBI vendor and/or the government of St. Kitts and Nevis has received complete fees specified under regulation or contract for each CBI application. For years—and particularly under the leadership of its former Chairman Alexis Nisbett—National Bank repeatedly failed to carry out its duty to verify that full and complete legal price of the CBI shares, including mandatory due diligence fees owed to the government of St. Kitts and Nevis, were actually paid for each CBI share. National Bank knew of the underselling and discounting scheme because National Bank officials, including Mr. Nisbett, are involved in the processing of CBI shares in St. Kitts and Nevis. The government of St. Kitts and Nevis is the majority shareholder in the National Bank. The National Bank is licensed by the Eastern Caribbean Central Bank. The National Bank is a foreign bank maintaining a correspondent account with a U.S. bank, certified pursuant to 31 U.S.C. §§ 5318(j) and (k) on April 18, 2017. Pursuant to such certification, the National Bank has authorized the following process agent in the United States: Corporation Company of Miami, 201 South Biscayne Boulevard, Suite 1600, Miami, Florida 33131.

27.    Defendant Mc Claude Emmanuel is the CEO of the CIP program in Saint Lucia.  Mr. Emmanuel was appointed as CEO in March 2022 and has served in this role since that time.  Defendant Emmanuel has allowed Defendant Caribbean Galaxy to conduct a similar discounting scheme involving the CIP program in St. Lucia. Defendant Emmanuel resides in Caribelle Gardens, Castries, St. Lucia.

28.    Collectively, the RICO Defendants are referred to as "Defendants."

**Non-Party Conspirators and Members of the Enterprise**

29.    The Enterprise also includes individuals and business entities who are not named as parties here.  These members played important roles in the affairs of the Enterprise, including participation in the corrupt scheme to profit from the sale of St. Kitts and Nevis passports under the country's CBI program.  These individuals and entities include among others:

    a. Sylvester Anthony ("Anthony") is the former Chairman of the Board of Governors of the CBI program.  Prior to becoming Chairman of the CBI Board of Governors in January 2023, Anthony was an advisor to the Douglas

Administration and attorney for the Labour Party in St. Kitts and Nevis.  Upon becoming Chairman of the Board of Governors, Anthony oversaw the processing of hundreds of CBI applications for Defendant Caribbean Galaxy.  Despite Plaintiffs' efforts to inform Anthony of corruption within the CBI program both prior to and after his appointment as Chairman, Anthony refused to support a criminal investigation into Plaintiffs' allegations in St. Kitts and Nevis and has proceeded to process the applications despite knowledge of the corruption and fraud.  Even after being informed of the corrupt discounting scheme, Anthony continued to honor the contract between Caribbean Galaxy and St. Kitts and Nevis.

b.  Ernest Hilaire has served as the Deputy Prime Minister of Saint Lucia since January 2022 and the Minister for Tourism, Investment, Creative Industries, Culture and Information since August 2021.  Mr. Hilaire also serves as a Member of Parliament in Saint Lucia for Castries South.  In an audio recording, Defendant Emmanuel accuses Deputy

23

Prime Minister Hilaire of managing the relationship with Defendant Caribbean Galaxy on behalf of the St. Lucia government and allowing Caribbean Galaxy to conduct the illegal scheme in St. Lucia.

## JURISDICTION AND VENUE

30.    This Court has subject matter jurisdiction over Plaintiffs'

claims under 18 U.S.C. §§ 1964(c).

31.    Further, this Court has federal question jurisdiction over the

subject matter of these claims pursuant to 28 U.S.C. § 1331.

32.    This Court also has supplemental jurisdiction of Plaintiffs'

state law claims pursuant to 28 U.S.C. § 1367(a) because all claims

alleged herein are part of a uniform pattern and practice and form part

of the same case or controversy.

33.    Venue is proper in this District under 18 U.S.C. § 1965(a)

because Defendant Khan resides and can be found in this District.

34.    Personal jurisdiction exists over Defendant Khan under 18

U.S.C. § 1965(a) because:

    a. Khan resides in this District at 16405 Avila Boulevard,

       Tampa, Florida 33613 and/or at 5521 15th Avenue South,

       Gulfport, Florida 33707; and

    b. Khan can be found (*i.e.,* served) in this District.

35.    The exercise of personal jurisdiction over Defendant

Caribbean Galaxy SKN is proper under Federal Rule of Civil Procedure

4(k)(2) because Caribbean Galaxy SKN engaged in conduct in and directed at the United States that gives rise in part to Plaintiffs' claims, including:

    a. Conducting business in the United States by executing corrupt CBI transactions in USD that were transferred through a U.S. intermediary bank, including Bank of America in Miami, Wells Fargo in Miami, BNY Mellon in Miami, and JP Morgan Chase in Miami, with such funds originating in Caribbean Galaxy SKN's USD-denominated account at Hong Kong-based Hang Seng Bank Limited, transferred through either Bank of America, Wells Fargo, BNY Mellon, JP Morgan Chase, or Standard Chartered Bank, and deposited in Caribbean Galaxy SKN's business account at Defendant National Bank;

    b. Caribbean Galaxy SKN directed its business at the United States by selling CBI shares in the United States, including through U.S.-based servicers;

    c. The then-CEO of Caribbean Galaxy SKN, Ying Jin, attended the United Nations General Assembly in New York in

September 2022 as an official guest of the government of St.

Kitts and Nevis based on the close relationship Ying Jin

developed with St. Kitts and Nevis officials through

Caribbean Galaxy's participation in the country's CBI

program; and

d. There is no other forum that Caribbean Galaxy SKN would

be amenable to suit in the United States.

36.    Defendant Caribbean Galaxy SKN's conduct was directed at

Plaintiffs in the United States.

37.    The exercise of personal jurisdiction over Defendant

Caribbean Galaxy SLU is proper under Federal Rule of Civil Procedure

4(k)(2) because Caribbean Galaxy SLU engaged in conduct in and

directed at the United States that gives rise in part to Plaintiffs' claims,

including:

a. Conducting business in the United States by executing

corrupt CIP transactions in USD that were, on information

and belief, transferred through a United States intermediary

bank, either Bank of America in Miami, Wells Fargo in

Miami, BNY Mellon in Miami, and JP Morgan Chase in

Miami, with such funds originating in Caribbean Galaxy

SLU's USD-denominated account, and deposited in

Caribbean Galaxy's business account at National Bank;

b. Caribbean Galaxy SLU directed its business at the United

States by selling CIP shares in the United States, including

through U.S.-based servicers; and

c. There is no other forum that Caribbean Galaxy SLU would

be amenable to suit in the United States.

38.    Defendant Caribbean Galaxy SLU's conduct was directed at

Plaintiffs in the United States.

39.    The exercise of personal jurisdiction over Defendant Ying Jin

is proper under Federal Rule of Civil Procedure 4(k)(2) because Ying Jin

engaged in conduct in the United States that gives rise in part to

Plaintiffs' claims, including:

a. Conducting business in the United States on behalf of

Defendant Caribbean Galaxy by executing corrupt CBI

transactions in USD through a U.S. intermediary bank,

either Bank of America in Miami, Wells Fargo in Miami,

BNY Mellon in Miami, and JP Morgan Chase in Miami, with

28

such funds originating in Defendant Caribbean Galaxy's USD account at Hong Kong-based Hang Seng Bank Limited, transferred through either Bank of America, Wells Fargo, BNY Mellon, JP Morgan Chase, or Standard Chartered Bank, and deposited in Defendant Caribbean Galaxy's business account at National Bank;

b. Defendant Ying Jin conducted business related to the enterprise during the entire period at issue, including, on information and belief, from New York City and California; and

c. There is no other forum that Ying Jin would be amenable to suit in the United States.

40.    Defendant Ying Jin's conduct was directed at Plaintiffs in the United States.

41.    The exercise of personal jurisdiction over Defendant Harris is proper under Federal Rule of Civil Procedure 4(k)(2) because Harris engaged in conduct in the United States that gives rise in part to Plaintiffs' claims, including:

a. Attending meetings in the United States between representatives of the government of St. Kitts and Nevis, Defendant Khan, and the official CBI program marketer for St. Kitts and Nevis to discuss the scheme;

b. Receiving bribes from Defendant Caribbean Galaxy, in exchange for favorable treatment under the CBI program, apportioned from USD-denominated funds that were transferred to Defendant Caribbean Galaxy's business account with National Bank through an intermediary U.S. bank, including Bank of America in Miami, Wells Fargo in Miami, BNY Mellon in Miami, and/or JP Morgan Chase in Miami;

c. Defendant Harris conducted business related to the enterprise during the entire period at issue, including from New York City;

d. Defendant Harris acted contrary to his duties as a government official of St. Kitts and Nevis through his participation in this scheme outlined herein; and

e. There is no other forum that Harris would be amenable to suit in the United States.

42.     Defendant Harris's conduct was directed at Plaintiffs in the United States.

43.     The exercise of personal jurisdiction over Defendant Douglas is proper under Federal Rule of Civil Procedure 4(k)(2) because Douglas engaged in conduct in the United States that gives rise in part to Plaintiffs' claims, including:

a. Bringing Defendant Caribbean Galaxy into the St. Kitts and Nevis CBI marketplace, which impacted the ability of American investors, such as Plaintiffs, to realize their investment in the CBI program;

b. Accepting a fee in USD for every CBI share sold through CS Global according to Defendant Khan;

c. Defendant Douglas conducted business related to the enterprise during the entire period at issue, including from New York City;

d. Defendant Douglas acted contrary to his duties as a government official of St. Kitts and Nevis through his participation in this scheme outlined herein; and

e. There is no other forum that Douglas would be amenable to suit in the United States.

44. Defendant Douglas's conduct was directed at Plaintiffs in the United States.

45. The exercise of personal jurisdiction over Defendant Carib Trust is proper under Federal Rule of Civil Procedure 4(k)(2) because Carib Trust engaged in conduct in and directed at the United States that gives rise in part to Plaintiffs' claims, including:

a. Defendant Carib Trust directed business at the United States by providing CBI consultation services for clients seeking to obtain access to the United States under a B-1/B-2 visa, including by holding a St. Kitts and Nevis passport;

b. Defendant Carib Trust conducted business related to the enterprise during the entire period at issue; and

c. There is no other forum that Carib Trust would be amenable to suit in the United States.

32

46.     Defendant Carib Trust's conduct was directed at Plaintiffs in the United States.

47.     The exercise of personal jurisdiction over Defendant Lawrence is proper under Federal Rule of Civil Procedure 4(k)(2) because Lawrence engaged in conduct in and directed at the United States that gives rise in part to Plaintiffs' claims, including:

a. Defendant Lawrence, through his business Carib Trust, directed business at the United States by providing CBI consultation services for clients seeking to obtain access to the United States under a B-1/B-2 visa, including by holding a St. Kitts and Nevis passport;

b. Defendant Lawrence acted as a courier of cash payments made by Defendant Caribbean Galaxy to Defendants Harris and Douglas to ensure that Caribbean Galaxy was able to undersell its CBI shares to potential buyers;

c. Defendant Lawrence conducted business related to the enterprise during the entire period at issue; and

d. There is no other forum that Lawrence would be amenable to suit in the United States.

33

48.    Defendant Lawrence's conduct was directed at Plaintiffs in the United States.

49.    The exercise of personal jurisdiction over Defendant National Bank is proper under Federal Rule of Civil Procedure 4(k)(2) because National Bank engaged in conduct in and directed at the United States that gives rise in part to Plaintiffs' claims, including:

a. Conducting business in the United States by transacting USD-denominated funds associated with corrupt CBI transactions to and from intermediary U.S. banks, including Bank of America in Miami, Wells Fargo in Miami, BNY Mellon in Miami, and JP Morgan Chase in Miami, on behalf of Defendant Caribbean Galaxy, which maintains its business account at National Bank;

b. Failing to conduct proper due diligence and comply with the law, including failing to verify that the correct amount of funds were transferred into its accounts in connection with each CBI transaction, allowing thousands of passports to be granted to individuals who may represent a threat to the national security of the United States;

c.  National Bank has appointed Corporation Company of Miami as an agent for service of process in the United States located at 201 South Biscayne Blvd., Suite 1600, Miami, Florida 33131;

d.  Defendant National Bank participated as a commercial actor in the scheme outlined herein; and

e.  There is no other forum that National Bank would be amenable to suit in the United States.

50.    Defendant National Bank's conduct was directed at Plaintiffs in the United States.

51.    The exercise of personal jurisdiction over Defendant Emmanuel is proper under Federal Rule of Civil Procedure 4(k)(2) because Emmanuel engaged in conduct directed at the United States that gives rise in part to Plaintiffs' claims, including:

a.  Defendant Emmanuel conducted business related to the enterprise during the entire period at issue, including promoting the St. Lucia CIP program to investors in the United States on several occasions, including in New York and Miami, as recently as 2023;

35

b. Defendant Emmanuel acted contrary to his duties as a government official of St. Kitts and Nevis through his participation in this scheme outlined herein; and

c. There is no other forum that Emmanuel would be amenable to suit in the United States.

52. Defendant Emmanuel's conduct was directed at Plaintiffs in the United States.

53. Defendants have derived substantial financial benefit by conducting business in the State of Florida, including through the use of a branch of Bank of America, Wells Fargo, BNY Mellon, and JP Morgan Chase located in Miami, Florida.

## FACTUAL ALLEGATIONS

## I.    St. Kitts and Nevis Citizenship by Investment Program

54.    Established in 1984, the St. Kitts and Nevis Citizenship by Investment ("CBI") Program offers citizenship to individuals in exchange for investment in the country.  St. Kitts and Nevis law requires strict due diligence in compliance with national and international standards.  The CBI program helps to fund community-focused projects that drive economic growth for local people and investors.  The St. Kitts and Nevis CBI program represents a significant portion of the annual gross domestic product ("GDP") of the country—at least 30%, and up to 60%, of the total GDP.  St. Kitts and Nevis has granted over 50,000 passports through its CBI program.

55.    A successful CBI application affords individuals citizenship in St. Kitts and Nevis as well as a St. Kitts and Nevis passport, which confers visa-free or visa-on-arrival access to more than 150 countries, including the United Kingdom and countries in the European Union, as well as eligibility for ten-year multiple entry visas to the United States. A St. Kitts and Nevis passport does not come with any income or wealth tax and does not have a residency requirement.

56.     There are several options for individuals to obtain a St. Kitts and Nevis passport.  Individuals may apply and purchase a passport through the "Alternative Investment Option," which was established by the government of St. Kitts and Nevis as a means of achieving its capital investment goals through pre-qualified infrastructure projects. Section 5C(1) of the St. Kitts and Nevis Citizenship by Investment Regulations, SRO No. 8 of 2021 provided that as of November 1, 2020, where an entity invests a minimum of USD $200,000 in an approved infrastructure project, an application may be submitted for citizenship on his or her behalf through an authorized representative in St. Kitts and Nevis.  Defendant Caribbean Galaxy has undertaken such pre-qualified infrastructure projects, including the construction of the Ramada by Wyndham St. Kitts Resort, and was designated as an Alternative Investment Option developer in 2021.  The Government of St. Kitts and Nevis also made CBI shares available under a "Hurricane Relief Fund" established to support residents harmed by Hurricane Maria in 2017.  This program was superseded by a CBI program known as the "Sustainable Growth Fund."

57.    Another option, the "Public Benefit Option," also provides the Government with the means of achieving its capital investment goals.  Under the Public Benefit Option, investors who want to develop a project which brings substantial benefit to the people of St. Kitts and Nevis can apply to the CIU to be designated as an Approved Public Benefactor.  Approved Public Benefactors can then apply for their projects to be designated as Approved Public Benefit Projects.  As of July 2023, the minimum contribution for individuals who seek to obtain citizenship made available under the Public Benefit Option is USD $250,000, established by St. Kitts and Nevis law.[4]  Plaintiffs MSR Media SKN and MSR Hotels are Approved Public Benefactors.

58.    Funds associated with CBI transactions flow through Defendant National Bank in St. Kitts and Nevis.  National Bank receives and processes USD associated with the CBI program in St. Kitts and Nevis.  Cross-border transactions in USD into and out of St. Kitts and Nevis necessarily require the use of a correspondent or intermediary U.S. bank that maintains relationships with the

---

[4]    In July 2023, new regulations were passed by the St. Kitts and Nevis government raising the price of CBI shares sold under the Public Benefit Option from USD $175,000 to USD $250,000.

originating and beneficiary banks.  Defendant National Bank maintains a correspondent bank account with Bank of America.  St. Kitts and Nevis law designates all transactions associated with the sale of St. Kitts and Nevis CBI shares and associated fees in USD.

59.    Defendant Caribbean Galaxy sells its CBI shares in USD and maintains a USD-denominated account at Hang Seng Bank Limited, based in Hong Kong, to facilitate such USD transactions. Defendant Caribbean Galaxy also maintains wire transfer instructions indicating that the Miami branch of Bank of America, located at 100 SE 2nd Street, Miami, Florida 33131, is the intermediary bank to move USD-denominated funds into Caribbean Galaxy's account at National Bank.  However, Caribbean Galaxy has USD bank accounts at several other US-based banks.  Caribbean Galaxy engaged in CBI transactions that passed through US-based correspondent banks before ending up at Defendant National Bank.  For instance, Caribbean Galaxy received wire payments for CBI share sales that transferred through its accounts at Standard Chartered Bank, JP Morgan Chase, and Bank of America.

## II.    Plaintiffs Invest in St. Kitts and Nevis by Developing a Thriving Film Industry

60.    In December 2020, Plaintiff Martinez sought a location with low COVID-19 rates where he could film and produce movies immediately.  Martinez was introduced to Mark Brantley, the Premier of Nevis, to discuss filming movies on the island of Nevis.  As a result, Martinez entered into a contract with the Nevis Island Administration whereby he agreed to film movies on the island of Nevis in exchange for up to USD $150,000 per film for the cost of housing for the cast and crew.

61.    In January 2021, Martinez arrived in St. Kitts and Nevis and established MSR Media SKN.  After successfully filming several movies in Nevis in the subsequent months, St. Kitts and Nevis officials reached out to Martinez and requested that he also film movies on the island of St. Kitts.  During 2021, Plaintiffs filmed and produced four movies in various locations across St. Kitts and Nevis.

62.    In February 2022, Premier Brantley introduced Plaintiff Martinez to Defendant Khan, the then-Chief Executive Officer of the St. Kitts and Nevis CIU.  In order to entice MSR Media SKN to continue filming movies in St. Kitts, Defendant Khan along with Defendant

Harris and Mark Brantley introduced Mr. Martinez and MSR's American investors to the country's CBI program.  Defendants offered to grant the MSR Entities CBI shares in exchange for filming additional movies in St. Kitts.  By filming movies in St. Kitts, MSR was providing numerous job opportunities for Kittitians as well as promoting the country in these movies.  Co-conspirator Anthony and Defendant Khan also encouraged Mr. Martinez to purchase the former OTI Hotel on the island of St. Kitts.  The OTI Hotel had been vacant for a long period, and co-conspirator Anthony and Prime Minister Drew offered Mr. Martinez additional CBI shares in exchange for purchasing the hotel, renovating it, and using it as a base of operations for filming additional movies.  Ultimately, MSR Hotels purchased the OTI Hotel in December 2022.  Utilizing the CBI program was presented as a win-win scenario because Plaintiffs were able to continue to film movies and operate a hotel in the country (and continue to provide jobs for local Kittitians) using financing from the sale of the CBI shares.

63.    Eventually, Plaintiffs entered into negotiations with Defendant Khan that also included Defendant Harris, Brantley, and other high-ranking members of the St. Kitts and Nevis government.  In

May 2022, MSR Media SKN was granted CBI shares by the St. Kitts Investment Promotion Agency ("SKIPA") under the Alternative Investment Option.  In May 2023, after recognizing the public benefit that the MSR Entities were providing to the islands, the MSR Entities were recognized as Approved Public Benefactors and granted 600 CBI shares under the Approved Public Benefit program.

64.    For years under the prior Administration of the former Prime Minister Defendant Denzil Douglas, the CBI program had been plagued by corruption.  Upon taking office as Prime Minister after Douglas, Defendant Harris claimed to take action to eradicate corruption within the CBI program, including by shutting down the controversial and allegedly corrupt St. Kitts and Nevis Sugar Industry Diversification Foundation ("SIDF").  The SIDF was a nonprofit charity founded in 2006 by the National Bank Trust Company, a subsidiary of Defendant National Bank, purportedly used to raise funds for displaced sugar industry workers and move the island economy away from dependance on the sugar industry.  In November 2016, then-Chief Executive Officer of the SIDF, Terrence Crossman, was terminated after an in-depth investigation into the SIDF by the Harris

Administration.  Crossman now serves as First Vice Chair and Managing Director of Defendant National Bank.

65.    Around the same time that the MSR Entities entered the CBI market in St. Kitts and Nevis in May 2022, the CIU and Defendants Khan and Harris faced public criticism and allegations of corruption arising out of the award of a project to build a jail ("Jail Project") to Defendant Caribbean Galaxy, led by its CEO, Defendant Ying Jin.  Shortly after local and international media organizations reported on this corruption, Defendant Harris fired most of his Cabinet and dissolved Parliament on May 10, 2022, triggering a national election.  In the subsequent election, Defendant Harris lost his position as Prime Minister.

66.    Plaintiffs were enticed by Defendants Harris and Khan, and co-conspirator Anthony to enter the CBI market despite the fact that each of these Defendants was currently and knowingly involved in the fraudulent scheme to provide Caribbean Galaxy CBI shares and to turn a blind eye allowing Caribbean Galaxy to sell these shares at far lower prices than the MSR Entities were being offered.  Plaintiffs would not have entered the CBI market if they had known of the extensive

corruption plaguing the program at the time.  Even after Defendant

Harris lost his position as Prime Minister, members of the new

Administration of Terrence Drew continued to mislead Plaintiffs into

believing there would be substantial reforms of the CBI program.  For

instance, MSR Hotels' purchase of the OTI Hotel in December 2022 was

at the insistence of Sylvester Anthony and Prime Minister Drew, who

led Plaintiffs to believe that the CBI program would no longer be

plagued by corruption.  Nevertheless, co-conspirator Anthony and

Prime Minister Drew continued to process passport applications

submitted by Caribbean Galaxy under the fraudulent price and refused

to investigate Caribbean Galaxy's conduct once Plaintiffs learned of the

continued conduct and sought to stop it.

67.    To date, U.S.-based Plaintiffs have invested millions of

dollars in St. Kitts and Nevis by building a thriving movie industry,

creating numerous jobs, providing on-the-job training for local workers,

and promoting the islands.  The MSR Entities have promoted the

country worldwide, including through endorsements by the actress

Elizabeth Hurley.  In furtherance of its intent to continue filming in St.

Kitts and Nevis, Plaintiffs sought financing from American investors.

Both MSR and its American investors expected to realize their investment from the MSR Entities' sales of CBI shares but have been unable to recoup their investment in exchange for making films in St. Kitts and Nevis due to Defendants' discounting scheme. Plaintiffs have been accruing (and continue to accrue) interest in connection with this financing.

### III. Defendants' Scheme to Defraud Plaintiffs through the St. Kitts and Nevis CBI Program

68. The enterprise's scheme centers on the corrupt issue of thousands of valuable citizenship shares to Defendant Caribbean Galaxy to be sold illegally at prices that were a fraction of the legal rate established by the St. Kitts and Nevis government and represented to good-faith international investors, including Plaintiffs and Plaintiffs' American investors. Plaintiffs and their investors expected to realize their substantial investments in the economy of St. Kitts and Nevis by participating in an open and transparent citizenship marketplace but have been unable to do so as a result of the corrupt conduct of Defendants and their co-conspirators. Defendant Khan has admitted in a video recording that the reason the Government does not set a lower price is to avoid raising concerns with the European Commission. If the

price were set lower by statute, the Commission would have raised concerns that could lead to revocation of visa-free or visa-on-arrival access to European countries for St. Kitts and Nevis passport holders.

69.    The scheme worked as follows.  The Government of St. Kitts and Nevis granted 5,500 CBI shares amounting of up to 22,000 passports, to Defendant Caribbean Galaxy, which controlled 90% of the CBI market in St. Kitts and Nevis.  Caribbean Galaxy would then commit fraud in one of two ways.  First, Caribbean Galaxy would illegally sell the shares at a price lower than the statutorily required amount and fraudulently assert (and require the purchasers of the shares to assert) that it had sold the shares at the correct price.  This scheme was carried out during Caribbean Galaxy's sale of CBI shares associated with the project to build the Ramada Hotel, discussed in more detail below.  Second, for another one of Caribbean Galaxy's projects, the commitment to build a public incarceration facility, called the Jail Project, Caribbean Galaxy entered into illicit agreements with certain St. Kitts and Nevis officials, including Defendants Khan, Harris, and Douglas, whereby in exchange for kickbacks, the Government of St. Kitts and Nevis turned a blind eye to allow Caribbean Galaxy to sell the

5,500 CBI shares it was granted for the Jail Project—an unprecedented amount representing more than USD $1 billion in value—for a lower price.  In exchange for allowing Caribbean Galaxy to sell the CBI shares for a lower price, Defendants Harris and Douglas received cash payments from Caribbean Galaxy through Defendant Lawrence.  In addition, funds associated with the sale of CBI shares are required to be held in escrow at a financial institution in St. Kitts and Nevis, such as Defendant National Bank.  However, Defendants Khan and Harris formed an agreement with Defendant Caribbean Galaxy to eliminate the escrow requirement for CBI shares granted for the Jail Project, allowing Defendant Caribbean Galaxy to bypass the escrow rules that bound their law-abiding CBI competitors, including the MSR Entities.

70.    In furtherance of this scheme, and to ensure that its sales of CBI shares were processed with compromised due diligence, Caribbean Galaxy directed Defendant Khan to allow the due diligence on the sale of these shares, which is statutorily mandated, to be performed by a Chinese company based in China.  On information and belief, Defendant Khan was directed to select the Chinese due diligence company by Defendant Ying Jin.  Despite the fact that Chinese citizens

are not allowed to have dual citizenship, the participants in the scheme

caused the provision of thousands of shares to persons in China and

outsourced the due diligence of potential passport-holders to a Chinese

company hand-picked by Caribbean Galaxy.   Use of a Chinese company

compromised the integrity of the due diligence performed on each

applicant because the Chinese due diligence company connected with

Caribbean Galaxy has a clear interest in approving applicants for St.

Kitts and Nevis citizenship.  There is also a clear conflict of interest in

allowing Caribbean Galaxy to dictate which firms perform due diligence

on the company's passport applicants because Caribbean Galaxy has an

interest in ensuring that all of its applicants are approved for passports.

Defendant Ying Jin received at least one kickback payment from such a

Chinese due diligence firm.  The global security risk this creates is

proven daily by the arrest and indictments of Chinese nationals holding

St. Kitts and Nevis passports for financial crimes, such as money

laundering.  For instance, in just the last three months, a dual Chinese

and St. Kitts and Nevis citizen was arrested for allegedly laundering

over USD $73 million in cryptocurrency scams[5] and a Chinese citizen using a St. Kitts and Nevis passport with a false identity has been put on trial in the UK for money laundering related to cryptocurrency wallets.[6]

71.    As a material part of the scheme, Defendant National Bank maintained a U.S.-based correspondent bank account at Bank of America to conduct CBI-related transactions. National Bank transferred the funds obtained through this illegal scheme to and from U.S. banks, including Bank of America in Miami, Wells Fargo in Miami, BNY Mellon in Miami, and JP Morgan Chase in Miami, for the benefit of other members of the enterprise. Without access to the U.S. banking system, and a blind eye from Bank of America to allow money to be laundered through its Miami branch by National Bank, this fraud could never have occurred. Defendant Carib Trust holds an account at

---

[5]    *See* Vivian Chow, *2 Arrested For Allegedly Laundering Over $73 Million In Cryptocurrency Scams*, KTLA 5 News (May 17, 2024, 08:25 PM, PDT), https://ktla.com/news/local-news/2-arrested-for-allegedly-laundering-over-73-million-in-cryptocurrency-scams/.

[6]    *See* Henry Vaughan, *Ex-Takeaway Worker on Trial After £1.4bn Bitcoin Seized by Police Says 'I was duped'*, Sky News (Feb. 19, 2024, 16:03 UK), https://news.sky.com/story/ex-takeaway-worker-on-trial-after-16314bn-bitcoin-seized-by-police-says-i-was-duped-13075660.

National Bank through which it executed Caribbean Galaxy's round robin scheme for the Ramada Hotel project.  National Bank is fully aware of Defendant Carib Trust's round robin scheme.  Defendant National Bank knew of the scheme by Defendants Khan, Carib Trust, and Caribbean Galaxy through several avenues.  First, former Chairman of the National Bank, Alexis Nisbett, operates a CBI processing firm in St. Kitts which is involved in processing the application of Defendant Caribbean Galaxy's CBI passport applications.[7]  Second, current National Bank Managing Director, Terrence Crossman, is aware of the illicit scheme through his prior role as CEO of SIDF from which he was terminated due to alleged corruption.  Third, Plaintiffs tried on multiple occasions to inform National Bank about the discounting scheme in order to encourage National Bank to end its participation in the scheme, but representatives from National Bank refused to hear the evidence of the scheme and instead terminated discussions with Plaintiffs.  For instance, Plaintiffs' local St. Kitts and Nevis lawyer, Damian Kelsick,

---

[7]      Mr. Nisbett co-operates his CBI processing firm with Lenworth Harris, Defendant Harris's brother.

met via Zoom with Mr. Crossman and the management team of National Bank in November 2023 to inform the Bank that Plaintiffs were aware of the scheme.  Rather than listen to Plaintiffs, the National Bank representatives abruptly terminated the call.  Rather than conducting proper due diligence and complying with St. Kitts and Nevis law, National Bank allowed Defendants Khan and Caribbean Galaxy to continue this scheme.

72.    Defendants and their co-conspirators have met in furtherance of this bribery scheme on multiple occasions, including in New York.  According to a video recording of Defendant Khan, on at least one occasion around May 2022, representatives from the government of St. Kitts and Nevis, Defendant Khan, and a representative of CS Global, the advisor and marketer of St. Kitts and Nevis's CBI program, met to further the bribery and money laundering scheme.

73.    Furthermore, Defendants Khan, Harris, Douglas, and Ying Jin all conducted business in furtherance of the scheme in the United States.  This includes having phone calls, attending meetings, and in-person discussions about the CBI program and associated scheme.  This

52

conduct occurred, *inter alia*, in New York while the Defendants were in the United States to participate the United Nations General Assembly.

74.   The scheme was illegal under St. Kitts and Nevis law because only applicants who purchased CBI shares for at least USD $175,000 were eligible to apply for citizenship.  Defendants knew, however, that the shares were sold for a fraction of the required amount, and the applications were nevertheless and fraudulently submitted to the CIU of St. Kitts and Nevis for processing and ultimate issue of passports to the applicants who were not eligible under St. Kitts and Nevis to receive those passports.

75.   After entering the CBI market at the insistence of Defendant Khan and co-conspirator Anthony, Plaintiffs learned of the allegations of corruption against Defendants Khan and Harris, as well as the CIU. Accordingly, Plaintiffs undertook an investigation to understand the scope of the corrupt scheme and the involvement of various individuals and entities.  Plaintiffs discovered that Defendant Caribbean Galaxy has long acted to undermine local St. Kitts and Nevis CBI promoters in order to obtain greater profits.  Numerous specific fraudulent acts in

furtherance of the overall scheme to defraud investors like the MSR Entities are outlined in more detail below.

## A. Diverting Applications from the Hurricane Relief Fund to Benefit Defendant Caribbean Galaxy

76.    Plaintiffs have learned that as early as 2019, Defendant Khan would direct passport sales agents to divert already completed CBI applications intended to support the Hurricane Relief Fund, a program established to support Kittitians and Nevisians impacted by Hurricane Maria, to appear as if they were submitted by Defendant Caribbean Galaxy through their CBI arrangement under the Alternative Investment Option.

77.    In effect, at the direction of Defendant Khan, those funds were stolen from the people of St. Kitts and Nevis in order to benefit a government official (Defendant Khan) and a foreign-owned company (Defendant Caribbean Galaxy).

## B. The Ramada Hotel Project and Associated Escrow Account Fraud

78.    Plaintiffs' investigation also revealed that there had been a significant increase in CBI applications since Caribbean Galaxy had begun selling St. Kitts and Nevis CBI shares.

54

79.    Plaintiffs found that while the MSR Entities were designated as Approved Public Benefactors and statutorily mandated to sell CBI shares at USD $200,000 per unit, Defendant Caribbean Galaxy had bribed St. Kitts and Nevis officials in order to be able to sell their CBI shares for USD $100,000 or significantly less—potentially as low as USD $50,000—in China.  Thereby dominating the market and profiting based on the volume of sales.

80.    St. Kitts and Nevis law requires that payment for CBI shares sold by developers must be placed in an escrow account while the passport application is processed in order to minimize the risk of fraud and corruption in the CBI program.  It is requirements like these that give the United States and Europe comfort in allowing visa-free or visa-on-arrival access to St. Kitts and Nevis passport holders.  Plaintiffs learned that Defendants Khan and Harris had engineered an arrangement that allowed Defendant Caribbean Galaxy to bypass the usual escrow requirement for CBI funds and dupe foreign governments into believing that the escrow requirement remains in effect when in reality the country's largest developer in the CBI program was not required to comply with the escrow requirement.

81.    The corrupt scheme for the Ramada Hotel project began with Defendant Caribbean Galaxy depositing payment for a single CBI share into an escrow account.  That sum of money then stayed in the escrow account even after the application for the passport was processed and the purchaser received the St. Kitts and Nevis passport.  Then, for each subsequent new passport application, Caribbean Galaxy's escrow agent, Defendant Carib Trust, would issue a letter to Defendant Khan as head of the CIU stating that new funds had been placed in the escrow account.  Instead of actually placing new funds in the escrow account, Caribbean Galaxy would point to the same money from the first transaction sitting in the escrow account for all subsequent applications.  According to an audio recording obtained by Plaintiffs, both Defendant Khan and Defendant Lawrence, an authorized escrow agent under the CBI program, knew that no new funds were placed in the escrow account.  This scheme orchestrated by Defendant Khan removed government oversight of CBI sales—the exact job that Khan himself was charged with overseeing as CEO of the CIU.  In effect, Defendant Khan allowed Defendant Caribbean Galaxy to sell passports without actually putting any money in escrow as required by law.

56

82.    Defendant Khan admitted in recorded conversations his involvement in the scheme to defraud the CBI program.  The escrow account operator Carib Trust, operated by Defendant Lawrence, has also admitted that the scheme is illegal in a meeting with Plaintiff Martinez, Defendant Khan, and another associate of the MSR Entities.

83.    As an example of Caribbean Galaxy's ability to skirt the escrow requirement, Defendant Caribbean Galaxy was approved under the CBI program to build the new Ramada by Wyndham St. Kitts Resort ("Ramada Hotel") in 2014.  In exchange, Defendant Caribbean Galaxy was provided with CBI shares to sell.  The project, however, sat idle for years.  The Ramada Hotel was projected to be completed in December 2018, then September 2019, but did not actually open until December 2021.[8]  Under St. Kitts and Nevis regulations, Defendant Caribbean Galaxy was required to provide USD $200,000 in escrow while the application for each citizenship share was processed for the

---

[8]    Defendant Khan called the Ramada Hotel project a success despite the extreme delays.  Industry sources have estimated that seventy (70) out of eighty (80) projects approved under the CBI program prior to 2018 were never started.  *See Chinese developer fails to meet completion commitment St Kitts Ramada resort still far, far away*, MENAFN (Dec. 25, 2018, 3:49 AM), https://menafn.com/1097879621/Chinese-developer-fails-to-meet-completion-commitment-St-Kitts-Ramada-resort-still-far-far-away.

Ramada Hotel project. Instead, however, Caribbean Galaxy played a game of "round robin" and maintained USD $200,000 in the account that the company could point to at any time as a new deposit. The government failed to do its due diligence of whether new funds ever arrived in St. Kitts and Nevis and, in fact, they did not.



*Photo of Defendants Harris (far left), Ying Jin (third from left), and Khan (far right) at a Caribbean Galaxy press conference in Hong Kong announcing Phase II of the Ramada Hotel project in April 2018.*



*Photo of Defendants Khan (second from left), Harris (sixth from left in front row), and Ying Jin (seventh from left in front row) at the Ramada Hotel construction site in January 2019.*

84.    For each CBI share sold, Defendant Caribbean Galaxy transmitted money through Bank of America in Miami, located at 100 SE 2nd Street, Miami, Florida 33131 to its account at Defendant National Bank.

## C. Caribbean Galaxy's Jail Project

85.    Despite extensive issues and delays with the Ramada Hotel project, Defendants Caribbean Galaxy and Ying Jin used their close connections to high-ranking St. Kitts and Nevis officials, like Defendants Khan and Harris, that had developed during the Ramada

Hotel project to ensure they were the successful bidder on another public project to build a new jail.  Defendant Caribbean Galaxy was awarded 5,500 CBI shares, which amounts to as many as 22,000 passports, to be sold at USD $175,000 per share in exchange for a commitment to construct a new jail on St. Kitts ("Jail Project").  These shares, if sold at USD $175,000 per share (the statutorily mandated price per share at the time that Caribbean Galaxy was granted the CBI shares), represent almost USD $1 billion in value for the Jail Project.  Another Caribbean developer had submitted an offer to build the same prison for USD $30 million.  Despite this extraordinary cost, the jail has not been completed and remains under construction.  In the meanwhile, Caribbean Galaxy continues to flood the citizenship market with illegally underpriced CBI shares, preventing Plaintiffs from recouping their investment.







*Photos of the incomplete Jail Project construction site.*

86.    In addition to the unprecedented number of CBI shares

Defendant Caribbean Galaxy was awarded for the Jail Project, under

the Jail Project contract Caribbean Galaxy was exempted from several

requirements that applied to all other developers.  Specifically, for the

Jail Project, Caribbean Galaxy did not need to put the payment for

passports into an escrow account located on St. Kitts and Nevis because

the Cabinet under the leadership of Defendant Harris agreed to allow

Defendant Caribbean Galaxy to be exempted from putting money in an

escrow account for this project. Further, Defendants Harris and Khan

allowed Defendant Caribbean Galaxy to sell the passport shares for

whatever price the company wanted and was not contractually required

to sell the shares for a certain price, in contrast to the legal

requirements binding all other sellers of CBI shares.

87. Defendant Caribbean Galaxy was able to secure this special

treatment because of the intimate relationship between Defendants

Ying Jin and Khan as well as the corrupt bribes paid by Defendant

Caribbean Galaxy to Defendants Khan, Harris, and Douglas.

Defendant Caribbean Galaxy gave Defendant Harris a cut of its profits

in exchange for passing a law giving Caribbean Galaxy these special

exemptions for the Jail Project. According to Defendant Khan in a

video recording, Defendant Harris received his payment from

Defendant Caribbean Galaxy in exchange for passing a law allowing

Caribbean Galaxy to sell its CBI shares for a lower amount. Defendant

Khan admitted to Plaintiffs that Defendant Caribbean Galaxy gave

money to its affiliate and escrow account provider, Defendant Lawrence,

who then passed those payments to Defendants Harris and Douglas.

88.    Defendant Khan admitted in a video recording that he and St. Kitts and Nevis's exclusive promotor of the CBI program, CS Global, were each paid a fee for every successful application sold by Defendant Caribbean Galaxy.  Through CS Global, Defendant Douglas also received a fee for each successful CBI application.  As a result, according to Defendant Khan in a video recording, Defendant Douglas also financially benefitted through his relationship with CS Global from the explosion in the number of passports being awarded to and sold by Defendant Caribbean Galaxy.

89.    Additionally, due diligence on each applicant for each passport sold by Caribbean Galaxy was conducted by a Chinese company at the direction of Defendant Khan, rather than the company typically used by the CIU for other applicants.  This presents a clear conflict of interest by compromising and corrupting the integrity of the program: Defendant Caribbean Galaxy, a company promoting its CBI applicants, should have no relationship with the due diligence performed by St. Kitts and Nevis on those same applicants.

90.    Nevis Premier Brantley has publicly stated that the Jail Project is the touchstone for the difficulties and corruption that the CBI

program has faced.  According to Brantley, an inner circle of government officials at the highest levels, including within the Cabinet, allowed massive underselling of CBI shares.  According to public comments by Brantley, "passports were being sold like sugar cake." Brantley has publicly confirmed that for the Jail Project, Defendant Caribbean Galaxy should have been given 500 CBI shares.  In reality, it was given 5,500 CBI shares that they sold for significantly less per unit. Also, according to Brantley, high-level officials in the government knew that Defendant Caribbean Galaxy was not selling the shares at the statutorily established price, but nobody cared because the government was receiving the same amount in due diligence fees and registration fees.

91.    Defendant Khan has stated in a recorded conversation that Defendant Caribbean Galaxy sold 300 to 400 citizenship shares per month at approximately USD $50,000 to USD $60,000 per unit.  In 2021, CBI sales from the Jail Project generated approximately USD $500 million for Defendant Caribbean Galaxy.  On information and belief, Caribbean Galaxy has already sold all 5,500 CBI shares

associated with the Jail Project amounting to as many as 22,000 passports.

92.    Defendant Caribbean Galaxy is also operating in St. Lucia. Recently, Defendant Caribbean Galaxy sold more than 2,000 citizenship shares in St. Lucia using a similar fraudulent scheme to the one described herein.  In addition, Caribbean Galaxy was just awarded a new infrastructure contract in exchange for several thousand additional citizenship shares.

93.    Defendant Caribbean Galaxy has openly sold tens of thousands of passports to St. Kitts and Nevis and St. Lucia to Chinese citizens despite the fact that Chinese citizens are prohibited from having a second or dual citizenship.

94.    This corruption and underselling scheme has created an explosion in the number of citizenship shares sold in the Caribbean, which not only undermines the value of Plaintiffs' current shares but threatens the program as a whole by creating a national security risk in the United States and in European countries.  In addition to intentionally and fraudulently hiding the true price of Caribbean citizenship from the European Union, due diligence failures or, as in

this case, intentionally using a Chinese company to conduct due diligence, allows persons seeking to engage in criminal activity to more easily obtain a foreign passport, such as that of St. Kitts and Nevis or St. Lucia, in order to hide from governmental enforcement or sanctions.

### D. Defendants Each Profited from the Discounting and Underselling Scheme

95.    Under the scheme outlined above, each member of the enterprise profited from the sale of CBI shares.  At the time, the statutorily mandated price of CBI shares was USD $175,000, but Defendant Caribbean Galaxy sold their 5,500 shares amounting to 22,000 passports at prices that were reduced by 60% or more.  In other words, Defendant Caribbean Galaxy undercut their competitors by flooding the entire CBI market with their vast reserve of CBI shares priced at USD $75,000 or significantly less—potentially as low as USD $50,000.  In contrast, when the MSR Entities entered the CBI market in May 2022, the MSR Entities' contracts with the government of St. Kitts and Nevis required the companies to sell their CBI shares at USD $200,000 apiece.  After the recent updates to the CBI program regulations, the MSR Entities are now required to sell their CBI shares for USD $250,000 under St. Kitts and Nevis regulations that were

amended in July 2023. As a result, Caribbean Galaxy was able to realize a profit from the sale of its CBI shares while other investors, such as the MSR entities were unable to sell the shares at the price it was required to because the market was oversaturated with lower priced shares from Caribbean Galaxy.

96. St. Kitts and Nevis officials who sanctioned Caribbean Galaxy's conduct profited from the scheme. Defendants Caribbean Galaxy and Ying Jin agreed to pay Defendants Khan, Harris, and Douglas several thousands of dollars per CBI share sold. This kickback to Defendants Harris, Khan, and Douglas represents a total potential value of tens of millions of dollars. Defendant Khan admitted in a recorded conversation that he earned almost USD $2 million per year during his tenure as head of the CIU. On information and belief, Defendants Khan and Harris used a portion of the proceeds from the scheme to enrich themselves and obtain real estate in the United States as well as luxury goods. Defendants Khan and Harris also diverted a portion of the illicit proceeds from the scheme to offshore bank accounts. Plaintiffs have evidence that Defendant Douglas used these illicit proceeds to purchase property in Dubai, United Arab Emirates.

97.    As head of the CIU, Defendant Khan used a CBI marketing firm to market the program of selling passports, namely CS Global.  In exchange for each passport application processed, the CBI marketing firm earns between USD $5,000 and USD $10,900 per passport processed.  According to Defendant Khan, CS Global was brought into the country to promote the CBI program by then-Prime Minister Defendant Douglas.  Also, according to a recording of Defendant Khan, Defendant Douglas has served as a silent partner in CS Global and profits from the fees received by CS Global.  CS Global initially contracted with the government of St. Kitts and Nevis in 2013 to serve as the country's sole official CBI advisor and marketer.  Under a renewed contract, the government of St. Kitts and Nevis pays CS Global a fee of USD $10,900 for every CBI share sold under the Sustainable Growth Fund and USD $5,000 for every CBI share sold under the Alternative Investment Option ("AIO").  Under this agreement, CS Global has every reason to promote the sale of CBI shares despite the illegal discounting for these programs because CS Global is paid a fee for every single CBI share sold by investors in St. Kitts and Nevis under

the Alternative Investment Option, such as Defendant Caribbean Galaxy.

98.    At one point during his tenure as head of the CIU, according to a video recording of Defendant Khan, he and his lawyer attempted to narrow or eliminate CS Global's role in St. Kitts and Nevis by bringing a lawsuit in the United Kingdom.  By seeking to eliminate CS Global's role in collecting fees associated with certain CBI projects, including the Jail Project, Defendant Khan was acting for the benefit of Defendant Caribbean Galaxy who would benefit by CS Global having less influence over the CBI program.

99.    According to Defendant Khan in a recorded conversation, Defendant Harris initially supported removing CS Global from the CBI market in St. Kitts and Nevis.  However, CS Global learned of the potential lawsuit and a representative of CS Global offered Defendant Khan's lawyer a bribe to abandon the lawsuit.

100.   According to Defendant Khan in a recorded conversation, as part of Defendant Harris's request to Defendant Khan to drop the lawsuit, Defendant Harris, Defendant Khan and a representative from CS Global met in New York where the parties discussed resolving the

dispute in a manner that enabled all involved to continue profiting from the scheme. After this meeting, CS Global was able to maintain its contract with the St. Kitts and Nevis government and began receiving a fee of USD $5,000 for each passport processed under the Alternative Investment Option program, including Caribbean Galaxy's Jail Project. For the Jail Project alone, CS Global could receive up to USD $27.5 million in fees.

101. Defendant Khan and Nevis Premier Mark Brantley have both stated that the government of St. Kitts and Nevis allowed the scheme to continue because it received revenue for every CBI share sold, and high-ranking officials and their family members were profiting under the scheme. For instance, Nicola Capital Management, the CBI processing company owned by the former Chairman of National Bank and Lenworth Harris, the brother of Defendant Harris, profits from the increased sale of CBI shares, and processed approximately 10% of Defendant Caribbean Galaxy's CBI shares.

102. Despite full knowledge by members of the enterprise about the illicit bribery scheme and corruption plaguing the CBI program, enterprise members continued to promote the CBI program broadly to

American investors and encourage Plaintiffs specifically to invest in the country through the CBI program throughout 2022 and 2023. During the relevant time periods, the Defendants and co-conspirators actively encouraged the MSR Entities and their American investors to invest more money in the country despite knowledge of the corruption that would make it impossible for Plaintiffs to recoup their investment. National Bank broadly misled the market and investors by failing to comply with procedural safeguards while encouraging continued investment in SKN and the CBI program.

103. The acts of the enterprise significantly undercut the market value of St. Kitts and Nevis CBI shares, including those granted to Plaintiffs. Plaintiff Martinez was told by Gurdip Dev Bath, the founder of CS Global, who was acting as a representative of the St. Kitts and Nevis government at the time that Plaintiffs would "never recoup their money" and that America and American investors should "go fuck themselves."

## IV.  Defendants' Scheme to Defraud the St. Lucia Citizenship by Investment Program

104. As a result of the investigation into the corrupt CBI scheme in St. Kitts and Nevis, Plaintiffs learned of the same fraudulent

conduct, led by Defendant Caribbean Galaxy, in the nearby country of St. Lucia.

105.   St. Lucia's Citizenship by Investment Programme ("CIP") was established in 2015 and accepted its first applicant from the United States in March of 2016.  St. Lucia allows citizens of other countries to hold dual citizenship in St. Lucia that allows visa-free travel to over 140 countries with no wealth, gift, foreign income, or capital gains taxes.

106.   There are four ways to obtain St. Lucia citizenship by investment.  The National Economic Fund allows investors to make a payment or donation to the country to enhance St. Lucia's infrastructure and utilities.  The investment amount for a single applicant utilizing the National Economic Fund is USD $100,000, and the Government of St. Lucia is supposed to get the entire amount of the application fee minus a 10% fee paid to the local to the CIP share broker.  The National Action Bond is an investment in a government bond that remains in the name of the bond holder for five years.  The investment amount for a single applicant is USD $300,000.  The third option is a Real Estate Project.  Under the Real Estate Project option, investors can make an investment in an approved real estate project for

high-end hotels and resorts and high-end boutique properties.  The

minimum investment amount for a Real Estate Project is USD

$200,000.  The final option is investing in an Enterprise Project, which

includes all other infrastructure and specialty projects, including

restaurants, processing plants, research facilities, housing projects, and

social development projects.  The minimum investment amount for an

Enterprise Project is USD $3.5 million.  According to the official St.

Lucia CIP website, there are currently no enterprise projects open for

investment, but Plaintiffs learned from an audio recording of Defendant

Emmanuel that Defendant Caribbean Galaxy has been granted CIP

shares under the Enterprise Project option for an unnamed and

undisclosed infrastructure project.  Based on information and belief,

there is in fact no actual project planned or ongoing.

107.  Plaintiffs are aware that Defendant Douglas introduced

Defendant Caribbean Galaxy into St. Lucia.  After entering the CIP

market in St. Lucia, Defendant Caribbean Galaxy convinced the St.

Lucia government, including Prime Minister Philip J. Pierre and

Deputy Prime Minister Ernest Hilaire, to allow Caribbean Galaxy to

sell its CIP shares for as low as USD $65,000 even though the legal

price for a CIP share is USD $100,000 in St. Lucia under the National Bond option and USD $200,000 for shares sold by developers investing in a Real Estate Project like Defendant Caribbean Galaxy.

108.   Plaintiffs learned from an audio recording of Defendant Emmanuel that the vast majority of the St. Lucia citizenship shares sold by Defendant Caribbean Galaxy are subject to this fraudulent financing scheme.  Furthermore, Defendant Caribbean Galaxy has complete control in dictating who can sell citizenship shares on its behalf and exercises complete control over the CIP program in St. Lucia.  Plaintiffs learned from an audio recording of a foreign CIP marketer and promoter that Defendant Caribbean Galaxy requires that when foreign marketers sell CIP shares granted to Caribbean Galaxy under one of St. Lucia's investment programs, the promoter must use Caribbean Galaxy's preferred local agents to complete the citizenship application locally in St. Lucia.  To ensure that its preferred local agents are used, Caribbean Galaxy covers the price of the fee earned by the local agent.

109.  As Deputy Prime Minister, co-conspirator Hilaire allows Defendant Caribbean Galaxy to operate its fraudulent scheme in St.

Lucia despite publicly taking issue with Caribbean Galaxy's work on the Ramada Hotel project in St. Kitts when Mr. Hilaire was a member of the opposition party in St. Lucia. Mr. Hilaire apparently no longer takes issues with Caribbean Galaxy's repeated delays and the lack of due diligence performed on the company by St. Lucia before bringing them into the country.

110. Defendant Caribbean Galaxy's total influence over the CIP program and the corrupt discounting scheme were recently highlighted when, in April 2024, Prime Minister Philip J. Pierre announced that St. Lucia was the only member of the Organisation of Eastern Caribbean States ("OECS")[9] that failed to sign a Memorandum of Understanding that each country would agree to sell its citizenship shares at USD $200,000 per share in order to address concerned from the European Commission about the Caribbean citizenship by investment programs. According to Prime Minister Pierre, the country would not agree to raise the price of its citizenship because of its contractual obligations to

---

[9] The OECS consists of Antigua and Barbuda, the Commonwealth of Dominica, Grenada, Monserrat, St. Kitts and Nevis, St. Lucia, and St. Vincent and the Grenadines. Only Antigua and Barbuda, Dominica, Grenada, St. Kitts and Nevis, and St. Lucia have citizenship by investment programs.

a certain developer allowing it to sell the shares for less than USD $200,000. Defendant Caribbean Galaxy is currently the only developer with an approved Infrastructure Project under the CIP program. Further, Defendant Emmanuel in a recorded conversation mocked the European Commission's ability to sanction St. Lucia's CIP program by limiting visa free and visa-on-arrival access to Europe for St. Lucia passport holders, and stated that even if St. Lucia refuses to make changes to the CIP program, the European Commission will act far too slowly in imposing sanctions against St. Lucia. Defendant Emmanuel claimed that the European Commission would not be able to effect sanctions until at least 2026, and Caribbean Galaxy will have plenty of time to sell its CBI shares before any such sanctions take effect.

111.  Defendants' corrupt scheme in St. Lucia devalues the CIP shares of good-intentioned international investors, like the MSR Entities, who attempt to sell the citizenship shares at the legal price in the United States and elsewhere. In order to ensure profit from the discounting scheme, Defendant Emmanuel has publicly promoted St. Lucia's CIP program in the United States, including in Florida in 2022 at a private wealth forum and in New York in the fall of 2023 at a

citizenship by investment conference attended by Plaintiff Martinez and other MSR representatives.

112.  This corrupt scheme not only devalues the CIP shares making it more difficult for law-abiding investors to sell their shares, but also causes a massive flood of citizenship shares being allotted and citizenship applications being processed.  Defendant Caribbean Galaxy directs its foreign marketers to sell the passports for as low as USD $65,000.  Then, after the Government of St. Lucia is paid its administrative fees, there is very little money left for Caribbean Galaxy to actually develop the infrastructure project that it promised to develop.  So, the St. Lucia government must grant Caribbean Galaxy additional CIP shares so that the company can collect enough money from the CIP share sales to fund the infrastructure project.  This also causes significant delays in the development of projects intended to benefit the people of St. Lucia.  This is true in St. Kitts and Nevis as well, as this is exactly how the Ramada Hotel project played out.  As a result, Plaintiffs learned from a recorded conversation of Defendant Emmanuel, that there is a backlog in St. Lucia of CIP applications of at least 11,000 applicants.

113.  Defendant Emmanuel is fully aware of the scheme and has done nothing to stop it.  In an audio recording obtained by Plaintiffs, Defendant Emmanuel has full knowledge of the scam, and has taken no steps to stop Defendant Caribbean Galaxy's conduct.

## V.  The Corrupt Citizenship by Investment Schemes are Intended to Dupe the United States and the European Union

114.  One of the biggest, if not the biggest, benefits of a "golden passport" is the ability of passport holders to travel to the United States, United Kingdom, and European Union with visa-free or visa-on-arrival access.  As such, these countries have expressed concern about the corruption within citizenship by investment programs.

115.  In March 2023, the governments of the five Eastern Caribbean countries with citizenship by investment programs met with members of the U.S. Department of the Treasury and Office of Terrorist Financing and Financial Crimes to discuss the threats and challenges faced by the CBI programs and the global risk the programs present. As a result of this meeting, the five Caribbean governments agreed to six CBI principles proposed by the United States to minimize some of

the global risks while continuing the valuable programs that provide much revenue for the Caribbean states. The six principles are:

a. Collective agreement on treatment of denials. Agreement not to process applications for persons who have been denied in another CBI jurisdiction.

b. Interviews. Agreement to conduct interviews of applicants.

c. Additional checks. Agreement that each country will run checks on each application with the Financial Intelligence Unit of its country.

d. Audits. Agreement to audit their CBI programs at least every two years in accordance with internationally accepted standards.

e. Retrieval of passports. Agreement to request law enforcement assistance in retrieving revoked or recalled passports.

f. Treatment of Russians and Belarusians. Agreement to suspend processing applications from Russians and Belarusians.

116.  In October 2023, due to the CBI programs' continued risks, the European Commission sent a proposal to the European Parliament to enact new legislation which would allow the European Union to suspend the visa exemption for third countries that operate an investor citizenship program.  The suspension of visa free and visa-on-arrival access to Europe (or the United States) would diminish the value of Plaintiffs' CBI shares in St. Kitts and Nevis and would put in jeopardy the value of Caribbean citizenship and Plaintiffs' ability to recoup their investment.

117.  In November 2023 the Financial Action Task Force ("FATF") and the Organisation for Economic Co-operation and Development ("OECD") issued a joint report examining the money laundering and financial crime risks associated with citizenship by investment programs, including the risk of fraud, corruption, and bribery.[10] According to the report, CBI programs provide the criminally wealthy with a range of opportunities to place assets and enable to movement of illicit funds.  The report noted that the opportunities for abuse arise

---

[10]    *See* FATF/OECD, *Misuse of Citizenship and Residency by Investment Programmes* (Nov. 2023), https://www.fatf-gafi.org/content/dam/fatf-gafi/reports/Misuse-CBI-RBI-Programmes.pdf.coredownload.pdf.

"when governments struggle to govern their programmes effectively."[11] Further, "[m]align interests can infiltrate programmes when there is a lack of clarity around the roles of public and private actors involved, where conflicts of interest are not adequately managed, and where resources are lacking to ensure proper oversight."[12]  The report also called out certain issues with CBI programs that have plagued both St. Kitts and Nevis and St. Lucia.  Specifically, the report stated that some "programmes have encountered fraudulent schemes recycling the same funds and investments through multiple applicants."[13]  The report warned that "[p]rogrammes appearing vulnerable to criminal abuse may lead to suspension of visa-free travel to third countries and undermine business and international relations."[14]

118.  In light of this risk, Defendants' financing and discounting scheme is intended in part to dupe countries like the United States and those in the European Union.  In an audio recording, Defendant Khan has admitted that the reason that St. Kitts and Nevis will not lower the

---

[11] *Id.* at 5 ¶ 6.

[12] Id.

[13] *Id.* at 6 ¶ 9.

[14] *Id.* at 5 ¶ 6.

legal price of the citizenship shares and thus remove the illegality of the scheme, is because the European Union and the United States require the citizenship shares to maintain a certain minimum price to avoid fraud. If the citizenship by investment countries do not meet the standards of these countries, the United States and the European Union may revoke the beneficial visa status of passports from these Caribbean countries. The systematic underselling allowed by the St. Kitts and Nevis and St. Lucia citizenship by investment programs is intended to mislead the United States and the European Union into believing that the shares are sold at the statutorily mandated price, when in actuality very few—if any—shares are sold at that minimum price so that these countries continue to allow visa-free or visa-on-arrival access.

## VI.   Plaintiffs' Pleas to St. Kitts and Nevis Officials to Address the Corruption

119.   Due to the corruption and Defendant Caribbean Galaxy's discounting scheme, the MSR Entities have refused to sell any citizenships or otherwise participate in the corrupt Caribbean CBI market. Meanwhile, Plaintiffs have accrued (and continue to accrue) interest on loans from American investors who, along with Plaintiffs,

were misled by Defendants into believing that MSR would be investing in a fair and reputable CBI program, which would allow them to recoup the investment spent on filming movies in St. Kitts and Nevis and opening a hotel on St. Kitts.  Accordingly, Plaintiffs pleaded with the St. Kitts and Nevis government to reform the CBI program and end Defendant Caribbean Galaxy's discounting scheme.

120.  One week before the 2022 federal election in St. Kitts and Nevis, Plaintiff Martinez met with then-candidate and future Prime Minister Terrence Drew and informed him of the findings from Plaintiffs' investigation.  Martinez implored Prime Minister Drew at this meeting to address the renewed corruption in the CBI program.

121.  Separately, Plaintiff Martinez sent current Attorney General Garth Wilkin a letter in August 2023 informing him of Plaintiffs' investigation and findings.  During a subsequent meeting with Wilkin, Plaintiff Martinez asked him to open an investigation into corruption within the CBI program, and Wilkin refused to do so, stating that he does not have the power to do so.

122.  The day after Prime Minister Drew's election, Plaintiff Martinez also met with co-conspirator Sylvester Anthony, the Prime

Minister's advisor, and informed him of Plaintiffs' findings.  Despite

multiple requests from Plaintiffs to look at the evidence and open a

criminal investigation in St. Kitts and Nevis into Defendants' conduct,

Anthony refused to do so.

123.   Defendant National Bank also refused to listen to Plaintiffs'

evidence.  In November 2023, Plaintiff Martinez and several MSR

associates in the presence of SKN lawyer Damian Kelsick met with

representatives of Defendant National Bank, including National Bank

Managing Director, Terrence Crossman, to discuss obtaining a

mortgage against MSR Hotel.  Mr. Martinez started the meeting by

discussing the fraudulent scheme perpetrated by Defendant Caribbean

Galaxy, including the money laundering and corruption, at which point

the National Bank officials refused to discuss the subject and abruptly

ended the meeting.

124.   Despite being informed of the corruption involving

Defendant Caribbean Galaxy, the Drew Administration has retained

ties to Defendants Ying Jin and Caribbean Galaxy and has processed

CBI shares sold by Caribbean Galaxy.  In September 2022, Defendant

Ying Jin attended the United Nations General Assembly in New York

as an official guest of the St. Kitts and Nevis delegation.



*Photo of Defendant Ying Jin (second from left, back row) and CS Global founder, Gurdip "Dev" Bath (far left, back row) with St. Kitts and Nevis delegation, including Defendant Denzil Douglas (second from left, front row) and current Prime Minister Terrance Drew (far right, front row) at the United Nations General Assembly in September 2022.*

125.   After realizing that Defendants Ying Jin and Caribbean

Galaxy still held significant influence in the new Drew Administration,

Plaintiff Martinez went to the Cabinet for a discussion about the film

industry in the country.  During that meeting, Plaintiff Martinez

exhorted the Cabinet to expose the corruption in the CBI program

under the past administration.

126.  In November 2022, Martinez met with new Attorney General Garth Wilkin and requested the same.  Attorney General Wilkin knows the entire scheme described herein because Plaintiff Martinez and his associates have described the scheme in great detail.  Attorney General Wilkin has even stated that the fraud[15] committed by Defendants Harris and Caribbean Galaxy represent a "good scam."[16]

127.  These officials knew of Defendants' conduct described herein and refused to act.  After repeated refusals from current St. Kitts and Nevis officials to commence an investigation, Plaintiffs brought the evidence of the fraud orchestrated by Defendant Khan and the threat to American national security to the U.S. government.

## VII.    CBI Program Reform

128.  In July 2023, the St. Kitts and Nevis government under the leadership of Prime Minister Drew passed new legislation that ended the financing and discounting committed by Galaxy.  However, Defendant Douglas and co-conspirator Anthony as members of the

---

[15]    Evidence of Attorney General Wilkin calling the scheme a fraud is attached as Exhibit 2.

[16]    The full conversation in which Attorney General Wilkin admits that the scheme is a "good scam", at 2, as well as evidence that Plaintiffs forwarded these messages to Prime Minister Drew are attached as Exhibit 1.

Drew Administration have continued to support processing CBI shares sold by Defendant Caribbean Galaxy under the discounting and financing scheme even after Prime Minister Drew was elected.  At least 1,500 shares have been processed during Prime Minister Drew's tenure.

129.  Furthermore, Defendant Caribbean Galaxy continues to operate with no reform in St. Lucia and is continuing to harm Plaintiffs by undercutting the price of Caribbean citizenship shares and preventing the MSR Entities from selling their properly obtained shares at the statutorily mandated value.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (Violations of RICO, 18 U.S.C. § 1962(c))
### (Against All RICO Defendants)

130.  Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

131.  At all relevant times Plaintiffs MSR Media International, MSR Media SKN, MSR Hotels, and Martinez each was and is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

132.  At all relevant times, each RICO Defendant was and is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

**The RICO Enterprise**

133.  The RICO Defendants and their co-conspirators are a group of persons associated together in fact for the common purpose of carrying out an ongoing criminal enterprise, as described in the foregoing paragraphs of this Complaint; namely through a multi-year, multi-jurisdictional campaign of corruption, fraud, and money laundering involving the St. Kitts and Nevis CBI program and the St. Lucia CIP program.  The enterprise's goal was to enrich each of its members through the sale of passports under the St. Kitts and Nevis

CBI and St. Lucia CIP programs.  The affairs of the enterprise were intended to, and have in fact resulted in, great financial gain for the RICO Defendants through millions of USD in fees and bribes resulting from the illegal sale of passports for lower than the statutory price.

134.  The RICO Defendants and their co-conspirators constitute an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  Each of the RICO Defendants participated in the operation or management of the enterprise.

135.  At all relevant times, the enterprise was engaged in, and its activities affected interstate and foreign commerce within the meaning of 18 U.S.C. § 1962(c).

**Pattern of Racketeering Activity**

136.  The RICO Defendants conducted or participated, directly or indirectly, in the conduct, management, or operation of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c), including the following acts of racketeering activity:

### *Money Laundering in Violation of 18 U.S.C. § 1956*

137.  The RICO Defendants have engaged in repeated acts of money laundering in furtherance of and to promote the unlawful objectives and activities of the enterprise.  Members of the enterprise knowingly caused the transportation, transmission, and transfer of funds to or from the United States to themselves and other RICO conspirators to promote unlawful activity.

138.  These transactions include:

a.  Each instance that money was transferred from Defendant Caribbean Galaxy to, from, or through National Bank in St. Kitts and Nevis as payment or escrow for a passport sale through its correspondent bank accounts in Miami, either at Bank of America, Wells Fargo, JP Morgan Chase, BNY Mellon, or Standard Charter Bank, constitutes a separate count of money laundering in violation of 18 U.S.C. § 1956. Defendants have committed thousands of counts of money laundering.  Defendant Caribbean Galaxy has sold thousands of CBI shares in China.  Defendant Caribbean Galaxy receives payment from the applicant and then sends

91

the required government fees from the sale through a U.S. intermediary bank to National Bank.  Payments for the CBI applications are made in USD.  Defendant Caribbean Galaxy maintains a USD account in Hong Kong.  It is not possible to transfer USD from Hong Kong to St. Kitts and Nevis without using a correspondent bank in the United States. National Bank maintains intermediary bank relationships with Bank of America, Wells Fargo, JP Morgan Chase, BNY Mellon, and Standard Charter Bank in Miami, Florida, and uses these intermediary bank relationships to transfer USD from a third country into St. Kitts and Nevis.  Therefore, proceeds of all CBI shares sold by Defendant Caribbean Galaxy necessarily passed through Bank of America in Miami.  These transactions include payments of tens of thousands of dollars for St. Kitts and Nevis citizenships by investment spanning from at least 2017 through 2023 that passed through Caribbean Galaxy's U.S.-based accounts at Bank of America, Wells Fargo, and Standard Chartered Bank,

b.  Each instance that money was transferred from Defendant Caribbean Galaxy to Defendant Harris for CBI sales through a U.S.-based bank in USD.

c.  Each instance that money was transferred from Defendant Caribbean Galaxy to Defendant Khan for CBI sales through a U.S.-based bank in USD.

d.  Payments by Defendant Douglas in July and August of 2020 using proceeds from these corrupt transactions to purchase property in Dubai, United Arab Emirates.

### Conspiracy to Commit Money Laundering in Violation of 18 U.S.C. § 1956(h)

139.  The RICO Defendants have engaged in several instances of conspiracy to commit money laundering in violation of 18 U.S.C. §1956(h) in furtherance of and to promote the unlawful objectives and activities of the enterprise.  Members of the enterprise conspired to knowingly caused the transportation, transmission, and transfer of funds to or from the United States to themselves and other co-conspirators to promote unlawful activity.

140.  In one instance in 2018, representatives from the government of St. Kitts and Nevis, Defendant Khan, and

93

representatives from CS Global met in New York to discuss and negotiate the scheme described herein. The meeting occurred in furtherance of the RICO scheme, which, as described above, included thousands of instances of money laundering.

141. On information and belief, Defendants have met in furtherance of and to promote the money laundering scheme and conspired to transfer funds through the United States to promote the unlawful scheme on several additional occasions, including in St. Kitts and Nevis and in St. Lucia.

### *Mail and Wire Fraud in Violation of 18 U.S.C. §§ 1331 and 1343*

142. As alleged herein, the RICO Defendants engaged in a wide-ranging scheme or artifice to defraud the people of SKN and American investors in the CBI program, including Plaintiffs, by conspiring to sell more SKN passports illegally at a rate below the statutory requirement in exchange for kickbacks for each passport unit sold, executed in material part by routing payments through correspondent accounts in the United States to access the U.S. banking system.

## Summary of the Pattern of Racketeering Activity Alleged for Each RICO Defendant

143.  Each of the RICO Defendants has participated in and conducted the affairs of the Enterprise by engaging in multiple predicate acts, as alleged above and summarized immediately below. The conduct of each RICO Defendant constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

144.  Defendant Khan has committed predicate acts, including:

a. Money laundering;

b. Conspiracy to commit money laundering; and

c. Wire fraud.

145.  Defendant Caribbean Galaxy SKN has committed predicate acts, including:

a. Money laundering; and

b. Wire fraud.

146.  Defendant Caribbean Galaxy SLU has committed predicate acts, including:

a. Money laundering; and

b. Wire fraud.

147.  Defendant Ying Jin has committed predicate acts, including:

     a. Money laundering;

     b. Conspiracy to commit money laundering; and

     c. Wire fraud.

148. Defendant Harris has committed predicate acts, including:

     a. Money laundering;

     b. Conspiracy to commit money laundering; and

     c. Wire fraud.

149. Defendant Douglas has committed predicate acts, including:

     a. Money laundering;

     b. Conspiracy to commit money laundering; and

     c. Wire fraud.

150. Defendant Carib Trust has committed predicate acts, including:

     a. Money laundering; and

     b. Wire fraud.

151. Defendant Lawrence has committed predicate acts, including:

     a. Money laundering;

     b. Conspiracy to commit money laundering; and

     c.  Wire fraud.

152.  Defendant National Bank has committed predicate acts, including:

     a.  Money laundering; and

     b.  Wire fraud.

153.  Defendant Emmanuel has committed predicate acts, including:

     a.  Money laundering;

     b.  Conspiracy to commit money laundering; and

     c.  Wire fraud.

## Damages

154.  As a direct and proximate result of Defendants' enterprise's separate and distinct predicate acts in violation of 18 U.S.C. § 1962(c), the members of the enterprise were enriched, and Plaintiffs suffered significant monetary loss and incurred substantial additional costs.

155.  The enterprise's corrupt and illicit scheme significantly undercut the market value of Plaintiffs' citizenship shares valued, at a minimum, at USD $150,000,000 at the time they were initially granted

and prevented Plaintiffs and their American investors from realizing their substantial investment.

156.  Plaintiffs have also incurred millions of dollars in additional interest because they have been unable to realize their investments.

157.  Plaintiffs seek compensatory damages in the amount of USD $150,000,000 plus the cost of additional interest accrued as a result of Defendants' conduct in an amount to be proven at trial.

## **SECOND CLAIM FOR RELIEF**

### **(Pendant Florida State Law Claim: Tortious Interference with Contractual Relationship – Against All Defendants)**

158.  Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

159.  A contract has existed between the MSR Entities and the government of St. Kitts and Nevis whereby the MSR Entities have been granted CBI shares to sell in exchange for filming and producing movies in St. Kitts and Nevis.

160.  Defendants knew about the MSR Entities' contract.

161.  Defendants' conduct as described herein prevented Plaintiffs from realizing the benefit of the contract that was bargained for.

162.  Defendants intended to disrupt performance of the contract because they wanted to sell increased CBI shares at lower prices to enrich themselves.

163.  Plaintiffs incurred damages because they were unable to realize their investment by selling the passport shares they had contracted for and incurred millions of dollars in additional interest on loans.

## THIRD CLAIM FOR RELIEF

### (Pendant Florida State Law Claim: Tortious Interference With a Business Relationship—Against All Defendants)

164.  Plaintiffs reallege and incorporate herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

165.  A business relationship exists between the MSR Entities and potential St. Kitts and Nevis CBI applicants.

166.  Defendants knew of the relationship between the MSR Entities and the potential CBI applicants.

167.  Defendants intended to interfere with the MSR Entities' relationship with the potential CBI applicants.  Defendant Caribbean Galaxy is a direct competitor of the MSR Entities for the sale of CBI shares.  As a result of the corruption described herein, Defendant

Caribbean Galaxy was allowed to sell the CBI shares at a significantly lower price than Plaintiffs.

168.  Plaintiffs incurred damages because they were unable to realize their investment by selling the CBI shares they had contracted for and incurred millions of dollars in additional interest on loans.

## <u>PRAYER FOR RELIEF</u>

169.  For general damages according to proof at trial, trebled according to statute, 18 U.S.C. § 1964(c);

170.  For pre-judgment interest;

171.  For Plaintiffs' reasonable attorneys' fees and costs according to statute, 18 U.S.C. § 1964(c);

172.  For the Court to enjoin Defendants from illegally selling CBI and CIP shares below the statutorily required rates; and

173.  For such other legal and equitable relief as the Court may deem appropriate.

# <u>DEMAND FOR JURY TRIAL</u>

174. Plaintiff respectfully requests a trial by jury.

Dated this 23 day of May 2024.

Respectfully submitted,

_/s/ Lisandra Ortiz_____

Lisandra Ortiz (Bar No. 112108)
Laura Ferguson (*pro hac* motion forthcoming)
William P. Barry (*pro hac* motion forthcoming)
Alexandra S. Prime (*pro hac* motion forthcoming)
Brittany Huamani (*pro hac* motion forthcoming)
MILLER & CHEVALIER CHARTERED
900 16th Street, NW
Washington, DC 20006
Phone: (202) 626-5800
Fax: (202) 626-5801
Email: lortiz@milchev.com

*Attorneys for Plaintiffs*