## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| MSR MEDIA SKN LTD., MSR HOTELS & CO. LTD., MSR MEDIA INTERNATIONAL LLC, and PHILIPPE MARTINEZ, <br><br>           Plaintiffs, <br><br> v. <br><br> LESLIE KHAN, CARIBBEAN GALAXY REAL ESTATE CORP., CARIBBEAN GALAXY REAL ESTATE LTD., YING JIN, TIMOTHY HARRIS, DENZIL DOUGLAS, CARIB TRUST LTD., FARON LAWRENCE, ST. KITTS-NEVIS-ANGUILLA NATIONAL BANK LTD., and MC CLAUDE EMMANUEL, <br><br>           Defendants. | Case No. 8:24-cv-01248-KKM-AAS <br><br> **DEFENDANT ST. KITTS-NEVIS-ANGUILLA NATIONAL BANK LTD.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |

In a Complaint that reads more like a draft screenplay for a B-movie than a short and plain statement of facts showing an entitlement to relief, Plaintiffs conjure a sprawling and ill-defined "scheme" surrounding the Citizenship by Investment ("CBI") program run by the Federation of St. Kitts and Nevis ("St. Kitts"). Nothing in the 102 incoherent pages of pleadings states a claim against the St. Kitts National Bank ("National Bank") or a basis for asserting jurisdiction over a sovereign entity.

*First*, as a sovereign instrumentality majority-owned by St. Kitts, National Bank is immune under the Foreign Sovereign Immunities Act ("FSIA"). 28 U.S.C. §§ 1602, *et seq*. *Second*, Plaintiffs fail to establish personal jurisdiction over National Bank, as their claims do not arise from any conduct the Bank directed at the forum.

*Third*, St. Kitts provides a superior forum for any claims against National Bank. *Fourth*, Plaintiffs fail to state a RICO claim against National Bank because RICO's civil remedy does not extend to the foreign injury asserted here and because Plaintiffs fail to allege RICO standing, any involvement by National Bank in a RICO enterprise, and any predicate violations by National Bank. And *fifth*, the conclusory tortious interference counts fail to state a claim against National Bank.

National Bank respectfully moves separately in accordance with the page limit of Local Rule 3.01(a) and the deadline set by Dkt. 85 because it is uniquely situated among the Defendants as the only regulated bank and only sovereign instrumentality. Joint briefing with non-sovereigns thus presents practical problems and would not facilitate efficient review of the defenses particular to National Bank.

## STATEMENT OF FACTS

### I.    St. Kitts's Citizenship by Investment Program

St. Kitts maintains a CBI program that permits individual foreign investors to apply for St. Kitts citizenship. Dkt. 1 ¶ 54. As part of the program, St. Kitts issues "CBI shares" to private developers that invest in the local economy and permits individuals who purchase CBI shares from the developer to apply for citizenship. *Id.* ¶¶ 56-57. Although Plaintiffs discuss St. Lucia's CBI program as well, Plaintiffs do not plausibly allege any connection between National Bank and St. Lucia, so this motion focuses on the St. Kitts allegations. *Id.* ¶ 26; *cf. id.* ¶¶ 104-13.

Plaintiffs rely on a jumble of conclusory, contradictory, and confusing assertions to support their claims of a "fraudulent scheme." Plaintiffs focus on two

projects sponsored by Caribbean Galaxy SKN ("Caribbean Galaxy"), a Chinese company registered in St. Kitts: (1) the construction of a resort (the "Ramada Hotel"); and (2) the construction of a national jail (the "Jail Project"). *Id.* ¶ 19.

Plaintiffs allege that St. Kitts approved the Ramada Hotel project and issued CBI shares to Caribbean Galaxy in 2014, and that the project ended in December 2021. *Id.* ¶ 83. Plaintiffs vaguely assert that, in the interim, Caribbean Galaxy sold CBI shares for less "than the statutorily required amount," without identifying the statute in question. *Id.* ¶ 69. The only regulation Plaintiffs cite provides that "an application may be submitted" when a person "invests a minimum of US$200,000," but does not prohibit sales below that price. *Id.* ¶ 56; Born Decl. Ex. 1, SRO No. 8 of 2021, Reg. 5(C)(1). Plaintiffs also claim that local law required holding the full purchase price in escrow, and that Caribbean Galaxy and its escrow agent Carib Trust skirted that law by using one deposit for multiple share sales. *Id.* ¶¶ 24-25, 83.

Plaintiffs allege that St. Kitts issued an additional 5,500 CBI shares to Caribbean Galaxy for the Jail Project in 2021. *Id.* ¶¶ 69, 85, 91. Caribbean Galaxy's contract with St. Kitts "allowed" it to sell those shares "for whatever price the company wanted" and "exempted" it from any escrow requirements. *Id.* ¶ 86. Plaintiffs claim that St. Kitts also enacted legislation granting Caribbean Galaxy these "special exemptions" as a result of "corrupt bribes." *Id.* ¶¶ 86-87.

## II.    Plaintiffs' Investment in St. Kitts

Plaintiffs are (1) MSR Media SKN Limited ("MSR Media SKN"), a film production company incorporated in St. Kitts, (2) MSR Hotels & Co Limited

3

("MSR Hotels"), a company incorporated in St. Kitts, (3) MSR Media International, LLC ("MSR Media Int'l"), a film distribution company incorporated in Delaware with no stake in the two local entities, and (4) Philippe Martinez, a U.S. resident who has a partial, indirect stake in the local entities. *Id*. ¶¶ 14-18; Dkt. 19. Although the Complaint often fails to distinguish among Plaintiffs, the few specific factual allegations show that only the two St. Kitts entities – MSR Media SKN and MSR Hotels – were granted CBI shares. Dkt. 1 ¶¶ 57, 62-63.

Plaintiffs claim that Caribbean Galaxy's sale of CBI shares for less than the supposed statutory amount "undercut the market value in the U.S. (a target market for Plaintiffs) and elsewhere" of the local MSR entities' CBI shares. *Id.* ¶ 7. Plaintiffs alternatively claim that, as a consequence, they were "unable to sell any citizenships" or they have "refused to sell any citizenships." *Id.* ¶¶ 12-13, 119. Plaintiffs also contend that they owe unidentified "American investors" "interest on financing" because they "were unable to realize their investments." *Id.* ¶¶ 12-13.

## III.   National Bank's Provision of Ordinary Banking Services in St. Kitts

National Bank is a "financial institution headquartered" in St. Kitts that is majority-owned by the St. Kitts government. Dkt. 1 ¶ 26. Although Plaintiffs assert in conclusory fashion that National Bank "processed transactions under the scheme" and "knew of" the supposed scheme, *id.* ¶¶ 5, 26, the factual allegations describe only National Bank's provision of ordinary banking services to Carib Trust and Caribbean Galaxy, two of the nine other Defendants in this case. Plaintiffs allege that Carib Trust "holds an account at National Bank," which it used to hold a deposit in escrow

for the Ramada Hotel project.  *Id.* ¶ 71.

As for Caribbean Galaxy, Plaintiffs allege that it held an account at National Bank and transferred funds there.  *Id.* ¶¶ 49(a), 59.  According to Plaintiffs, Caribbean Galaxy sold CBI shares for U.S. dollars and deposited those payments in its account at Hang Seng Bank Limited in Hong Kong.  *Id.* ¶ 59.  Caribbean Galaxy then allegedly transferred the requisite citizenship fees for the St. Kitts government from its Hong Kong account to its account with National Bank in St. Kitts via a correspondent bank account in Miami.  *Id.* ¶¶ 5, 58-59, 71, 138(a).

Plaintiffs' vague assertion that National Bank knew about a supposed CBI "scheme" is not supported by any factual allegations.  For example, Plaintiffs cite no support for the legal conclusion that National Bank had a "duty to verify that [the] full and complete legal price" was "actually paid for each CBI share."  *Id.* ¶ 26.  And Plaintiffs suggest that National Bank had insight into payment streams because it "acts as an escrow agent for the CBI program," *id.*, despite alleging that Carib Trust was the "escrow agent for the Ramada Hotel project," *id.* ¶ 24, and that there was no "escrow requirement for . . . the Jail Project," *id.* ¶ 69.  Plaintiffs' remaining allegations of knowledge are vague, or beside the point:  Plaintiffs say unidentified "bank personnel" were "involved" in some unspecified way "in processing CBI shares in their personal capacity," *id.* ¶ 5; the "*former* Chairman of the National Bank" "operates a CBI processing firm" that is not alleged to have processed any allegedly fraudulent applications, *id.* ¶¶ 71, 101 (emphasis added); and the Bank's Managing Director was previously the CEO of a CBI program that is not at issue in

this case, *id.* ¶ 71.  Plaintiffs also allege that they conveyed their unsubstantiated suspicions to National Bank in November 2023, *after* Caribbean Galaxy stopped selling supposedly discounted shares in July 2023.  *Id.* ¶¶ 2, 71, 128.

## ARGUMENT

### I.    National Bank Is Immune from Suit Under the FSIA

Plaintiffs' claims against National Bank must be dismissed for lack of subject matter jurisdiction because National Bank is an instrumentality of a foreign sovereign and is thus immune from suit.  The FSIA is the "sole basis for obtaining jurisdiction over a foreign state," and it provides that foreign states are "presumptively immune" from the jurisdiction of U.S. courts "unless one of the Act's express exceptions to sovereign immunity applies."  *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 30-31 (2015).  As Plaintiffs concede, National Bank is majority-owned by the government of St. Kitts, Dkt.1 ¶ 26, and it thus qualifies as a "foreign state" for purposes of FSIA immunity, 28 U.S.C. § 1603(a)-(b) ("foreign state" includes entities "a majority of whose shares" are "owned by a foreign state").

But Plaintiffs do not cite the FSIA as a basis for jurisdiction, much less show that one of the exceptions to immunity applies.  *See Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312-13 (11th Cir. 2009) (plaintiff bears burden of "producing evidence," via "allegations in the complaint" and "undisputed facts, if any, placed before the court," that exception applies).  Although Plaintiffs assert that "National Bank participated as a commercial actor," Dkt. 1 ¶ 49(d), the so-called "commercial activity exception" is not implicated here because Plaintiffs have not plausibly

alleged the requisite connection between their injuries and National Bank's conduct.

The commercial activity exception's three different prongs[1] each "apply only when the action is 'based upon' the conduct that the exception describes," *i.e.*, conduct by the foreign instrumentality in the United States or that produces a "direct effect" in the United States. *Devengoechea v. Bolivarian Republic of Venez.*, 889 F.3d 1213, 1222-24 (11th Cir. 2018). An action is "based upon" the "gravamen" or "core" of the suit – the "acts that actually injured" Plaintiffs – and is not determined "claim-by-claim," or "element-by-element." *Sachs*, 577 U.S. at 34-35; *see also Africa Growth Corp. v. Republic of Angola*, 2023 WL 3590409 at *1 (11th Cir. May 23, 2023) ("gravamen" is "what injured the plaintiff").

Here, the acts (if any) that supposedly injured Plaintiffs by "undercut[ting] the market value of Plaintiffs' citizenship shares," Dkt. 1 ¶ 155, were Caribbean Galaxy's acquisition and sale of CBI shares, not anything National Bank did. Plaintiffs admit as much by alleging that their claim "***centers on***" the supposedly "corrupt issue of" CBI shares by St. Kitts to "Caribbean Galaxy to be sold illegally at prices that were a fraction of the legal rate." *Id*. ¶ 68 (emphasis added).

Plaintiffs' allegations involving National Bank, namely that Carib Trust held an account at National Bank and that Caribbean Galaxy transferred part of the

---

[1] The commercial activity exception provides that foreign states are not immune where "the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States . . . [that] causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

payments for CBI shares from a Hong Kong bank account to its National Bank account, *supra* Statement of Facts, Section III, are irrelevant because an action is not "based upon" conduct that is ancillary to the acts that actually injured plaintiffs. *E.g.*, *Africa Growth Corp.*, 2023 WL 3590409, at *5 (holding state's expropriation actually injured plaintiff and was thus the suit's "gravamen," not its breach of a subsequent settlement agreement).  Financial transactions that are "entirely incidental to plaintiffs' claim on the merits" – like the alleged transactions involving accounts at National Bank – are no basis for asserting jurisdiction over a sovereign instrumentality.  *EM Ltd. v. Banco Central De La República Argentina*, 800 F.3d 78, 97-98 (2d Cir. 2015) (gravamen was state-owned bank's liability for judgments concerning Argentina's default on certain bonds, not its use of a U.S. bank account "to purchase dollars"); *Kensington Intern. Ltd. v. Itoua*, 505 F.3d 147, 156-57 (2d Cir. 2007) (state-owned oil company's receipt of payments through U.S. branch of French bank were not the gravamen of RICO action challenging company's "alleged scheme" of creating over-collateralized loans to thwart legitimate creditors).

Any attempt by Plaintiffs to rely on the commercial activity exception's third prong also fails for the independent reason that National Bank did not engage in any activity in St. Kitts that caused a "direct effect in the United States."  28 U.S.C. § 1605(a)(2).  Commercial activity abroad has a "direct effect" in the United States only if the effect is "an immediate consequence" of the sovereign instrumentality's acts.  *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 617-18  (1992); *see also Bilalov v. Gref*, 2022 WL 4225968, at *6 (S.D.N.Y. Sept. 13, 2022) (no direct effect

where funds were transferred to United States following alleged expropriation of plaintiff's foreign property); *Frank v. Commonwealth of Antigua and Barbuda*, 842 F.3d 362, 370 (5th Cir. 2016) (sovereign that "may have helped facilitate" sale of fraudulent certificates to U.S. investors by a seller in Antigua did not produce a direct effect on those U.S. investors because the seller's "criminal activity served as an intervening act").  Here, Plaintiffs make no attempt to identify the requisite immediate consequence in the United States of National Bank's provision of basic banking services in St. Kitts.[2]

## II.    The Court Lacks Personal Jurisdiction Over National Bank

For much the same reasons that Plaintiffs cannot establish subject matter jurisdiction, they also cannot establish personal jurisdiction.  *See Harris Corp. v. Nat'l Iranian Radio & Television*, 691 F.2d 1344, 1352-53 (11th Cir. 1982) (applying minimum contacts test to state instrumentality); *see also Devas Multimedia Private Ltd. v. Antrix Corp. Ltd., et al.*, 2023 WL 4884882 (9th Cir. Aug. 1, 2023), *certiorari granted*, Nos. 23-1201 & 24-17 (October 4, 2024).  Plaintiffs do not argue that National Bank is subject to general jurisdiction because the Bank clearly is not "essentially at home" in the United States.  *Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1311-12 (11th Cir. 2022); *see also* National Bank Decl. ¶¶ 3, 5-8, 10-11. Nor is National Bank subject to specific jurisdiction because Plaintiffs fail to show that it "purposefully avail[ed] itself of the privilege of conducting activities within"

---

[2] Even if National Bank were not entitled to immunity under the FSIA, Plaintiffs could not demand a jury trial.  28 U.S.C. 1330(a); *see Williams v. Shipping Corp. of India*, 653 F.2d 875 (4th Cir. 1981).

the United States, much less that Plaintiffs' claims "arise out of or relate to" the Bank's forum contacts. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 352-53 (2021) (requiring "a strong 'relationship among the defendant, the forum, and the litigation'"); *see also Fraser v. Smith*, 594 F.3d 842, 852 (11th Cir. 2010) (courts assess each defendant's contacts separately). On a motion to dismiss, Plaintiffs have "the burden of establishing a *prima facie* case of personal jurisdiction" and of producing evidence to rebut National Bank's affidavit. *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1292 (11th Cir. 2021).

Although Plaintiffs assert in conclusory fashion that National Bank "transact[ed] USD-denominated funds associated with corrupt CBI transactions to and from intermediary U.S. banks," the only transactions that Plaintiffs actually allege are Caribbean Galaxy's transfers of U.S. dollars from its bank account in Hong Kong to its account at National Bank via correspondent accounts in Miami. Dkt. 1 ¶¶ 49(a), 59, 138(a). Such allegations are insufficient because Plaintiffs concede that Caribbean Galaxy – not National Bank – initiated the transfers and claim that Caribbean Galaxy's "wire transfer instructions indicat[ed]" that the funds should be routed through a correspondent bank in the United States, *id.*, ¶ 59. *See Walden v. Fiore*, 571 U.S. 277, 291 (2014) ("unilateral activity" by "a third party" does not "satisfy the requirement of contact with the forum"); *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1324 (S.D. Fla. 2010) (no jurisdiction where "an intermediary bank designates the correspondent bank to receive funds . . . since a third party's activities cannot be used to establish personal jurisdiction"), *aff'd*

439 F. App'x 840 (11th Cir. 2011); *Zapata v. HSBC Holdings PLC*, 2017 WL 6939210, at *3 (S.D. Tex. Oct. 17, 2017) ("account holder's decision to direct money into a particular forum does not subject the bank facilitating the transfer to jurisdiction" there); *cf. Banco Cont'l, S.A. v. Transcom Bank (Barbados), Ltd.,* 922 So. 2d 395, 399-400 (Fla. 3d DCA 2006) (no jurisdiction under Florida's long-arm statute based on foreign bank's use of U.S. correspondent account to issue check to foreign plaintiff).

Plaintiffs also seek to rely on exactly the type of "random, fortuitous," and "attenuated" contacts that are insufficient to establish personal jurisdiction. *Walden*, 571 U.S. at 286. For example, Plaintiffs speculate that thousands of individuals who "may" present "a threat" to U.S. "national security" were granted St. Kitts passports because National Bank did not verify the purchase price. Dkt. 1 ¶ 49(b). Even setting aside the absurdity of that allegation, allegedly failing to verify a purchase price in St. Kitts plainly does not constitute "purposefully reach[ing] out beyond" St. Kitts to "create[] the necessary contacts" with the United States. *Walden*, 571 U.S. at 285-86 (cleaned up). Plaintiffs' allegation that National Bank appointed "an agent for service of process," Dkt. 1 ¶ 49(c), is similarly insufficient. By statute, the agent was appointed for the limited purpose of accepting subpoenas from certain U.S. officials, not for general service of process. *See* 31 U.S.C. § 5318(k)(3)(B). In any event, having "a corporate agent in the forum is not enough to subject the corporation to suit where the cause of action is unrelated to the agent's activities." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000).

Plaintiffs' conclusory allegation that "National Bank's conduct was directed at

Plaintiffs in the United States" does nothing to support their case. Dkt. 1 ¶ 50. The only Plaintiffs who are actually alleged to have received any supposedly devalued shares are in St. Kitts. *Supra* Statement of Facts, Section II.

## III.    Plaintiffs' Claims Against National Bank Should Be Litigated in St. Kitts

The lack of any real connection between Plaintiffs' claims and the United States also merits dismissal under the doctrine of *forum non conveniens*, which permits courts to "dismiss an action on the ground that a court abroad is the more appropriate and convenient forum." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). The Court may dismiss Plaintiffs' claims against National Bank on that basis without addressing subject matter or personal jurisdiction. *Id.*

St. Kitts is both an "adequate" and "available" forum for the claims against National Bank, and a far more appropriate one. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 951-53 (11th Cir. 1997). St. Kitts is available because National Bank is headquartered and incorporated, and thus "amenable to process," there. *Id.* at 951; Dkt. 1 ¶ 26; National Bank Decl. ¶ 3.

Moreover, numerous federal courts have determined that St. Kitts is an adequate forum. *E.g.*, *Zarrelli v. Ross Univ. Sch. of Veterinary Med.*, 2022 WL 4094176, at *2-3 (N.D. Ill. Sept. 7, 2022) (St. Kitts legal system, "derived from the British common law," provides adequate forum for breach of contract and negligence claims); *Wechsler v. Four Seasons Hotels Ltd.*, 2014 WL 2604109, at *2 (S.D.N.Y. June 10, 2014) (St. Kitts adequate forum for personal injury claims). An alternative forum is only inadequate if the remedy provided is so clearly unsatisfactory that it provides

12

"no remedy at all."  *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330-31 (11th Cir. 2011); *see also Don't Look Media LLC*, 999 F.3d at 1299 ("plaintiff's inability to assert a RICO claim in the foreign forum does not preclude" dismissal).  And Plaintiffs cannot seriously dispute that St. Kitts is an adequate forum when they are "currently pursuing" in local courts the "revocation" of passports they believe were unlawfully issued.  Dkt. 1 ¶ 3, n.2; Born Decl. Ex. 2, St. Kitts Complaint.  Pursuing litigation in a foreign forum shows "confidence" in its judicial system.  *Lisa, S.A. v. Gutierrez Mayorga*, 441 F. Supp. 2d 1233, 1238 (S.D. Fla. 2006).

The "public and private factors" also weigh in favor of dismissal here.  *Tazoe*, 631 F.3d at 1331.  The only two Plaintiffs that were allegedly granted devalued CBI shares are in St. Kitts.  Dkt. 1 ¶¶ 14-15, 57; *BCCI Holdings*, 119 F.3d at 952 ("foreign plaintiff's choice of forum deserves less deference").  And Plaintiffs' claims allege violations of local law, impugn St. Kitts consular functions, and could depend on evidence located in St. Kitts including non-party witnesses who may not appear voluntarily.  Such claims should be heard in St. Kitts.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 251 (1981) ("public interest factors point towards dismissal" when a court would have to "untangle problems in conflict of laws, and in law foreign to itself").  The already busy Court should also consider the avoidable burden of adjudicating a multi-defendant litigation that lacks any real connection to Florida.

## IV.   Plaintiffs Fail to State a RICO Claim Against National Bank

To state a RICO claim, Plaintiffs must allege that National Bank "(1) operated or managed (2) an enterprise, (3) through a pattern (4) of racketeering activity that

13

included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020); *Emess Cap., LLC v. Rothstein*, 2011 WL 13214302, at *4 (S.D. Fla. Mar. 9, 2011) (the elements of a RICO claim must be alleged as to each defendant), *R&R adopted*, 2011 WL 13214308 (S.D. Fla. Dec. 21, 2011).  Plaintiffs must also allege a domestic injury to overcome the presumption against extraterritoriality.  *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 346 (2016).  And because Plaintiffs' claims are premised on a supposed "scheme to defraud," Dkt. 1 ¶ 1, "the heightened pleading standards of Rule 9(b) apply."  *Miccosukee Tribe of Indians of Fla. v. Cypress*, 814 F.3d 1202, 1212 (11th Cir. 2015).  Plaintiffs fall far short of these requirements.

### A.   Plaintiffs Seek an Impermissible Extraterritorial Application of RICO

Plaintiffs' claims fail at the outset because their injuries (if any) were felt in St. Kitts, and a RICO plaintiff "must allege" a "*domestic* injury."  *RJR Nabisco*, 579 U.S. at 346.  Determining whether an injury is foreign or domestic is a "context-specific inquiry" that depends upon "the nature of the alleged injury, the racketeering activity that directly caused it, and the injurious aims and effects of that activity." *Yegiazaryan v. Smagin*, 599 U.S. 533, 543-44 (2023).  Here, the "circumstances surrounding the alleged injury," *id.*, all point in one direction: St. Kitts.

Plaintiffs' alleged injury is their failure to "realize" their "investments in the economy of St. Kitts" because the two MSR entities incorporated there – MSR Media SKN and MSR Hotels – were issued CBI shares that they are unable or unwilling to sell.  Dkt. 1 ¶¶ 2, 57, 62-63, 119; *see also id.* ¶¶ 155-56, 163, 168.  These

alleged injuries were obviously felt in St. Kitts by the two local MSR entities, not in the United States. *See Absolute Activist Value Master Fund Ltd. v. Devine*, 233 F. Supp. 3d 1297, 1326 (M.D. Fla. 2017) (dismissing RICO claim because the "injuries were suffered by the plaintiffs" where they "were located – in the Cayman Islands").

Plaintiffs attempt to link their suit to the United States by asserting claims by Mr. Martinez (a U.S. resident) and MSR Media Int'l (a Delaware corporation), but they have not articulated *any* injury – much less a domestic injury – specific to either of them. *See supra* Statement of Facts, Section II.  The allegation that, as a consequence of MSR Media SKN and MSR Hotels' failure to sell CBI shares, unspecified Plaintiffs have accrued "interest on loans from American investors" Dkt. 1 ¶¶ 12, 119, does not identify which entity incurred those costs, and does not assert an injury flowing directly from the alleged violation.  *See Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 155 F. Supp. 3d 1344, 1354-58 (S.D. Fla. 2015) (RICO damages must "flow *directly*" from the predicate act) (citing cases); *infra* at 16-17.

Plaintiffs' allegations of purported racketeering activity also center on St. Kitts. Plaintiffs assert that the supposed "enterprise's scheme centers on the corrupt issue" of CBI shares, that Defendants sought to "defraud the people of St. Kitts," and that passports issued by St. Kitts "should be revoked" and the "ill-gotten gains" "return[ed]" to the state.  Dkt. 1 ¶¶ 1-3; *see also id.* ¶¶ 68-75.  Plaintiffs' allegations that funds were transferred from Hong Kong to Caribbean Galaxy's account at National Bank in St. Kitts via U.S. correspondent banks plainly cannot "turn what otherwise would be a foreign injury into a domestic one."  *Percival Partners Ltd. v.*

*Nduom*, 99 F.4th 696, 703–04 (4th Cir. 2024) (rejecting argument that "the use of United States bank accounts and shell companies to facilitate the theft of foreign funds" rendered injury domestic absent harm to property in the United States).

**B.   Plaintiffs Do Not Have Standing to Pursue Their RICO Claims**

Plaintiffs' claims also fail because they have not alleged that National Bank's supposed RICO violations were both a but-for cause and a proximate cause of their alleged injuries.  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459 (2006).  Plaintiffs may recover only for "harm caused by [the] predicate acts," and there must be a "direct relation between the injury asserted and the injurious conduct alleged."  *Id.* at 457; *see also Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016) (that "an injury is reasonably foreseeable is not sufficient").  Plaintiffs' own allegations establish that there is no such direct relation between National Bank's alleged peripheral role and Plaintiffs' supposed injuries.

Plaintiffs allege a convoluted causal chain by which (1) Caribbean Galaxy sold CBI shares below the "legal rate," Dkt. 1 ¶ 2, (2) the purchasers of the shares then "fraudulently submitted" passport applications to St. Kitts, *id.* ¶ 6, (3) Caribbean Galaxy paid the St. Kitts government the requisite fees, *id.* ¶ 138(a), (4) due diligence companies evaluated the passport applications, *id.* ¶ 3, (5) for purposes of the Ramada Hotel project, Carib Trust issued a letter to St. Kitts authorities stating that payment had been deposited into its escrow account, *id.* ¶ 81, (6) the St. Kitts government approved the applications and issued passports based on those sales, *id.* ¶ 6, and this (7) "undercut the market value" of the "CBI shares that were granted to

16

Plaintiffs" in later years, *id.* ¶ 7, which Plaintiffs speculate impeded sales to potential applicants, which in turn has reduced their revenue from the sale of CBI shares, which resulted in less available cash flow to amortize their loans.

National Bank is alleged to have had, at most, a short cameo in this story, in that Caribbean Galaxy allegedly deposited funds it used to pay government fees to its account at National Bank, *id.* ¶ 84, and escrow agent Carib Trust allegedly held an account at National Bank, *id.* ¶ 71. Even accepting as true the allegations that National Bank provided these banking services, they plainly did not lead "directly" to Plaintiffs' injuries, as is required for RICO liability. *Anza*, 547 U.S. at 461.

Indeed, the causal chain between National Bank's supposed RICO violations and Plaintiffs' alleged injuries is far more remote than ones the Supreme Court has previously deemed insufficient. In *Anza*, for example, a supplier of steel products allegedly defrauded New York by failing to charge sales taxes and used the savings to reduce its prices and undercut a competitor. *Id.* at 454. The Court held that the competitor could not assert a RICO claim because the "direct victim of this conduct was the State of New York," not the competitor. *Id.* at 458. Likewise, here, the "direct victim" – if any – of the alleged scheme is St. Kitts, which allegedly issued passports based on fraudulent applications. Accordingly, Plaintiffs do not have a RICO claim against *any* of the Defendants, let alone against ***National Bank***, which is accused only of providing banking services. *See id.*; *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9-11 (2010) (New York City could not assert RICO claim for lost

17

tax revenue against online vendor that had failed to submit required customer information to the State, making it easier for customers to evade City taxes); *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 142 (2d Cir. 2018) (liquor distributor did not state a RICO claim against competitor that illegally smuggled liquor across state lines, causing retailers to reduce purchases from plaintiff).

Just like in *Anza*, Plaintiffs' "lost sales could have resulted from factors other than" the alleged predicate acts, as companies "lose and gain customers for many reasons." 547 U.S. at 459. For one, Plaintiffs' case assumes there are no honest citizenship applicants who would rather pay full price than file fraudulent citizenship applications. Indeed, it appears that Plaintiffs did not even try to find such applicants, as they simply "refused to sell any citizenships." Dkt. 1 ¶ 119. Also, any lost transaction may have been due to opportunities for citizenship in any of the other four "Eastern Caribbean countries with [CBI] programs." *Id.* ¶ 115; *see Empire*, 902 F.3d at 143 (alcohol distributor may have "lost sales due to bootlegging from states with even lower excise taxes," not alleged smuggling). Given these possibilities, and the attenuated nature of their purported loss, Plaintiffs cannot meet their burden of showing a direct loss arising from National Bank's conduct.

Mr. Martinez and MSR Media Int'l also lack RICO standing because they have not alleged *any* injury, let alone a cognizable injury to their "business or property." Although Plaintiffs allege that the two local entities – MSR Media SKN and MSR Hotels – were granted CBI shares they supposedly cannot sell, Dkt. 1 ¶¶ 57, 62-63, they do not explain how that harmed Mr. Martinez and MSR Media

18

Int'l.  It appears that Mr. Martinez has a partial, indirect stake in the two local entities, Dkt. 19 at 2, but RICO permits shareholders to sue only if they allege "a harm that stands separate and distinct from the harm suffered by the corporation." *Harris v. Orange S.A.*, 636 F. App'x 476, 481 (11th Cir. 2015).  And MSR Media Int'l is not even a shareholder of the two local entities.  *See* Dkt. 19.

## C.   Plaintiffs Have Not Alleged that National Bank "Operated" or "Managed" a RICO "Enterprise"

Plaintiffs' RICO claims against National Bank also fail because they do not plausibly allege that National Bank formed part of a criminal "enterprise," much less that National Bank "operated or managed" any such enterprise.  *Cisneros*, 972 F.3d at 1211.  An association-in-fact enterprise under RICO is "an ongoing organization," whose "various associates function as a continuing unit," sharing both (1) "a common purpose" and (2) "relationships among those associated with the enterprise."  *Ray*, 836 F.3d at 1352.  Plaintiffs here do not even attempt to describe any such "organization," and simply parrot the legal standard by asserting that Defendants "are a group of persons associated together in fact."  Dkt. 1 ¶ 133.  On the contrary, Plaintiffs' allegations show National Bank merely provided ordinary banking services to two customer Defendants.  *Supra* Statement of Facts, Section III.

Plaintiffs nowhere allege the requisite "common purpose."  *Ray*, 836 F.3d at 1352.  Plaintiffs' conclusory assertion that National Bank shared a "goal" to "enrich" the supposed enterprise "members through the sale of passports" is not supported by a single factual allegation.  Dkt. 1 ¶ 133.  Allegations of "wholly innocent activity

19

undertaken as a course of regular business," like Plaintiffs' allegations that National Bank provided banking services, do "not give rise to a plausible inference" that it shared some purpose to defraud. *Ray*, 836 F.3d at 1353 (software vendor that "received a fee for [an] anodyne service" did not share buyer's fraudulent purpose); *see also Cisneros*, 972 F.3d at 1212-16 (no basis to infer franchisor shared franchisee's aims where "allegations simply describe an anodyne franchise business model").

Similarly, Plaintiffs' allegations do not establish that National Bank had "relationships" with the other Defendants such that they "function[ed] as a continuing unit," rather than "merely independently." *Almanza v. United Airlines Inc.*, 851 F.3d 1060, 1067-68 (11th Cir. 2017). Plaintiffs do not allege *any relationship at all* between National Bank and seven of the nine other Defendants. At most, Plaintiffs allege that two Defendants (Caribbean Galaxy and Carib Trust) were National Bank customers that received the same banking services as any other customer. That is not functioning as a "continuing unit" with other members of a criminal enterprise.

In addition, under the "operation or management" test, a defendant must have played "*some* part in directing the enterprise's affairs," "not just [its] *own* affairs," and there is no allegation that National Bank did so here. *Reves v. Ernst & Young*, 507 U.S. 170, 179, 185 (1993). Numerous courts in this Circuit have held that "[s]imply providing financial services . . . is not enough to establish 'operation or management' of an enterprise." *Chi v. MasterCard Int'l, Inc.*, 2014 WL 5019917, at *2 (N.D. Ga. Oct. 7, 2014); *see also Regions Bank v. Kaplan*, 2017 WL 5178754, at *9 (M.D. Fla. Nov. 7, 2017) (bank did not participate in an enterprise just because alleged

enterprise member used its "checking account . . . to carry out" the alleged scheme); *Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.*, 534 F. Supp. 2d 1326, 1338 (S.D. Fla. 2008) ("[b]ankers do not become racketeers by acting like bankers"); *Parm v. Nat'l Bank of Cal.*, 242 F. Supp. 3d 1321, 1346 (N.D. Ga. 2017) (plaintiff "failed to plausibly allege a RICO enterprise" with allegations that defendant "act[ed] as a bank processing electronic transactions"). Plaintiffs here allege nothing more than that National Bank provided banking services.

### D.  Plaintiffs Have Not Alleged Any Racketeering Activity by National Bank

The only predicate offenses Plaintiffs list for National Bank are money laundering and wire fraud, but the Complaint entirely fails to back up those claims with any specific factual allegations. Dkt. 1 ¶ 152.

#### 1.  Plaintiffs Have Not Alleged Any Wire Fraud by National Bank

Plaintiffs fall woefully short of alleging wire fraud with the particularity required by Rule 9(b). Wire fraud "occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the . . . wires in furtherance of that scheme." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). Under the heightened pleading standard, Plaintiffs must allege "(1) the precise statements . . . made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Id.* at 1291. The "complaint must contain sufficient, specific allegations with respect to each defendant rather than lumping all defendants together." *Gov't Emps. Ins. Co. v.*

*Palm Wellness Ctr.*, LLC, 2021 WL 5760734, at *4 (M.D. Fla. Dec. 3, 2021).

In this case, Plaintiffs have not identified any "precise statement" made by National Bank, or by any other Defendant. Plaintiffs thus cannot specify – as they must – when, where, and by whom the statements were made, the "content" of the statements, or the "manner in which [they] misled the Plaintiffs." *Am. Dental*, 605 F.3d at 1291. That is fatal to Plaintiffs' claims. Vaguely gesturing at a supposed "wide-ranging scheme or artifice to defraud the people of SKN and American investors," Dkt. 1 ¶ 142, is exactly what Rule 9(b) forbids.

Plaintiffs also fail to plead the "intent to defraud" "required" by the wire fraud statutes. *United States v. Maxwell*, 579 F.3d 1282, 1302 (11th Cir. 2009). There is no allegation that the Bank, in processing alleged wire transfers in the ordinary course, somehow intended to defraud "the people" of St. Kitts or Plaintiffs. Dkt. 1 ¶ 142. And despite Plaintiffs' assertion that "Defendants have derived substantial financial benefit," *id*. ¶ 53, they do not allege that National Bank received any particular benefit, much less an improper benefit, from the supposed scheme.

### 2. Plaintiffs Have Not Alleged Any Money Laundering by National Bank

Plaintiffs' claims that National Bank is guilty of money laundering under 18 U.S.C. § 1956 based on Caribbean Galaxy's alleged transfers to its National Bank account are similarly unsupported. Plaintiffs do not say which subsection of the statute they are invoking, but suggest it is Section 1956(a)(2), which is inapplicable because Caribbean Galaxy allegedly sent funds from Hong Kong to St. Kitts. Dkt. 1 ¶¶ 59, 137-38. Section 1956(a)(2) "specifically requires a transfer of funds to or

from the United States." *United States v. Tarkoff*, 242 F.3d 991, 994 (11th Cir. 2001).

Plaintiffs likewise have no claim under Section 1956(a)(1) because they fail to "set forth facts showing" that Caribbean Galaxy's transfers to its National Bank account in fact "involved the proceeds of 'specified unlawful activity.'" *Bryan v. Countrywide Home Loans*, 2008 WL 4790660, at *4 (M.D. Fla. Oct. 27, 2008). Section 1956(c)(7) lists the offenses that qualify as "specified unlawful activity," yet Plaintiffs do not cite a particular offense, let alone plead facts establishing the elements of any such offense. Insofar as Plaintiffs rely on their claims of wire fraud, those fail for the reasons discussed above. Insofar as Plaintiffs rely on contradictory assertions that Caribbean Galaxy both sold CBI shares too cheaply and "was exempted" from local rules, Dkt. 1 ¶¶ 3, 86, Plaintiffs fail to identify any activity that is "unlawful" under Section 1956(c)(7). And Plaintiffs make no discernable effort to satisfy the additional requirement to plead facts showing National Bank had "the intent to promote the carrying on of specified unlawful activity." *Bryan*, 2008 WL 4790660, at *4, *6.

Plaintiffs' claim based on money laundering also fails because Plaintiffs do not plead that National Bank "conducted a financial transaction with money [it] knew to be the proceeds of unlawful activity." *Omnipol, a.S. v. Worrell*, 421 F. Supp. 3d 1321, 1352-53 (M.D. Fla. 2019), *aff'd* 32 F.4th 1298 (11th Cir. 2022). As a preliminary matter, "unlawful activity" is defined as "activity that constitutes a felony under State, Federal or foreign law," and Plaintiffs have not identified any such activity at all. *See* 18 U.S.C. § 1956(c)(1). Nor have Plaintiffs plausibly alleged knowledge. Statement of Facts, Section III. Allegations of "routine banking transactions" do not

provide "a sufficient basis to infer" that National Bank knew the transfers involved

proceeds of "unlawful activity." *BCCI Holdings*, 119 F.3d at 950.

## V.   Plaintiffs' Non-Federal Claims Against National Bank Also Fail

Plaintiffs do not even identify the right source of law for their tag-along claims.

Under well-settled choice of law principles, the law of St. Kitts – not Florida – would

apply. *See Grupo Televisa, S.A. v. Telemundo Commc'ns Grp.*, 485 F.3d 1233, 1240

(11th Cir. 2007) (Florida choice of law rules apply to non-federal claims and use the

"most significant relationship" test for tort claims).   For all the reasons set out above,

St. Kitts has the most significant relationship with these claims. *Id.*   Regardless,

Plaintiffs fail to state a claim against National Bank under either body of law.

*First*, Plaintiffs fail to state a claim under St. Kitts law.  St. Kitts law is based

on English common law.  Fed. R. Civ. P. 44.1 (courts may look directly to foreign

legal authorities); Born Decl. Ex. 3, Common Law (Declaration of Application) Act.

To state a claim for inducing breach of contract, Plaintiffs must allege that National

Bank in fact induced a breach of contract and did so intentionally.   *See* Born Decl.

Ex. 4, *Kawasaki Kisen Kaisha Ltd v James Kemball Ltd* [U.K. Court of Appeals 2021]

¶ 21; Ex. 5, *OBG Ltd v Allan* [U.K. House of Lords 2007] ¶¶ 39-44 (no liability "for

inducing a breach unless there has been a breach").   While Plaintiffs identify a

contract between an unspecified "MSR Entit[y]" and St. Kitts, they fail to allege that

National Bank intentionally (and successfully) induced a breach.  Dkt. 1 ¶ 95.

Plaintiffs allege only that they were "prevented" from "realizing the benefit of the

contract," *id.* ¶ 161, without referring to the contract's terms.  Nor do Plaintiffs state

a claim for causing loss by unlawful means as they have not alleged that National Bank intentionally harmed them by interfering with some third party's freedom to deal with Plaintiffs. Born Decl. Ex. 5, *OBG Ltd v Allan*, ¶ 49 (acts against third party qualify as unlawful means only if they are actionable *by the third party*).

*Second*, the outcome is the same under Florida law because the Complaint "merely parrots [] the elements" of the tortious interference claims "without the requisite factual allegations." *Z.M.L. v. D.R. Horton, INC.*, 2021 WL 3501099, at *8 (M.D. Fla. June 11, 2021); *Hodges v. Buzzeo*, 193 F. Supp. 2d 1279, 1286 (M.D. Fla. 2002) (dismissing claim due to "insufficient allegations" of "breach of contract"); *Emergency Recovery, Inc. v. Gov't Emps. Ins. Co.*, 2024 WL 2332167, at *6 (M.D. Fla. Mar. 13, 2024) (dismissing tortious interference with business relations claim where plaintiff failed to identify specific "prospective customers").

## CONCLUSION

For all these reasons, the Court should dismiss the Complaint.

## LOCAL RULE 3.01(G) CERTIFICATION

The undersigned counsel certifies that they conferred by Zoom with opposing counsel about this Motion and Plaintiffs do not consent to the relief sought herein.

| | |
|---|---|
| Dated: October 11, 2024 | */s/ William H. Taft V* |
| William J. Schifino, Jr., Esq. | William H. Taft V, Esq. (*pro hac vice*) |
| Justin P. Bennett, Esq. | Natascha Born, Esq. (*pro hac vice*) |
| Gregory L. Pierson, Esq. | DEBEVOISE & PLIMPTON LLP |
| GUNSTER, YOAKLEY & STEWART P.A. | 66 Hudson Boulevard |
| 401 E. Jackson Street, Suite 1500 | New York, NY 10001 |
| Tampa, Florida 33602 | 212-909-6000 |
| (813) 228-9080 | *Attorneys for Defendant St. Kitts-Nevis-Anguilla National Bank Ltd.* |