## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MSR MEDIA SKN LTD., *et al.*,

     Plaintiffs,

v.

LESLIE KHAN, *et al.*,

     Defendants.

Case No. 8:24-cv-01248-KKM-AAS

## DEFENDANTS' MOTION TO DISMISS ON IMMUNITY GROUNDS

Defendants Caribbean Galaxy Real Estate Corp., Caribbean Galaxy Real Estate Ltd., Ying Jin, Dr. Timothy Harris, the Right Honorable Dr. Denzil Douglas, CaribTrust Ltd., Faron Lawrence, and MC Claude Emmanuel ("Defendants") move for the dismissal of Plaintiffs MSR Media SKN Ltd. ("MSR Media"), MSR Hotels & Co Ltd. ("MSR Hotels"), MSR Media International ("MSR International"), and Philippe Martinez's ("Martinez") (collectively the "Plaintiffs") Complaint filed on May 23, 2024**,** at Docket Entry 1 ("Compl.") because long-standing principles of international law and subject matter jurisdiction render Defendants immune from suit.[1]

---

[1] The parties to this motion, each represented by independent counsel on behalf of *only* their respective clients, file this motion jointly to address jurisdictional, forum, and other issues pursuant to the Court's Order (Doc. 105) directing such a "joint" filing.  No inference should be drawn from this joint motion concerning Defendants' positional alignment, cooperation, or agreement for any purpose other than to comply with the Court's Order.  Each moving party remains independent and, but for the Court's Order, would have separately moved for the requested relief.  Defendants Leslie Khan and St. Kitts-Nevis-Anguilla National Bank Ltd. do not join the motion because Plaintiffs have not yet served Khan and because the National Bank filed a separate motion to dismiss. (Doc. 106.)  For brevity, this motion

## PRELIMINARY STATEMENT

Plaintiffs seek to act as roving prosecutors and impose U.S. law on the legislative acts, policy, and prosecutorial decisions of two foreign nations.  Plaintiffs invite this Court to resolve a foreign political dispute in St. Kitts and Nevis ("St. Kitts") and Saint Lucia, in violation of the Foreign Sovereign Immunities Act ("FSIA"), separation of powers, and international comity principles. The Court should reject the invitation and dismiss the Complaint.

Plaintiffs allege that various foreign government officials, including two Prime Ministers, coordinated with Caribbean Galaxy Real Estate Corp., Caribbean Galaxy Real Estate Ltd. and Ying Jin to commit actions in foreign territories that were supposedly illegal under foreign law.[2]  Plaintiffs' allegations are directed to St. Kitts's and Saint Lucia's political actions, not the private actions of individual defendants in the United States.  Plaintiffs even seek an injunction that would control and limit two foreign nations' ability to administer and execute their own laws, or to administer an investment program that accounts for a significant portion of those countries' gross domestic product.  Compl. (Doc. 1) ¶¶ 54, 172.  Principles of comity, separation of powers, and sovereign immunity militate in favor of dismissal of the Complaint.

---

refers to CaribTrust Ltd. and Lawrence as the "CaribTrust Defendants" and to Caribbean Galaxy Real Estate Corp. as "Galaxy SKN," Caribbean Galaxy Real Estate Ltd. as "Galaxy SLU," and both together as "Caribbean Galaxy."

[2] Allegations in the Complaint are taken as true for purposes of motions to dismiss only.  Defendants reserve all rights to dispute all facts alleged in the Complaint.

## BACKGROUND[3]

St. Kitts is a small country located in the Caribbean.  It is a member of the British Commonwealth and operates on a Parliamentary system.  *The World Factbook: Saint Kitts & Nevis*, Central Intelligence Agency, https://www.cia.gov/the-world-factbook/countries/saint-kitts-and-nevis/ (last updated Oct. 20, 2024).  Although it recognizes the King of England as its titular head of state, the country's executive power rests with its own Prime Minister.  (*Id.*)  Defendants Dr. Timothy Harris and Dr. Denzil Douglas are both former Prime Ministers of St. Kitts and still serve as government officials.  Dr. Douglas served as Prime Minister of St. Kitts from 1995 through 2015 and currently serves as the Minister for Foreign Affairs.  (Doc. 1) ¶ 23. Dr. Harris served as Prime Minister for St. Kitts from 2015 to August 2022 and now serves in Parliament.  (*Id.* ¶ 22.)

To drive foreign investment into the country, St. Kitts adopted a citizenship by investment program (the "SKN CBI Program").  (*Id.* ¶ 54.)  The SKN CBI Program allows a path to citizenship for qualified individuals who make an investment in the country.  Among other avenues, applicants may qualify for the program by investing in a pre-approved infrastructure project.  (*Id.* ¶ 56.)  Under this avenue, a developer of a government-approved project is granted a certain number of "citizenship shares." The developer can then sell those shares to investors.  (*See id.*)

---

[3] Defendants include an extensive recitation of facts in their motion to dismiss under Rule 12(b)(6). Defendants do not duplicate those facts here, but include only the background information relevant to the question of immunity.

St. Kitts has operated the SKN CBI Program for decades, and its revenues represent a significant percentage of the country's GDP.  (Doc. 1) ¶ 54.  Defendant Caribbean Galaxy Real Estate Corp. ("Galaxy SKN") is a real estate development firm based in St. Kitts that has successfully completed several projects approved by the SKN CBI Program.  (*See id.* ¶¶ 19, 83.)  Defendant Ms. Jin is the CEO of Galaxy SKN.  (*Id.* ¶ 21.)  Galaxy SKN currently has an active project for the construction of a jail, for which it was granted citizenship shares.  (*Id.* ¶¶ 65, 69.)  Defendant CaribTrust Ltd. ("CaribTrust") is a trust services business located in St. Kitts.  (*Id.* ¶ 24.)  Defendant Faron Lawrence is alleged to operate CaribTrust.  (*Id.*)  Plaintiffs allege that CaribTrust served as the escrow agent for Galaxy SKN in connection with one of its approved SKN CBI Program projects.  (*Id.* ¶ 24.)

Saint Lucia is a distinct, independent sovereign nation, located about 265 miles southeast of St. Kitts.  (Declaration of MC Claude Emmanuel ("Emmanuel Decl.") ¶ 3.))  It also operates a Citizenship by Investment Program (the "Saint Lucia CIP").  (Doc. 1) ¶ 105.  The Saint Lucia CIP is governed by the Citizenship by Investment Board, appointed by the Saint Lucia Cabinet.  (Emmanuel Decl. ¶ 4.)  The Saint Lucia CIP is administered by the Citizenship by Investment Unit (the "Saint Lucia CIU"), headed by the CEO.  (*Id.*)  The CEO is appointed by the Board with approval of the responsible Cabinet Minister.  (*Id.*)  Defendant MC Claude Emmanuel is the CEO of the Saint Lucia CIU.  (Doc. 1) ¶ 27.  He has served in that role since March 2022.  (*Id.*)

Martinez is a filmmaker and film distributor.  (*Id.* ¶ 17.)  In January 2021, he

formed MSR Media SKN in St. Kitts to begin filming in St. Kitts.  (*Id.* ¶ 61.)  In May 2022, MSR Media SKN received shares in the SKN CBI Program purportedly as an inducement to continue filming movies in St. Kitts.  (*Id.* ¶ 63.)  At the time, Dr. Douglas had been out of the office of the Prime Minister for over six years.  (*See id.* ¶ 23.)  Dr. Harris left the Prime Minister's office just a few months later in August 2022.  (*Id.*)

Also, in December 2022, Martinez purchased a non-operational hotel in St. Kitts.  (*Id.* ¶ 62.)  Plaintiffs allege they purchased the property on non-party Prime Minister Terrance Drew's promise that MSR Hotels would receive additional CBI shares in exchange for purchasing and renovating the hotel.  (*Id.*)  The purchase occurred nearly four months after Dr. Harris left the Prime Minister's office and over seven years after Dr. Douglas' term of office ended.  (*Id.*)  Five months later, in May 2023, MSR Hotels or MSR Media SKN received additional CBI Program shares.  (*Id.* ¶ 63.)[4]

Plaintiffs' investment apparently did not perform to expectations.  They attribute their lack of success to an alleged elaborate conspiracy between officials in St. Kitts and Caribbean Galaxy, resulting in the undercutting of the market for Caribbean citizenship by investment shares in the Caribbean.  (*Id.* ¶¶ 86–87, 128.)  Plaintiffs

---

[4] In Paragraph 63 of the Complaint, Plaintiffs allege that the "MSR Entities" were granted Approved Public Benefactor status and granted 600 shares in the SKN CBI Program.  Only MSR Media SKN and MSR Hotels were Approved Public Benefactors.  (Doc. 1) ¶ 57.  There are no allegations that Martinez or MSR International ever held any SKN CBI Program shares.

generally allege: (1) that Dr. Douglas and Dr. Harris "permitted" Caribbean Galaxy SKN to sell SKN CBI Program shares for less than the statutory minimum (*see id.* ¶ 66); (2) the St. Kitts Cabinet passed a law or approved contracts exempting Galaxy SKN from minimum price laws and escrow requirements in connection with construction of a jail (*see id.* ¶¶ 86–87); (3) St. Kitts awarded Galaxy SKN an unusual number of contracts (*id.* at 85), and (4) that St. Kitts awarded Galaxy SKN a project to construct a jail. (*Id.*)  The remaining allegations amount to little more than a claim that government officials promoted foreign investment in St. Kitts.  (*See, e.g., id.* ¶ 62.)

As to Saint Lucia, the allegations lack any substance.  Plaintiffs allege that: (1) Mr. Emmanuel "allowed" Galaxy SLU to sell Saint Lucia CIP shares at a discounted price (without identifying any relevant statute) (*id.* ¶ 27), (2) that Saint Lucian Ministers allowed Galaxy SLU to sell shares below the statutory price (*id.* ¶107), and (2) that Galaxy SLU executed a "fraudulent scheme" and sold CIP shares at a price below the statutory limit. (*Id.* at ¶¶ 106–107.)

As noted elsewhere, Plaintiffs' claims are also contradictory.  Relevant here, they claim they were duped because they did not know that there was corruption in the SKN CBI Program.  (*Id.* ¶ 66.)  Yet, Plaintiffs also claim that corruption in the SKN CBI Program was a known problem for years before Plaintiffs ever got involved. (*Id.* ¶¶ 9 ("[I]n St. Lucia, the current government has known about the scam for years . . . in 2019 . . . Ernest Hilaire publicly stated his concerns about allowing Defendant Caribbean Galaxy to operate in St. Lucia"); ¶ 8 ("The current government of St. Kitts and Nevis has known about the scheme and failed to take appropriate action to stop

6

the continued corruption.").  As Plaintiffs note, the issue was the subject of local and international press in early May 2022, the same month that MSR Media first received shares in the SKN CBI Program and nearly a year before MSR Hotels purchased a hotel.  (*See id.* ¶¶ 62–63, 65.)

As to Saint Lucia, Plaintiffs allege that Galaxy SLU participated in Saint Lucia's CIP, which Plaintiffs claim is "corrupt" because Galaxy SLU sells shares under the (unidentified) statutory minimum price.  (Doc. 1) ¶¶ 110–11.  They allege that Mr. Emmanuel, CEO of the Saint Lucia CIU, "took no steps to stop" alleged fraudulent conduct, although the Complaint contains no allegations suggesting he had either the authority or the ability.  Further, as noted above, Plaintiffs allege no connection to Saint Lucia at all — they own no property there, hold no investments there, have no connection to the government, are not citizens, hold no Saint Lucia CIP shares, and have no applied to obtain any.  Nor do they allege any connection between the Saint Lucia CIP and the St. Kitts CBI Program, or any other relevant connection.

At their essence, Plaintiffs' allegations amount to disagreements with two sovereign states' legislative, policy, and prosecutorial decisions.  The Complaint rests on claims that the governments and their agents failed to prosecute or enforce their respective laws.  (*See id.*, ¶ 8 ("The current government of St. Kitts has known about the scheme and failed to take appropriate action to stop the continued corruption.").) Plaintiffs simply take issue with the official actions of foreign governments.  (*See e.g., id.* ¶¶ 66, 69–70, 76–77, 80, 86–87.)

Plaintiffs also filed a lawsuit in St. Kitts in an effort to force the government to rescind and cancel all certificates of citizenship associated with Galaxy SKN's jail project, a prayer for relief that overlaps at least in part with the Complaint here. (Declaration of Midge A. Morton ¶ 17.)  Nevertheless, Plaintiffs now seek to have the Court apply U.S. law and opine on the legality of the decisions of foreign sovereigns in areas that are quintessentially and exclusively the province of the sovereigns—the granting of citizenship and the prosecution and administration of their laws.  This Court lacks subject matter jurisdiction to entertain such a suit, and Plaintiffs numerous doctrines sounding in immunity bar Plaintiffs' claims.

## ARGUMENT

## I.   Dr. Douglas Is Entitled to Absolute Diplomatic Immunity.

Dr. Douglas is entitled to diplomatic immunity under the Vienna Convention on Diplomatic Relations ("VCDR") in his capacity as the Minister of Foreign Affairs for St. Kitts[5]  The VCDR, incorporated by reference in the Diplomatic Relations Act, is an international treaty that comprises "an international convention on diplomatic intercourse, privileges and immunities."  *United States v. Al. Sharaf*, 183 F. Supp. 3d 45, 50 (D.D.C. 2016).  Both the United States and St. Kitts have ratified the VCDR. Vienna Convention on Diplomatic Relations, *adopted* June 24, 1964, (ratification dates available at https://treaties.un.org/pages/viewdetails.aspx?src=treaty&mtdsg_no=iii-3&chapter=3&clang=_en) (last visited Nov. 1, 2024).

---

[5] *See* Ministry of Foreign Affairs – Saint Kitts & Nevis, https://www.foreign.gov.kn (last visited October 30, 2024).

The "VCDR provides, to all those entitled, diplomatic immunity 'from criminal prosecution and protection from most civil and administrative actions.'" *Al. Sharaf*, 183 F. Supp. 3d at 50 (quoting *Tabion v. Mufti*, 73 F.3d 535, 537 (4th Cir. 1996)); *see also* VCDR art. 31, ¶ 1 ("A diplomatic agent shall enjoy immunity from the criminal jurisdiction of the receiving State. He shall also enjoy immunity from its civil and administrative jurisdiction[.]"). Thus, the Diplomatic Relations Act "makes pellucid that American Courts must dismiss a suit against anyone who is entitled to immunity under either the VCDR or other laws 'extending diplomatic privileges and immunities.'" *Brzak v. United Nations*, 597 F.3d 107, 113 (2d Cir. 2010) (quoting 22 U.S.C. § 254d)). Accordingly, the claims against Dr. Douglas must be dismissed.

## II.  The Foreign Sovereign Immunity Act Bars the Complaint Against Mr. Emmanuel.

The FSIA, 28 U.S.C. §§ 1330, 1602 *et seq.*, deprives the Court of jurisdiction over a foreign sovereign unless the suit at issue concerns commercial activity of the foreign state. 28 U.S.C. §§ 1604–1605; *Samantar v. Yousuf*, 560 U.S. 305, 313–14 (2010).[6] Ordinarily, the FSIA does not confer immunity over foreign officials. *Samantar*, 560 U.S. at 325. However, where the state is the real party in interest, the FSIA applies to deprive the court of subject matter jurisdiction in a suit against a foreign official, even though the state is not named in the suit. *Id.* at 325 (observing "it may be the case that some actions against an official in his official capacity should

---

[6] Two other exceptions apply for suits for death or personal injury arising from actions related to terrorism, neither of which are relevant here. *See* 28 U.S.C. § 1605.

be treated as actions against the foreign state itself, as the state is the real party in interest."); *Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*, 663 F. Supp. 3d 11, 30 (D.D.C. 2023).

In determining if the state is the real party in interest, courts consider: (1) whether the defendant is sued in his official capacity, and (2) whether the complaint seeks damages from the individual or the state. *See, e.g.*, *Li v. Li*, No. CV 20-2008 (JMC), 2023 WL 2784872, at *4 (D.D.C. Apr. 5, 2023) (applying the FSIA in part because the defendants were sued only in their official capacity and there was no indication the plaintiffs sought damages from the individual defendant); *Photos v. People's Republic of China*, No. 3:20-CV-656-K-BN, 2020 WL 6889016, at *6 (N.D. Tex. Nov. 24, 2020) (applying the FSIA in part because Plaintiffs sued for actions taken in their official capacity in connection with the response to Covid-19).

In *Qandah v. Johor Corp.*, the Sixth Circuit applied the FSIA to affirm the dismissal of an action against the CEO of a government-owned corporation formed to manage the country's investments. No. 20-1991, 2021 WL 5446767, at *6 (6th Cir. Nov. 22, 2021). The Sixth Circuit ruled that the state was the real party in interest because the CEO was sued in her official capacity, the actions complained of were done on behalf of the company, and plaintiffs made only a "general demand for damages without specifying the source." *Id.* at *3, 6.

Such is the case for Mr. Emmanuel. He is the CEO of the Saint Lucia CIP, an arm of the Saint Lucian government. Plaintiffs' allegations all implicate actions and omissions in Mr. Emmanuel's official capacity. *See, e.g.*, (Doc. 1) ¶ 27. The language

of the Complaint demonstrates that the claims are directed entirely at the government of Saint Lucia and not Mr. Emmanuel in his individual capacity. *See, e.g id.* ¶ 9 ("Similarly in St. Lucia, the current government has known about the scam for years.")). The primary allegation against Mr. Emmanuel is that he did nothing to stop an alleged scam being perpetrated in Saint Lucia. *See, e.g., id.* ¶ 113 ("Defendant has full knowledge of the scam and has taken no steps to stop [the] conduct.")). Saint Lucia is the real party in interest and Mr. Emmanuel should therefore be dismissed.

### III. Dr. Harris, Dr. Douglas, and Mr. Emmanuel are Entitled to Immunity as Foreign Officials.

The Court lacks subject matter jurisdiction as to Dr. Harris, Dr. Douglas, and Mr. Emmanuel because they are all entitled to immunity as foreign officials. *See Doe 1 v. Buratai*, 318 F. Supp. 3d 218, 226 (D.D.C. 2018), *aff'd*, No. 18-7170, 2019 WL 668339 (D.C. Cir. Feb. 15, 2019), and *aff'd sub nom. Doe v. Buratai*, 792 F. App'x 6 (D.C. Cir. 2019) ("[F]oreign-official immunity is a question of subject-matter jurisdiction."). Officials of foreign states are immune from "claims arising out of their official acts while in office." *Yousuf v. Samantar*, 699 F.3d 763, 774 (4th Cir. 2012) ("*Yousuf II*"). It extends to all suits against foreign officials for "acts performed in [their] official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state." *Dogan v. Barak*, 932 F.3d 888, 893–94 (9th Cir. 2019) (alteration in quote).

Immunity attaches even if the plaintiff alleges unlawful or wrongful conduct. *Giraldo v. Drummond Co.*, 808 F. Supp. 2d 247, 249 (D.D.C. 2011), *aff'd*, 493 F. App'x

106 (D.C. Cir. 2012) (holding that "mere allegations of illegality do not serve to render an action unofficial for purposes of foreign official immunity."); *Comparelli v. Bolivarian Republic of Venezuela,* No. 14-24414-CIV, 2021 WL 3604725, at *2 (S.D. Fla. Aug. 13, 2021) (same); *see also Burati*, 318 F. Supp. at 233–36 (a foreign official is immunized even for *jus cogens* (fundamental and internationally accepted human rights) violations because to hold otherwise would conflate the issue of immunity with the merits of a claim); *In re Terrorist Attacks on Sept. 11, 2001*, 122 F. Supp. 3d 181, 189 (S.D.N.Y. 2015) (no exception to immunity for violations of *jus cogen* norms).

Evaluating foreign official immunity necessitates a two-step analysis. *Comparelli*, 2021 WL 3604725, at *2. First, the Court must consider any statement by the State Department as to whether the official should receive immunity. *Id.*[7] If the State Department suggests immunity, the Court must dismiss the action for want of jurisdiction. If there is no comment from the State Department or if it suggests no immunity, the Court must conduct its own analysis by determining if the "ground of immunity is one which it is the established policy of the [State Department] to recognize." *Id.* (quoting *Samantar*, 560 U.S. at 312) (alteration in original).

For Dr. Douglas, the Court need go no further than the expressly stated policy of the State Department. The Foreign Affairs Manual for the State Department ("FAM") states: "foreign heads of state, heads of government, and foreign ministers

---

[7] In *Comparelli*, the court issued an order inviting the State Department to provide input concerning the exercise of jurisdiction, but it declined to do so. *Comparelli*, 2021 WL 3604725, at *2. The court subsequently granted the defendant's motion to quash the plaintiffs' subpoena. *Id.* at *3.

enjoy immunity from criminal and civil jurisdiction during their terms of office." 2 FAM § 232.5.[8] Dr. Douglas is the sitting Minister for Foreign Affairs and he is entitled to absolute, status-based immunity.  This ends the analysis.

In addition to the State Department's guidance, Dr. Douglas is entitled to conduct-based foreign official immunity, as are Dr. Harris and Mr. Emmanuel. Foreign official immunity applies when: (1) the actor is a public minister, official, or agent of a foreign state, (2) the relevant acts were taken in the defendant's official duty, and (3) the exercise of jurisdiction would amount to the enforcement of a rule of law against a foreign state.  *Rishikof v. Mortada*, 70 F. Supp. 3d 8, 12 (D.D.C. 2014) (quoting (Restatement (Second) of Foreign Relations Law of the United States § 66 (1985) (internal quotations omitted)); *see also Dogan*, 932 F.3d at 893–94 (same).

### A.     The Complaint concerns conduct by Dr. Harris, Dr. Douglas, and Mr. Emmanuel while they were ministers or agents of foreign states.

<u>Dr. Harris</u>:  The allegations against Dr. Harris all concern conduct allegedly occurring while he was the Prime Minister for St. Kitts.  (Doc. 1) ¶ 22.

<u>Dr. Douglas</u>: The lack of any specific facts concerning Dr. Douglas's alleged wrongdoing makes it impossible to determine if the alleged misconduct occurred during his tenure as Prime (1995–2015) or during his tenure as Minister of Foreign

---

[8] The FAM contains the official guidance, procedures, and policies for the State Department.  22 C.F.R. § 5.5.  It serves as the "single, comprehensive, and authoritative source" for State Department operational policies and procedures.  *See* FAM Home Page, https://fam.state.gov (last accessed Oct. 25, 2024).

Affairs.  Regardless, at all relevant time he held the status of a foreign minister and therefore enjoyed immunity.

<u>Mr. Emmanuel</u>:  Mr. Emmanuel is the CEO of a state-owned company, wholly controlled and owned by the sovereign State of Saint Lucia.  (Emmanuel Decl. ¶ 3–4.) He was appointed by a board, themselves appointed by the Cabinet, the country's highest executive authority.  The Cabinet approved his appointment.  The allegations concern Mr. Emmanuel's actions for and on behalf of Saint Lucia in the administration of Saint Lucia's citizenship by investment program.  *See Rishikof*, 70 F. Supp. 3d at 13 (holding the inquiry focuses on whether the individual acts for the state); *c.f. Sea Breeze Salt, Inc. v. Mitsubishi Corp.*, 899 F.3d 1064, 1069 (9th Cir. 2018) (holding in connection with the act of state doctrine that "it makes no difference for act of state purposes whether that agent is an individual, an agency, or a majority-owned and controlled corporation, so long as the acts in question are official, sovereign acts").

### B.   Plaintiffs' allegations concern conduct taken in the scope of Defendants' official duties.

<u>Dr. Harris and Dr. Douglas</u>:  The allegations against Dr. Harris and Dr. Douglas consist of either: (1) failing to enforce, demand enforcement of, or prosecute the violation of unidentified statutes and regulations, (2) serving as acting head of state during the passage of laws or regulations, or (3) serving as acting head of state when Galaxy SKN was approved for participation in the SKN CBI Program.  These are

clearly actions or omissions taken in the scope of their official duties. There can be no credible argument that such actions were in their individual capacities.

Plaintiffs allege in conclusory fashion that Drs. Douglas and Harris "acted contrary to [their] duties." (Doc. 1) ¶¶ 41, 43. However, that is not the relevant question. Rather, it is whether they are alleged to have acted outside the *scope* of their official duties. Plaintiffs offer no allegation that Drs. Douglas or Harris took any action outside of his official capacity as a government minister.

Mr. Emmanuel: Plaintiffs allege no action at all by Mr. Emmanuel. The sole allegations are that he promoted the Saint Lucia CIP in the United States, *id.* ¶ 111, and that he "has done nothing to stop" the alleged underselling of Saint Lucia CIP shares. *Id.* ¶¶ 112–113. In both instances, even assuming this alleged omission is actionable or true, Mr. Emmanuel would have been acting (or failing to act) as an agent of the State. Plaintiffs direct no allegations to his conduct as a private person.

## C. Adjudication of this Complaint would operate to enforce U.S. law against the official actions of a foreign sovereign.

The gravamen of Plaintiffs' Complaint is that the naturalization of applicants for citizenship was illegal, improper, and invalid. *See* (Doc. 1) ¶ 3 ("Plaintiffs believe that these underpriced and discounted passports were unlawfully obtained, should be revoked. . ."). The United States would not recognize a foreign judgment invalidating

U.S. citizenship. In the interests of international comity, this Court should not impose such a judgment on other independent sovereigns.

Plaintiffs' allegations of foreign government officials' inaction are similarly unavailing. *See, e.g., id.* ¶¶ 63, 80, 86 (alleging Dr. Harris "turned a blind eye" to the sale underpricing of CBI Shares and escrow requirements). These allegations are merely complaints about the prosecutorial decisions of a foreign sovereign, over which this Court lacks jurisdiction.

Accordingly, Dr. Harris, Dr. Douglas, and Mr. Emmanuel are entitled to immunity as foreign officials and the Complaint against them should be dismissed.

## IV. The Act of State Doctrine Bars Plaintiffs' Claims against All Moving Defendants.

The Act of State Doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." *Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251, 1253 (11th Cir. 2006) (internal quotations omitted). "[A] product of judicial concern for separation of powers," the Doctrine stems from the "recognition that it is the province of the executive and legislative branches to establish and pursue foreign policy. . . ." *Id.* It operates to preclude any suit where "a court *must decide*—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign." *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 406 (1990) (emphasis in original); *see also Nnaka v. Fed. Republic of Nigeria*, 238 F. Supp. 3d 17, 32 (D.D.C. 2017), *aff'd,* 756 F. App'x 16 (D.C. Cir. 2019) (the act of state doctrine bars a court from

passing judgment "'upon the legality or illegality. . . of official action by a foreign sovereign performed in its own territory'" (quoting *Riggs Nat'l Corp. & Subsidiaries v. Comm'r of IRS*, 163 F.3d 1363, 1367 (D.C. Cir. 1999)).    This is true regardless of whether the defendants are government officials or private actors.    *See, e.g.*, *Sea Breeze Salt Inc. v. Mitsubishi Corp.*, No. 16-2345, 2016 WL 8648638, at *6 (C.D. Cal. Aug 18, 2016) (finding Mitsubishi, a private entity, could invoke the act of state defense even when no sovereign is a party to the action).

Accordingly, a case must be dismissed where: (1) the conduct is the official act of a sovereign performed in its own territory, and (2) the relief sought "would require a court in the United States to declare invalid the foreign sovereign's official act." *Id.* at *3 (quoting *Credit Suisse v. U.S. Dist. Court*, 130 F.3d 1342, 1346 (9th Cir. 1997)). Official state action is "'conduct that is by nature distinctly sovereign' and 'cannot be undertaken by a private individual or entity.'" *Nnaka*, 238 F. Supp. 3d at 32 (quoting *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1073 (D.C. Cir. 2012) (cleaned up)).

Plaintiffs seek to litigate the validity of foreign government actions in their claims against all of Defendants.    Plaintiffs allege that St. Kitts government officials, in coordination with other non-government defendants, operated a "scheme [that] centers on the corrupt issue of thousands of valuable citizenship shares" by the St. Kitts government. (Doc. 1) ¶ 68.    Plaintiffs allege that the purported scheme involved government actors engaged in affirmative acts—including passing legislation—and the under-enforcement of St. Kitts law.    *E.g., id.* ¶¶ 66, 69–70, 76–77, 80, 86–87.    With

scant detail, Plaintiffs allege that Saint Lucian government officials permitted Galaxy SLU to "conduct a similar discounting scheme. . . ." *Id.* ¶ 27.

Plaintiffs attempt to frame their allegations around the actions of various individuals. But, that does not change the fact that the crux of Plaintiffs' allegations are directed at the acts of the sovereigns. Demonstrating that official acts of the sovereign are central to this suit, Plaintiffs seek an injunction restraining "Defendants"—including many foreign public officials—from "illegally selling" shares pursuant to public programs. *Id.* ¶ 172. Further, Plaintiffs ask this Court to opine on the legality and validity of the legislative actions of duly elected foreign governments, *id.* ¶¶ 69–70, 76–77, 108–13, and adjudge the citizenship and passports of "thousands" of citizens of St. Kitts and Saint Lucia invalid.[9] *Id.* ¶ 3.

At best, Plaintiffs seek to adjudicate the legality of foreign officials' acts under foreign law. *E.g.*, (Doc. 1) ¶¶ 69–70, 76–77, 108–13. At worst, they are asking a U.S. court to invalidate duly enacted foreign legislation, *e.g.*, *id.*, ¶¶ 86–87, on a policy initiative that accounts for up to 60% of St. Kitts' total GDP. *Id.* ¶ 54. Plaintiffs' claims imperil the separation of powers because they would cause this Court to become an active participant in U.S. foreign policy by determining in the validity of foreign

---

[9]  Because Plaintiffs' theory expressly depends on their allegation that current and former government officials' actions in foreign territory were unlawful—indeed, Plaintiffs expressly seek to enjoin foreign officials' actions in foreign territory as invalid under foreign law—this case is markedly different from *W.S. Kirkpatrick & Co. v. Environment Tectonics Corp., International*, 493 U.S. 400 (1990), where the district court's "factual findings" merely "suggest[ed]" the illegality of a foreign contract. *Id.* at 406. In this case, by contrast, Plaintiffs' allegations ensure that the "court *must decide* … the effect of official action by a foreign sovereign." *Id.*

officials' actions under programs that implicate U.S. foreign policy and security. *Id.* ¶¶ 94, 114–18. To the extent that the United States has any place in this foreign political dispute, that responsibility lies with the Executive, not the judicial branch.

Following these principles, Judge Barber applied the Act of State Doctrine in dismissing a similar RICO claim. *Dvoinik v. Philipp*, No. 8:22-cv-1127, 2023 WL 2527009 (M.D. Fla. Mar. 15, 2023). The plaintiffs there claimed that Austrian officials conspired to seize the plaintiffs' property and, in effect, that their acts "were . . . invalid because they were tortious and illegal under Austrian and/or American law." *Id.* at *5. The Eleventh Circuit recently affirmed both that dismissal and its reasoning. *See Dvoinik v. Philipp*, No. 23-12240, 2024 WL 95440, at *4 (11th Cir. Jan. 9, 2024). This Court should dismiss Plaintiffs' similar request to adjudicate the validity of foreign governments' official acts. *See Glen,* 365 F. Supp. 2d 1263 (holding that Act of State Doctrine barred the unjust enrichment and trespass claims against private hotel operator because it implicated sovereign acts of the Cuban government); *Norsul Oil & Mining Co. v. Texaco, Inc.*, 703 F. Supp. 1520 (S.D. Fla. 1988) (applying the Act of State Doctrine to breach of contract claim against private defendant oil companies because the royalties sought violated a resolution passed by the Ecuadorian government).

## **LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to M.D. Fla. L. R. 3.01(g), on October 30, 2024, counsel for Defendants conferred by email with Plaintiffs' counsel regarding this motion and Plaintiffs do not consent to the relief sought herein.

Dated: November 1, 2024                    Respectfully submitted,

By: */s/ Samuel G. Williamson*
Samuel G. Williamson (FBN 1033817)
samwilliamson@quinnemanuel.com
Olga M. Vieira (FBN 29783)
olgavieira@quinnemanuel.com
David A. Nabors (FBN 102477)
davidnabors@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
2601 South Bayshore Drive, 15th Floor
Miami, FL 33133
Telephone: (305) 402-4880
Facsimile: (305) 901-2975

Ryan Landes (admitted *pro hac vice*)
ryanlandes@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Tracy Gao (admitted *pro hac vice*)
tracygao@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

*Attorneys for Defendants Caribbean Galaxy
Real Estate Corporation, Caribbean Galaxy
Real Estate Limited, and Ying Jin*

By: /s/ *Eric R. Breslin*
Eric R. Breslin (admitted *pro hac vice*)
erbreslin@duanemorris.com
**DUANE MORRIS LLP**
200 Campus Drive, Suite 300
Florham Park, New Jersey 07932
(973) 424-2000

Melissa S. Geller (admitted *pro hac vice*)
msgeller@duanemorris.com
**DUANE MORRIS LLP**
1540 Broadway
New York, NY 10036-4086
Telephone: (212) 692-1000

Anoosheh A. Shaikh (FBN 1039830)
ashaikh@duanemorris.com
**DUANE MORRIS LLP**
201 South Biscayne Boulevard, Ste 3400
Miami, Florida 33131
Telephone: (305) 960-2200

*Attorneys for Defendants Timothy Harris and MC
Claude Emmanuel*

By: /s/ *Frank Robert Volpe*
Frank Robert Volpe (*pro hac vice*)
fvolpe@sidley.com
Kenneth A. Polite, Jr. (*pro hac vice*)
kpolite@sidley.com
**SIDLEY AUSTIN LLP**
1501 K Street, NW
Washington, DC 20005
Telephone: (202) 736-8000

Christopher Joyce (FBN 1020006)
cjoyce@sidley.com
**SIDLEY AUSTIN LLP**
1001 Brickell Bay Drive
Suite 900
Miami, Florida 33131
Telephone: (305) 391-5216

*Attorneys for Defendant Rt Hon. Dr. Denzil Douglas*

By: /s/ *Jaimie Nawaday*
Jaimie Nawaday, Esq. (*pro hac vice*)
nawaday@sewkis.com
Jack Yoskowitz, Esq. (*pro hac vice*)
yoskowitz@sewkis.com
Malavika A. Rao, Esq. (*pro hac vice*)
rao@sewkis.com
**SEWARD & KISSEL LLP**
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1215

Richard S. Geller (FBN 106940)
rgeller@fishbacklaw.com
**FISHBACK DOMINICK**
1947 Lee Rd.
Winter Park, Florida 32789
Telephone: (407) 262-8400

*Attorneys for Defendants CaribTrust Ltd. and
Faron Lawrence*

## CERTIFICATE OF SERVICE

I certify that on November 1, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ *Anoosheh A. Shaikh*
Anoosheh A. Shaikh