## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MSR MEDIA SKN LTD., *et al.*,

      Plaintiffs,

v.

LESLIE KHAN, *et al.*,

      Defendants.

Case No. 8:24-cv-01248-KKM-AAS

---

## DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' COMPLAINT BASED ON JURISDICTIONAL AND FORUM ISSUES

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and the *forum non conveniens* doctrine, Defendants Caribbean Galaxy Real Estate Corp., Caribbean Galaxy Real Estate Ltd., Ying Jin, Dr. Timothy Harris, the Rt. Hon. Dr. Denzil Douglas, CaribTrust Ltd., Faron Lawrence, and Mc Claude Emmanuel ("Defendants") jointly move to dismiss Plaintiffs' Complaint (Doc. 1 ("Compl.")).[1]

---

[1] The parties to the joint motions to dismiss Plaintiffs' Complaint, each represented by independent counsel on behalf of only their respective clients, file these motions jointly pursuant to the Court's Order (Doc. 105) directing such "joint" filings. No inference should be drawn from these joint motions concerning the Defendants' positional alignment, cooperation, or agreement for any purpose other than to comply with the Court's Order. Each moving party remains independent and, but for the Court's Order, would have separately moved for the requested relief. Defendants Leslie Khan and St. Kitts-Nevis-Anguilla National Bank Ltd. do not join these motions because Plaintiffs have not yet served Khan and because the National Bank filed a separate motion to dismiss (Doc. 106).

## PRELIMINARY STATEMENT

Plaintiffs' Complaint should be dismissed in its entirety as the Middle District of Florida Tampa Division (the "District") is not the proper forum for Plaintiffs' claims and the Court lacks personal jurisdiction over Defendants.

*First*, the allegations in this case do not concern the District and, accordingly, the action should be dismissed under the doctrine of *forum non conveniens*. The conduct that forms the basis for Plaintiffs' action allegedly occurred in the Eastern Caribbean, namely the Federation of Saint Christopher and Nevis ("St. Kitts") and Saint Lucia; the action focuses on the St. Kitts Citizenship by Investment Programme ("SKN CBI Program") and the Saint Lucia Citizenship by Investment Programme ("Saint Lucia CIP"); Plaintiffs and all Defendants are affiliated with St. Kitts or Saint Lucia in some capacity or reside there; and the vast majority of evidence, including documents and witnesses, are in St. Kitts or Saint Lucia. In sum, the Court need not expend its valuable resources because the courts of the Eastern Caribbean provide both an available and adequate forum for each claim against Defendants. The private and public factors weigh in favor of that forum, and Plaintiffs will suffer no prejudice by filing their action there. Indeed, they already have filed a related action involving similar allegations seeking similar relief in the courts of St. Kitts.

*Second*, the Court lacks personal jurisdiction over Defendants. The Court's

exercise of personal jurisdiction over Defendants is inconsistent with due process because the Defendants do not have the requisite minimum contacts with the United States.  Primarily, Defendants do not reside, do not own property or other assets, do not have bank accounts, and do not operate any businesses in the United States, and Plaintiffs do not otherwise allege sufficient minimum contacts with the United States as to any Defendant.  Consequently, maintaining this lawsuit against Defendants offends traditional notions of fair play and substantial justice and thus should not be permitted.  Plaintiffs' reliance on a group- or conspiracy-based theory of personal jurisdiction cannot cure these jurisdictional defects.

For these reasons, Plaintiffs' Complaint must be dismissed.

## BACKGROUND[2]

Plaintiffs are entities MSR Media SKN Limited ("MSR Media SKN"), MSR Hotels & Co. Limited ("MSR Hotels"), and MSR International (collectively, "MSR Entities") that allegedly engaged in business in St. Kitts, and an individual, Martinez, who allegedly founded MSR Media SKN and MSR Hotels.  (Compl. ¶¶ 14–17.)  Plaintiffs are filmmakers and distributors with operations in St. Kitts.  (*Id.*)  MSR Media SKN and MSR Hotels are participants in the SKN CBI Program.  (*Id.*

---

[2] To avoid redundancies, Defendants provide an in-depth recitation of relevant factual allegations in Defendants' Joint Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rules of Civil Procedure 8(a)(2) and 9(b).  This motion therefore provides only a brief background summary and identification of the parties.

¶¶ 57, 62-63).  Plaintiffs have no investments in Saint Lucia, do not participate in the Saint Lucia CIP, and allege no ownership of shares of that Program.  Broadly, Defendants are alleged to be either foreign entities or individuals with some connection to the SKN CBI Program and the Saint Lucia CIP.  (*Id.* ¶¶ 18–27.)

At its core, the Complaint takes an everyday occurrence—an American investor miscalculating a market in a foreign country—and attempts to recast it as a story of government corruption that consumes the entirety of the SKN CBI program and Saint Lucia CIP.  Martinez casts himself in the role of a would-be enforcer  acting on behalf of those countries in a U.S. federal court.  The 100-page Complaint is simply a catalog of Plaintiffs' numerous grievances with the SKN CBI Program and Saint Lucia CIP.

Essentially, Plaintiffs seek to recoup their failed investment in these foreign government programs through RICO litigation against ten predominantly foreign defendants.  To that end, Plaintiffs assert RICO claims against Defendants, based on alleged predicate acts of money laundering, conspiracy to commit money laundering, and mail and wire fraud.  Plaintiffs also assert tortious interference with contractual relationship and tortious interference with a business relationship claims under Florida law.  Unwilling to make claims in the appropriate forum, Plaintiffs ask a federal court with no interest in this dispute to apply U.S. law to invalidate the actions of independent sovereigns.  Plaintiffs' attempt to recast their

failed foreign investment as a massive RICO conspiracy fails from top to bottom, and their claims cannot be brought in this Court or against these Defendants.

## ARGUMENT

### I.   This Action Should Proceed in St. Kitts and Saint Lucia before the Eastern Caribbean Supreme Court, High Court of Justice.

This Court should decline to exercise jurisdiction and dismiss this case under the doctrine of *forum non conveniens*, which "authorizes a trial court to decline to exercise its jurisdiction, even though the court has venue, where it appears that the convenience of the parties and the court, and the interests of justice indicate that the action should be tried in another forum." *Ford v. Brown*, 319 F.3d 1302, 1306–07 (11th Cir. 2003) (citation and internal quotation omitted); *cf. Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007) (stating that "a federal district court may dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy" under the doctrine of *forum non conveniens*); *cf. Fresh Results, LLC v. ASF Holland, B.V.*, 921 F.3d 1043, 1048 (11th Cir. 2019) ("Under the doctrine of *forum non conveniens*, a district court may decline to exercise its jurisdiction when a foreign forum is better suited to adjudicate the dispute.").

"The 'central purpose' of *forum non conveniens* is 'to ensure that the trial is convenient.'" *Fresh Results*, 921 F.3d at 1048 (quoting *Kolawole v. Sellers*, 863 F.3d 1361, 1369 (11th Cir. 2017)); *see Sinochem Int'l*, 549 U.S. at 430 ("Dismissal for

*forum non conveniens* reflects a court's assessment of a range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality." (citation and internal quotation omitted)).   Accordingly, *forum non conveniens* may justify dismissal even where jurisdictional issues remain unresolved. *Sinochem Int'l*, 549 U.S. at 432 ("A district court therefore may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant.").

A defendant moving to dismiss based on *forum non conveniens* must show: "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001).   When a foreign defendant seeks to dismiss the plaintiff's claims on the grounds of *forum non conveniens*, courts afford greater deference to the forum choice of a U.S. plaintiff but will dismiss the case if it finds "positive evidence of unusually extreme circumstances" and is thoroughly convinced that manifest material injustice will occur. *Wylie v. Island Hotel Co. Ltd.*, 774 F. App'x 574, 578 (11th Cir. 2019) (quoting *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1308 n.7 (11th Cir. 1983)).   Where, as here, "foreign plaintiffs" are the real parties in interest, the "presumption in favor of their forum choice . . . 'applies

with less force.'" *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1339 (11th Cir. 2020) (quoting *Sinochem Int'l*, 549 U.S. at 430).

Here, proceeding in the District would prove oppressive and vexatious to Defendants out of proportion to Plaintiffs' convenience (if there is any) such that manifest injustice will occur if this action continues here. *See id.* at 1338–39. In contrast, proceeding before the Eastern Caribbean Supreme Court would be convenient for all parties. Considering all relevant factors, the Court should dismiss this action on *forum non conveniens* grounds.

### A. The Eastern Caribbean Supreme Court Provides Both an Available and Adequate Forum.

"An alternative forum is adequate if it provides for litigation of the subject matter of the dispute and potentially offers redress for plaintiffs' injuries." *Jiangsu Hongyuan Pharm. Co., v. DI Glob. Logistics Inc.*, 159 F. Supp. 3d 1316, 1329 (S.D. Fla. 2016); *Leon*, 251 F.3d at 1311 ("An alternative forum is available to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be transferred." (citation and internal quotation omitted)); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 951 (11th Cir. 1997) ("Generally, a defendant satisfies the first prong of the analysis by showing that it is amenable to process in the other jurisdiction." (citation and internal quotations omitted)).

The Eastern Caribbean Supreme Court[3] is an appropriate alternative forum because it has jurisdiction over this dispute and provides Plaintiffs with an adequate remedy.  (Declaration of Midge Morton, Doc. 116-1 ("Morton Decl."), ¶¶ 6, 16).[4]

That condition is satisfied here because Defendants reside, work, conduct business, are registered, or can generally be found in St. Kitts or in Saint Lucia. (Compl. ¶¶ 19–25, 27.)  Defendants are thus amenable to process, and the Eastern Caribbean Supreme Court can properly assert jurisdiction.  (Morton Decl. ¶ 6.) Thus, that forum is available to Plaintiffs.

Next, "[a]n alternative forum is adequate if it provides for litigation of the subject matter of the dispute and potentially offers redress for plaintiffs' injuries." *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1382 (11th Cir. 2009).  The alternative forum need "not be a perfect forum" but rather must offer "at least some relief." *Leon*, 251 F.3d at 1311.  Inconvenience to litigants alone does not render a forum

---

[3] The Eastern Caribbean Supreme Court and related trial and appellate courts exercise jurisdiction over the Organization of Eastern Caribbean States ("OECS"), which includes both St. Kitts and Saint Lucia. (Morton Decl. ¶ 7.)  That court can interpret and apply the laws of the member states (meaning both St. Kitts and Saint Lucia), decide civil and criminal matters, and hear appeals. *Id*. Because the courts in St. Kitts and Saint Lucia both operate under the OECS legal system, proceeding in either Circuit would prove substantially similar and more appropriate than proceeding in this District.  While most of the allegations and parties involve St. Kitts, and as Plaintiffs have no basis or standing to bring claims related to Saint Lucia, this motion focuses upon the Eastern Caribbean Supreme Court, in St. Kitts as the appropriate forum. Defendants reserve all claims and defenses that may arise in St. Kitts.

[4] A court may properly consider expert declarations or affidavits to determine foreign law at the motion to dismiss phase.  Fed. R. Civ. P. 44.1 (providing that court can consider "any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence" in determining foreign law); *see also Prewitt Enters. V. OPEC*, 353 F.3d 916, 923 n.11 (11th Cir. 2003) (finding that trial court properly relied on expert affidavits and testimony to determine Austrian law in deciding motion to dismiss).

inadequate, but "extreme amounts of partiality or inefficiency may render the alternative forum inadequate." *Id.* at 1312.

District courts have routinely evaluated the legal system of St. Kitts and found it an adequate alternative forum. *See, e.g.*, *Zarrelli v. Ross Univ. Sch. of Veterinary Med.*, No. 22 C 1277, 2022 WL 4094176, at *2–3 (N.D. Ill. Sept. 7, 2022) (finding St. Kitts an adequate alternative forum for breach of contract and negligence claims); *Suhail v. Trans-Americainvest (St. Kitts), Ltd.*, No. 14-7386(MAS)(DEA), 2015 WL 4598809, at *3 (D.N.J. July 29, 2015) (finding that St. Kitts provided plaintiff with adequate redress); *Wechsler v. Four Seasons Hotels Ltd.*, No. 13 Civ. 8971(RJS), 2014 WL 2604109, at *4 (S.D.N.Y. June 10, 2014) (finding St. Kitts an adequate alternative forum for personal injury claims sounding in negligence); *Archut v. Ross Univ. Sch. of Veterinary Med.*, No. 10-1681 (MLC), 2013 WL 5913675, at *4-6 (D.N.J. Oct. 31, 2013) (finding St. Kitts an adequate alternative forum for a common law breach of contract claim); *Clarke v. Marriott Int'l, Inc.*, No. 2008-086, 2013 WL 4758199, at *7–8 (D.V.I. Sept. 4, 2013) (finding St. Kitts an adequate alternative forum because it applies a common law system based, inter alia, on the British common law).

Nor is there any indication that St. Kitts will show "extreme amounts of partiality or inefficiency," as evidenced by Plaintiffs initiating related litigation in that forum. *Leon*, 251 F.3d at 1312.   As St. Kitts offers Plaintiffs more than "at

least some relief," those courts provide an adequate alternative forum. *Id* at 1311.

Importantly, "a plaintiff's inability to assert a RICO claim in the foreign forum does not preclude *forum non conveniens* dismissal." *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1299 (11th Cir. 2021) (quoting *BCCI Holdings*, 119 F.3d at 952). The fact that particular claims or "beneficial litigation procedures" are not available "does not render an alternative forum inadequate." *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001) (quoting *Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822, 829 (2d Cir. 1990)); *see Jiangsu Hongyuan Pharm. Co.*, 159 F. Supp. 3d at 1329 ("The adequacy of the forum also does not depend on the existence of the identical cause of action in the other forum." (citation and internal quotation omitted)). It is also irrelevant whether litigating in the foreign forum would result in a change in law unfavorable to the plaintiffs. *See BCCI Holdings*, 119 F.3d at 951. Instead, the test is whether the remedy provided by the alternative forum is "so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981). Plaintiffs' RICO claims are predicated on alleged fraud and breach of contract, both of which are recognized in St. Kitts and Saint Lucia and for which damages are available, (Morton Decl. ¶¶ 14-15), making the Eastern Caribbean Supreme Court an adequate alternative forum.

**B.** **Private and Public Factors Weigh in Favor of the Eastern Caribbean Supreme Court as the Appropriate Forum.**

"The second part of the *forum non conveniens* analysis" involves "balancing of the private and public factors." *Fresh Results*, 921 F.3d at 1049. The private factors "pertain to the interests of the participants in the litigation." *Id.* (citation omitted). These include "the relative ease of access to sources of proof," ability to compel witnesses, the possibility to view the premises, the enforceability of a judgment, and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citation and quotations omitted). Access to evidence is the most important private interest of the litigants. *Ford*, 319 F.3d at 1308.

The public factors "pertain to the relative interests of the two fora," *Fresh Results*, 921 F.3d at 1049 (citation omitted), like local court congestion, the local interest in deciding localized controversies, avoiding unnecessary problems in conflicts of laws or the application of foreign law, the unfairness of burdening citizens in an unrelated forum with jury duty, and whether foreign law would apply. *See Piper Aircraft*, 454 U.S. at 241 n.6 (quoting *Gulf Oil Corp v. Gilbert*, 330 U.S. 501, 508 (1947)); *Fresh Results*, 921 F.3d at 1049; *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1333 (11th Cir. 2011). In considering the appropriate forum, a district court must "consider all relevant private and public factors." *Fresh Results*, 921 F.3d at 1052.

### i.      Private Factors

The private factors weigh heavily in favor of St. Kitts and Saint Lucia.  Most notably, virtually all the evidence, including documents, witnesses and physical sites, is in St. Kitts.  Indeed, all Defendants are affiliated with St. Kitts and Saint Lucia in some capacity or reside there, as do the two non-party alleged conspirators (Ernest Hilaire; Sylvester Anthony).  (Compl. ¶¶ 18–29.)  Both the jail and hotel development projects are in St. Kitts.  (*Id.* ¶¶ 83, 85–87.)  As the Eastern Caribbean Supreme Court has greater access to sources of proof, which is "perhaps the most important private interest," dismissal is strongly favored.  *Ford*, 319 F.3d at 1308.  Further, compelling witnesses from the Eastern Caribbean to appear in the District would prove costly and challenging, if not impossible.  By contrast, litigation in St. Kitts would be far more expeditious and efficient, particularly because Plaintiffs themselves maintain a significant presence in St. Kitts.  MSR Media SKN and MSR Hotels are both incorporated, registered to do business, headquartered, and conducting business there (Compl. ¶¶ 14–15), and Martinez has spent considerable time filming several movies there beginning as early as December 2020 (*Id.* ¶¶ 60–66).  All private factors therefore favor proceeding in St. Kitts.

### ii.      Public Factors

The public factors also weigh heavily in favor of proceeding before the Eastern Caribbean Supreme Court, High Court of Justice ("Eastern Caribbean

Supreme Court").  Primarily, this case involves claims against ten Defendants—at least nine of whom have *no ties* to the District—arising almost entirely from alleged acts in the Eastern Caribbean with no local controversy or local interest that need be decided here.  Plaintiffs' claims expressly turn on matters of St. Kitts and Saint Lucia law that the Eastern Caribbean Supreme Court is better suited to resolve.  At its core, this case is about the operation and legality of the SKN CBI Program and Saint Lucia CIP, and it is between parties who are based in or have strong ties to St. Kitts and Saint Lucia.  It would be unfair to deprive the people of St. Kitts and Saint Lucia of the opportunity to have this consequential political dispute decided in their own courts.  Further complicating this case for the Court is the potential for conflicts-of-law issues and the application of foreign law, including as to immunity.

Plaintiffs should not burden the citizens of the District with jury duty for a case that is not grounded here.  Nor should Plaintiffs burden this Court since the judges of the District remain overburdened and congested with some of the nation's highest caseloads per judge while attempting to address cases and controversies that actually arise in the District and substantially affect its citizens.  *See* Max Marbut, *Middle District of Florida among nation's top caseloads*, Jacksonville Daily Record (Jan. 27, 2023), https://www.jaxdailyrecord.com/news/2023/jan/27/middle-district-of-florida-

among-nations-top-caseloads/.  Plaintiffs cannot justify burdening this Court or District jurors with resolving this entirely foreign dispute about whether foreign companies and foreign government officials complied with foreign law.

Indeed, many Defendants are St. Kitts public officials or instrumentalities, and forcing such high-ranking foreign officials to take time away from their work to travel here (assuming that would be possible) would unjustifiably burden the St. Kittian and Saint Lucian governments.  Thus, dismissal is not only appropriate, but it is dictated by principles of international comity.  *See Piper Aircraft*, 454 U.S. at 260–61; *see also Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1312 (11th Cir. 2002) ("[F]ederal courts necessarily must analyze the interest that the foreign country has in the dispute, an analysis that may raise issues of international comity.").  The public factors therefore support St. Kitts as the appropriate forum for this action.

### C.    Plaintiffs' Choice of Forum Is Entitled to Less Deference Than the Choice of a U.S. Citizen.

Plaintiffs include entities doing business in St. Kitts, Defendants include current and former government officials there, and Plaintiffs allege that the conduct at issue—all of which occurred in St. Kitts and Saint Lucia—violated St. Kitts law and Saint Lucia law.  (*See,* e.g., Compl. ¶¶ 6, 14–17, 74, 107, 133).  As noted, the presumption in favor of a plaintiff's forum choice applies with less force to a foreign plaintiff than to a plaintiff who is a U.S. citizen.  *See Otto Candies*, 963 F.3d at 1339.

Here, the principal Plaintiffs are foreign entities whose choice of forum should receive "less" deference: MSR Media SKN and MSR Hotels, both of which are incorporated and do business in St. Kitts.  The other two Plaintiffs—based in the United States—appear to be little more than window dressing, likely added to the Complaint in an attempt to manufacture some sort of connection to the United States.  These two U.S.-based Plaintiffs are Martinez, the individual founder of MSR Media SKN and MSR Hotels, and MSR International, a Delaware entity, which allegedly distributes Plaintiffs' St. Kitts-based films.  Critically, neither Martinez nor MSR International allege any injury at all.

Indeed, Plaintiffs allege that "MSR Media SKN was granted CBI shares" by the St. Kitts Investment Promotion Agency that it allegedly has been unable to sell. (Compl. ¶ 63.)  Plaintiffs also allege that MSR Hotels purchased the OTI Hotel in December 2022, at the suggestion of members of the then current St. Kitts government.  (*Id.* ¶¶ 66.)  But Plaintiffs make no specific allegation that Martinez or MSR Media International was damaged by any Defendants' conduct, or even had a contract to participate in the CBI or CIP  or to sell shares under either program.  Instead, the Complaint repeatedly uses the singular term "MSR Entities" to avoid alleging what *specific* contracts, rights, or entitlements each *specific* Plaintiff allegedly had with the St. Kitts government (and alleges no such contracts, rights, or entitlements with the Saint Lucia government).  For example, paragraph 66 of

the Complaint alleges that "the MSR Entities" were "recognized as Approved Public Benefactors and granted 600 CBI shares." (*Id.* ¶ 63.)  But the Complaint earlier concedes that only MSR Media SKN and MSR Hotels were designated "Approved Public Benefactors."  (*Id.* ¶ 57.) The St. Kitts government website confirms this, showing that only the foreign plaintiffs MSR Media SKN and MSR Hotels—are "Approved Public Benefactors," *not* the U.S.-based Plaintiffs, MSR International or Martinez.[5]

Martinez and MSR International cannot assert an injury based on an ownership in or corporate relationship with the entities in St. Kitts.  *See D'Antonio v. Borough of Allendale*, No. 22-1329, 2022 WL 10965674, at *2 (3d Cir. Oct. 19, 2022); *see also Smith Setzer & Sons, Inc. v. S.C. Procurement Rev. Panel*, 20 F.3d 1311, 1317 (4th Cir. 1994) (a shareholder lacks standing to bring claims belonging to a corporation); *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 736 (2d Cir. 1987) (a sole shareholder "does not have standing to assert claims alleging wrongs to the corporation.").

In sum, Plaintiffs fail to allege that the U.S. Plaintiffs—MSR International or Martinez—suffered any cognizable injury.  As a result, this Court should treat

---

[5] St. Kitts and Nevis Citizenship by Inv. Programme, https://ciu.gov.kn/public-benefit-option/ (last visited Nov. 1, 2024).  "Courts generally take judicial notice of the contents of government publications and website materials," and it is appropriate to do so for this limited purpose here. *Patagonia, Inc. v. Worn Out, LLC*, No. 22-cv-23858, 2023 WL 3172530, at *6 (S.D. Fla. 2023) (collecting authorities); Fed. R. Evid. 201.

the Complaint as if it was filed by the two foreign Plaintiffs, whose choice of forum is entitled to "less deference" than the choice of a plaintiff who is a United States citizen. *See Otto Candies*, 963 F.3d at 1338–39.

### D.   Plaintiffs can Reinstate without Undue Inconvenience or Prejudice.

Finally, Plaintiffs will face no obstacles in reinstating the action in St. Kitts or Saint Lucia. As indicated, the Eastern Caribbean Supreme Court and related trial and appellate courts exercise jurisdiction over the OECS, which includes both St. Kitts and Saint Lucia, and can interpret and apply the laws of member states. (Morton Decl. ¶ 6.) In fact, Plaintiffs have already retained counsel in St. Kitts and availed themselves of the OECS court system by pursuing related proceedings against the current St. Kitts government administration based on substantially similar allegations concerning CBI applications in what Plaintiffs explicitly allege is "the proper forum." (*See* (Compl.) ¶ 3 n.2.)[6] Plaintiffs voluntary use of the courts

---

[6] In that action, MSR Media SKN applied for judicial review against current St. Kitts Prime Minister Terrance Drew in the High Court, St. Kitts Circuit. *See MSR Media SKN Ltd. v. Hon. Terrance Drew*, No. SKBHCv2024/0087. In that proceeding, MSR Media SKN seeks an order of mandamus requiring PM Drew to cancel certificates of citizenship issued in connection with Galaxy SKN's jail project. He seeks similar relief here. That action remains pending.

Separately, in November 2023, Martinez and MSR SKN disseminated a letter falsely accusing Caribbean Galaxy, Jin, Dr. Harris, Khan, and others of committing crimes, including fraud and money laundering, as part of a scheme to unlawfully sell CBI shares. *See In re Martinez*, No. 24-cv-20492, Doc. 1-7 at 17 (S.D. Fla. filed Feb. 7, 2024). To hold Martinez and MSR Media SKN accountable, Galaxy SKN, Jin, and Harris sued for defamation in the Eastern Caribbean Supreme Court in St. Kitts. *Id.*, Doc. 34 at 2. Counsel for Defendants understand that Martinez and MSR did not contest jurisdiction in that action.

in St. Kitts demonstrates both their ability and willingness to seek redress in that forum. *See Lisa, S.A. v. Gutierrez Mayorga*, 441 F. Supp. 2d 1233, 1238 (S.D. Fla. 2006) (considering plaintiff's initiation of several lawsuits in Guatemala in favor of finding Guatemala an adequate alternative forum). Plaintiffs therefore cannot plausibly contend that pursuing claims against these Defendants for allegedly related actions causes them any inconvenience or prejudice. Additionally, the risk of an "inconsistent judgment" in the related proceedings further supports dismissing this action and allowing it to proceed in the forum with the closest connection to the dispute–St. Kitts. *See Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 966, 1002 (2d Cir. 1993).

Based on the foregoing, the Court should dismiss this action on *forum non conveniens* grounds.

## II.    The Court Lacks Personal Jurisdiction over Defendants.

Lastly, the Court lacks personal jurisdiction over *any* Defendant. Whether personal jurisdiction exists is a question of law. *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009). Plaintiffs bear the burden of establishing a "prima facie case of personal jurisdiction" by presenting "enough evidence to withstand a motion for directed verdict." *Stubbs v. Wyndham Nassau Resort & Crystal*

*Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).[7] "A federal court's jurisdiction over a defendant depends on the existence of a constitutionally sufficient relationship between the defendant and the forum, and the defendant's amenability to service of process in that court." *Brink's Mat Ltd. v. Diamond*, 906 F.2d 1519, 1521 (11th Cir. 1990). Here, Plaintiffs fail to establish a basis for personal jurisdiction over Defendants under Rule 4(k)(2) because no constitutionally sufficient relationship exists between *any* Defendant and the United States.

"In a narrow class of 'federal question' cases, the jurisdictional reach of the court is extended by Rule 4(k)(2), 'which functions as a sort of federal long-arm statute.'" *In re Lupron Marketing & Sales Practices Litig.*, 245 F. Supp. 2d 280, 288 (D. Mass. 20003) (quoting *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 36 (1st Cir. 1999)); *see Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (classifying Rule 4(k)(2) as "the national long-arm statute"). Rule 4(k)(2) permits the aggregation of a foreign defendant's nationwide contacts where the defendant is not amenable to jurisdiction in any specific state. *Oldfield*, 558 F.3d at 1218. The claim must arise under federal law and the exercise of jurisdiction must

---

[7] Plaintiffs have not met their burden. To the extent necessary for the Court's analysis, however, Defendants submit declarations asserting facts contrary to Plaintiffs' allegations. *See* Notice of Filing Declarations (Doc. 116) and accompanying exhibits. This shifts the burden back to Plaintiffs to produce evidence supporting personal jurisdiction. *See Don't Look Media*, 999 F.3d at 1292 ("When a defendant submits non-conclusory affidavits to controvert the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence to support personal jurisdiction.").

be "consistent with the Constitution and laws of the United States."  *Id.*

Jurisdiction is consistent with the Constitution and laws of the United States if it comports with due process; mainly, the Fifth Amendment's Due Process Clause. [8]  *Consol. Dev. Corp.*, 216 F.3d at 1291.  "The exercise of personal jurisdiction comports with due process if the non-resident defendant has established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Oldfield*, 558 F.3d at 1220 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  For purposes of Rule 4(k)(2), the United States provides the applicable forum for the minimum contacts analysis.  *Id.* at 1220.

Though Rule 4(k)(2) was implemented to fill a gap in the enforcement of federal law in international cases, it is a "rare occurrence" for a court to invoke jurisdiction under Rule 4(k)(2).  *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1150 (S.D. Fla. 2019).

Because the exercise of personal jurisdiction over Defendants is inconsistent with due process, Plaintiffs' claims should be dismissed.

---

[8] "[C]ourts should analyze personal jurisdiction under the Fifth Amendment using the same basic standards that apply under the Fourteenth Amendment." *Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 535 F. Supp. 3d 1299, 1306 (S.D. Fla. Apr. 27, 2021), *aff'd* 43 F.4th 1303, 1308 (11th Cir. 2022).  The lone difference between the Amendments' due process analyses" is that the "applicable forum" under the Fifth Amendment is the United States, "not the state in which the district court sits." *Id.* at 1310.

### A.  Plaintiffs Cannot Establish Personal Jurisdiction as to Any Individual Defendant.

#### i.  General Jurisdiction

The Court's exercise of general personal jurisdiction under Rule 4(k)(2) requires a showing of contacts between a defendant and the United States that are "pervasive, continuous, and systematic." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010).  By contrast, the Eleventh Circuit has made clear that, "[w]hen a defendant's contacts with the United States are confined to intermittent purchases, limited self-promotion, and a few narrow relationships with American businesses, the exercise of nationwide general jurisdiction over that defendant [under Rule 4(k)(2)] would 'offend traditional notions of fair play and substantial justice[.]'" *Id.* (quoting *Helicopteros*, 466 U.S. at 414).  The provision of services to American citizens outside the United States likewise fails to "establish 'continuous and systematic general business contacts between the defendant and the forum,'" as "[a] defendant's business contacts with foreign tourists are not, by themselves, contacts with the tourists' home forum." *Id.* at 849 (quoting *Consol. Dev. Corp.*, 216 F.3d at 1292).  Nor, as explained below, should a relationship with a correspondent bank provide a basis for general jurisdiction.

#### ii.  Specific Jurisdiction

To establish specific jurisdiction over Defendants under Rule 4(k)(2), Plaintiffs must satisfy the following three elements of the minimum-contacts test

with the nation as a whole: (1) the Defendant must have contacts related to or giving rise to Plaintiffs' claims; (2) the Defendant must, through those contacts, have purposefully availed himself of forum benefits; and (3) the Defendant's contacts with the forum must be such that the Defendant could reasonably anticipate being haled into court here. *Fraser*, 594 F.3d at 850; *Associated Transp. Line, Inc. v. Prods. Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1074 (11th Cir. 1999). Importantly, in cases involving foreign defendants, courts consider the unique burdens thrust upon one who must defend oneself in a foreign legal system, as the primary concern of the fairness analysis is the burden placed on the defendant. *Oldfield*, 558 F.3d at 1221.

### iii.   Individual Defendants

#### a.   Caribbean Galaxy and Ying Jin

Both Galaxy SKN and Galaxy SLU are Chinese companies with principal places of business outside of the United States. (Compl. ¶¶ 19–20.) Jin is likewise a Chinese citizen.[9] (*Id.* ¶ 21.) Plaintiffs do not allege that Caribbean Galaxy have any offices, business licenses, development projects, or other business dealings in Florida or anywhere else in the United States. Instead, Plaintiffs claim that Caribbean Galaxy and Jin's alleged wire transfers from one foreign bank to another

---

[9]   Plaintiffs asserted that Jin has conducted business from New York and California and "maintains a residence in California" (Compl. ¶¶ 21, 39b). However, more recently, Plaintiffs have contended that Jin "does not appear to reside" at this California address. (Doc. 76 at 11.)

through an intermediary U.S. bank  is enough to satisfy due process.[10]  But that jurisdictional theory does not withstand scrutiny.

"[W]iring money into [the forum] is insufficient contact with [the forum] to justify personal jurisdiction and comply with the Due Process Clause" even when the forum is the end destination for the wired funds. *Daccache v. Quiros*, No. 16-21575-CIV-MORENO, 2018 WL 2248409, at *15 (S.D. Fla. May 15, 2018) (collecting cases), *vacated on other grounds*, *sub. nom. Daccache v. Raymond James Fin., Inc.*, 2019 WL 9654842 (S.D. Fla. Mar. 5, 2019). Here, Plaintiffs allege even less than that insufficient forum contact: they assert personal jurisdiction over Caribbean Galaxy and Jin based on alleged wire transfers from one foreign bank to another, with the funds momentarily passing through Florida as an intermediate step. That "fortuitous" and "attenuated" connection to the forum is not enough. *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990); *see Casio Comput. Co., Ltd. v. Sayo*, 2000 WL 1877516, at *26 (S.D.N.Y. Oct. 13, 2000) (rejecting argument that defendants' alleged wire transfers "to, from, or through" the forum "satis[fied] the level of minimum contacts required" by due process). Indeed, at least one court in this Circuit has squarely held that a defendant "did not purposefully avail itself of

---

[10] "RICO's nationwide service of process provision," 18 U.S.C. § 1965, "does not supply a statutory basis for personal jurisdiction," because, among other reasons, Plaintiffs "did not serve Caribbean Galaxy or Jin "in accordance with that provision." *Don't Look Media*, 999 F.3d at 1292–94 (holding that § 1965 "does not authorize service outside the United States" and that defense counsel's acceptance of service on behalf of foreign defendant "did not waive the right to challenge personal jurisdiction").

the privilege of conducting activities" in the forum when its "sole 'contact'" with the forum "was to route, via wire transfer the monies used to purchase shares" through that state "for further transfer to [an] offshore account." *Steinberg v. A Analyst Ltd.*, No. 04-60898-CIV, 2009 WL 838989, at *5 (S.D. Fla. Mar. 26, 2009).[11]  The same is true here.

Plaintiffs' vague allegations that Caribbean Galaxy sold CBI and CIP shares "in the United States, including through U.S.-based servicers" are similarly inadequate.[12]  (Compl. ¶¶ 35b, 37b.)  They supply no facts about the "quality, nature, and extent of the activity in the forum" that would support an inference that this purported U.S. contact was more than sporadic or attenuated. *Sea-Lift,* 792 F.2d at 993.  Indeed, "the existence of a contract between the foreign defendant and a resident of the forum" does not "automatically amount to 'purposeful availment,'" especially without allegations concerning "negotiations of important terms" or some "in-forum performance." *Id.* at 993–94.  If anything, Plaintiffs suggest that "U.S.-based servicers"—*not* Caribbean Galaxy—availed themselves of the forum. Plaintiffs' vague allegations that Jin "conducted business" on

---

[11]  Although *Steinberg* applied New York's long-arm statute, that statute is "construed[] … to the limits of due process," so the analysis applies equally here. *Id.* at *4.
[12]  Similarly, Plaintiffs allege that Khan, Dr. Harris, Dr. Douglas, and Jin had "phone calls, … meetings, and in-person discussions about the CBI program and associated scheme." (Compl. ¶ 73.)  Aside from conclusory allegations that these individuals met once in New York while participating in the United Nations General Assembly, Plaintiffs do not allege any detail about the substance of these supposed calls, meetings, and discussions, or when and where they occurred. (*Id.*)  This, too, is insufficient. *Sea-Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 993 (11th Cir. 1986).

unspecified occasions in the United States likewise fail (Compl. ¶¶ 35c, 39b), because "[t]he mere 'foot-fall' of the defendant's agents 'on the State's soil' does not … invoke the benefits and protections of the laws of the forum." *Sea-Lift*, 792 F.2d at 993. Plaintiffs' claims also do not arise out of or relate to Caribbean Galaxy and Jin's purported contacts with the United States. *Oldfield*, 558 F.3d at 1222-23 ("Necessarily, the contact must be a 'but-for' cause of the tort[.]"); *Associated Transp. Line,* 197 F.3d at 1074–75.

Plaintiffs have no alternative basis on which to establish personal jurisdiction. In intentional torts cases, courts "may apply" the "effects test" articulated in *Calder v. Jones*, 465 U.S. 783 (1984), "in lieu of, or in addition to," the traditional due process test. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013). Under the "effects test," a nonresident's tortious act can justify jurisdiction if "the tort (1) was intentional; (2) was aimed at the forum …; and (3) caused harm that the defendant should have anticipated would be suffered in the forum." *Id.* (alterations adopted).

Plaintiffs cannot satisfy the effects test, either. Plaintiffs do not plausibly allege that Caribbean Galaxy or Jin (or any other Defendant) "aimed" their conduct "at the forum," that they committed any tort in the forum, or that they "caused harm that they should have anticipated would be suffered in the forum." *Id.* Plaintiffs do not allege that they are domiciled in the forum, and in any event,

"mere injury to a forum resident is not a sufficient connection to the forum." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). No matter which due process test applies, Plaintiffs cannot meet it. Plaintiffs' claims should therefore be dismissed against Caribbean Galaxy and Jin.[13]

### b.    Dr. Harris

Similarly, Plaintiffs cannot establish personal jurisdiction as to Dr. Harris, who has no ties to the United States.

Plaintiffs proffer three categories of purported contacts by Dr. Harris: (1) the alleged receipt of cash that may have passed through another party's correspondent account, (2) alleged attendance at one meeting in the United States at which the SKN CBI Program was allegedly discussed, and (3) "conducting business" related to the enterprise while in New York. (Compl. ¶ 41.) As an initial matter, Dr. Harris maintains no bank account in the United States. (Declaration of Dr. Timothy Harris, Doc. 116-2 ("Harris Decl."), ¶ 3.) Plaintiffs allege instead that he received cash payments that were transferred into the country by another party through a

---

[13] Caribbean Galaxy and Jin's intervention in Plaintiffs' § 1782 actions does not subject them to jurisdiction here. In those proceedings, Caribbean Galaxy and Jin expressly reserved their right to raise all defenses in this action, including for lack of jurisdiction and improper venue. *In re Martinez*, Doc. 39 at 3; *see Aldini AG v. Silvaco, Inc.*, No. 21-cv-06423, 2022 WL 20016826, at *12 (N.D. Cal. Aug. 3, 2022) (finding defendants did not waive personal jurisdiction defense by intervening in § 1782 action where defendants expressly reserved right to raise personal jurisdiction defense in separate case); *Santiago v. NSI Ins. Grp., Inc.*, No. 05-22307-CIV, 2006 WL 8433177, at *6 (S.D. Fla. July 10, 2006) (defendant did not consent to personal jurisdiction by seeking relief in separate case given the defendant's "limited appearance and its posture" in the other case).

correspondent account.  (Compl. ¶ 41(b).)  As this contemplates no actual action by Dr. Harris, it cannot serve to establish purposeful availment.  *See Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 643 (2d Cir. 2023) ("Simply transacting in U.S. dollars does not make a defendant bank amenable to suit in New York.").

Furthermore, even if Plaintiffs had alleged that Dr. Harris utilized a correspondence account, jurisdiction still does not attach because the use of a correspondent account, standing alone, does not confer jurisdiction.  *See, e.g., Hau Yin To v. HSBC Holdings PLC*, No. 15CV3590, 2017 WL 816136, at *7 n.6 (S.D.N.Y. 2017) (dismissing for lack of personal jurisdiction where wiring of U.S. dollars through correspondent accounts was "passive, rather than 'integral' to the alleged" fraud); *Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd.*, No. 14cv5216, 2015 WL 4164763, at *4 (S.D.N.Y. July 10, 2015) (routing of U.S. dollar wire payment through N.Y. correspondent account was "adventitious," not purposeful use of forum).

Plaintiffs next allege that Dr. Harris attended a meeting in New York to discuss resolving a lawsuit with the exclusive marketing agent for the SKN CBI Program, CS Global.  (Compl. ¶ 100.)  This meeting appears to have no connection or relevance to the purported scheme with Caribbean Galaxy.[14]  Further, although

---

[14] This allegation cuts against the Complaint's premise.  Plaintiffs allege that CS Global's removal would assist Caribbean Galaxy.  (*Id.* ¶ 99.)  Yet, Plaintiffs also allege that Dr. Harris advocated for the dismissal of the suit that would have removed CS Global from its position, undermining

Plaintiffs do not put a date on the meeting, such meeting likely predated Plaintiffs'
entry into the SKN CBI Program.  Plaintiffs and Dr. Harris overlapped only three
months between May and August 2022.  Thus, Plaintiffs' claims cannot have arisen
from this meeting.

This one meeting is also insufficient to establish jurisdiction in the United
States.  To reiterate, the "mere 'foot-fall'" of the defendant on the forum's soil does
not invoke the benefits and protections of the laws of that forum.  *Sea Lift*, 792 F.2d
at 993.  The inquiry of whether contacts with a forum relate to a claim requires an
analysis of "the direct causal relationship among 'the defendant, the forum, and the
litigation.'"  *Oldfield*, 558 F.3d at 1222 (quoting *Helicopteros*, 446 U.S. at 414).

Plaintiffs' conclusory claims that Dr. Harris "conducted business, including
from New York" likewise lacks the requisite specificity to establish jurisdiction.
*Leon v. Continental AG*, 301 F. Supp. 3d 1203, 1216 n.6 (S.D. Fla. 2017) (finding
allegations that defendant conducted "substantial business" in the district too
devoid of specificity to state a prima facie case for jurisdiction); *Bulpit, LLC v.
DeCanio*, No. 2:13-CV-14119, 2013 WL 12126313, at *4 (S.D. Fla. June 7, 2013)
(allegations that defendant conducted business in all fifty states insufficient to
establish personal jurisdiction); *Vision Int'l Prod. Inc. v. Liteco S.R.L.*, No. 06-61462-

---

any claim that Dr. Harris and Caribbean Galaxy were working together for a common purpose in
a RICO enterprise.  (*Id.* ¶ 100.)

CIV, 2007 WL 9700539, at *5–7 (S.D. Fla. Aug. 8, 2007) (finding formulaic recitation that defendant offered goods for sale in the district insufficient to state jurisdiction). Plaintiffs therefore failed to establish personal jurisdiction as to Dr. Harris.

### c.   Dr. Douglas

Likewise, Dr. Douglas does not have the requisite minimum contacts with the United States, and consequently, the maintenance of this lawsuit against him would offend traditional notions of fair play and substantial justice. Plaintiffs allege that Dr. Douglas engaged in nominal acts subjecting him to personal jurisdiction in the United States (Compl., ¶¶ 43–44, 53, 73), but these acts are far from adequate to establish the minimum necessary contacts to satisfy either general or specific jurisdiction under Rule 4(k)(2).

As to general jurisdiction, Plaintiffs allege merely that Dr. Douglas' actions of bringing Caribbean Galaxy into St. Kitts impacted U.S. investors' ability to realize an investment; he accepted a fee in USD for every CBI share sold through CS Global; Defendants collectively used Miami branches of correspondent banks, including Bank of America, Wells Fargo, BNY Mellon, and JP Morgan Chase; and he and the other Defendants engaged in "business in furtherance of the scheme" during a single diplomatic or official trip to New York to participate in the United Nations General Assembly. (*Id.* ¶¶ 43–44, 53, 73.)

These alleged contacts are not sufficiently "pervasive, continuous, and systematic" to establish general jurisdiction over Dr. Douglas. *See Fraser*, 594 F.3d at 849–50. In particular, the bare allegation that Defendants used USD and Miami branches of correspondent banks does not establish jurisdiction. *See*, *e.g.*, *Daccache*, 2018 WL 2248409, at *15 (S.D. Fla. May 15, 2018) (finding "wiring money into [the forum] is insufficient contact with [the forum] to justify personal jurisdiction and comply with the Due Process Clause" even when the forum is the *end* destination for the wired funds); *Hau Yin To*, 2017 WL 816136, at *7 n.6; *Cmty. Fin. Grp.*, 2015 WL 4164763, at *4. Further, the alleged provision of services to American citizens outside the United States and limited interaction during a single trip to the United States in connection with official duties at the United Nations General Assembly does not establish the pervasive contacts necessary to establish general jurisdiction. Moreover, Dr. Douglas is entitled to full diplomatic immunity while appearing and promoting the interests of St. Kitts as a temporary representative during the United Nations General Assembly. *See Tachiona v. U.S.,* 386 F.3d 205, 214–20 (2d Cir. 2004). Dr. Douglas also does not engage in other actions, such as residing in the United States, owning property in the United States, maintaining a personal bank account, engaging in or carrying on a business venture, or having an office or agency in Florida or elsewhere in the United States that would provide a basis for general jurisdiction over him. (*See* Declaration of

Dr. Denzil Douglas, Doc. 116-3, ("Douglas Decl."), ¶¶ 7-11.)

Plaintiffs' same threadbare allegations do not establish specific jurisdiction over Dr. Douglas. His alleged contacts do not give rise to Plaintiffs' causes of action, do not show that Dr. Douglas purposefully availed himself of forum benefits, and do not establish that Dr. Douglas could reasonably anticipate being haled into court here. Dr. Douglas's trip to New York to attend the United Nations General Assembly and purported use of Miami branches of correspondent banks do not give rise to Plaintiffs' RICO or tortious interference claims. Such limited activity also does not show that Dr. Douglas purposefully availed himself of any benefits of the United States by performing official or diplomatic duties in a single visit to the United States and allegedly using local branches of correspondent banks. Dr. Douglas also should not have anticipated being haled into court in the District because of such activities, as these activities have no bearing on Plaintiffs' claims. Given the lack of minimum contacts and as a matter of fairness, the Court should not require Dr. Douglas to litigate Plaintiffs' claims in this foreign legal system, but instead, the Court should dismiss Plaintiffs' claims for lack of personal jurisdiction.

### d.  CaribTrust Defendants

Plaintiffs similarly fail to establish personal jurisdiction as to the CaribTrust Defendants. The Complaint contains a *single factual allegation* relating to personal jurisdiction as to the CaribTrust Defendants, which is that they provided CBI

consultation services for clients potentially seeking to obtain access to the United States after obtaining a St. Kitts passport.  (Compl. ¶¶ 45(a), 47(a).)  Although the Complaint frames this as "direct[ing] business at the United States" (*id.*), it is no such thing—it is providing escrow agent services to clients who may themselves, at a later date, choose to travel to the United States among many other countries they have access to with a St. Kitts and Nevis passport.[15]  Such alleged contacts are far "too attenuated" and speculative to support personal jurisdiction.  *Herederos*, 535 F. Supp. 3d at 1306.  Indeed, if such a speculative theory, premised only on *clients who might at some point in the future be interested in travel to the U.S.*, sufficed to allege personal jurisdiction, small business operators worldwide, no matter how local their operations, would be unfairly subject to costly litigation in U.S. courts.

At most, CaribTrust maintains a website that could be accessed by potential clients in the United States, but it contains no targeted advertising directed toward them.  (Declaration of Jacqueline Lawrence, Doc. 116-4 ("Jacqueline Decl."), ¶ 13.)  In fact, to date, CaribTrust has serviced *no* clients or generated any revenue from clients in the United States, further evincing that it does not "direct business" to this forum.  (Jacqueline Decl. ¶ 14.)  *See Turi v. Stacey*, No. 5:13-cv-248, 2014

---

[15] Additionally, recipients of a St. Kitts passport are legally required to obtain a visa to travel to the United States.  *See, e.g.*, Ministry of Foreign Affairs, Citizens of Saint Kitts & Nevis need visas to travel to these countries, https://www.foreign.gov.kn/citizens-of-st-kitts-nevis-need-visas-to-travel-to-these-countries/ (last visited October 23, 2024).  This visa application process does not guarantee entry into the United States, further evincing how tenuous Plaintiffs' theory is to support personal jurisdiction.

U.S. Dist. LEXIS 181228, at *41-42 (M.D. Fla. Nov. 25, 2014) ("while all of the distributors' websites likely are as accessible from Florida as they are from any other state or anywhere in the world where Internet access is available, such accessibility does not amount to 'purposeful availment' of conducting activities with Florida" or deem to be sufficient activity to "find minimum contacts"), *report and recommendation adopted,* 2015 WL 403228 (M.D. Fla. Jan. 28, 2015).

The remaining purportedly jurisdictional allegations either pertain to acts outside the United States or are stated in entirely conclusory terms and should not be credited. For instance, Plaintiffs allege that Lawrence "acted as a courier of cash payments" to Dr. Harris and Dr. Douglas (Compl. ¶¶ 25, 47(b), 87), but this is not alleged to have occurred in the United States. The Complaint also alleges that the CaribTrust Defendants "conducted business related to the enterprise during the entire period at issue" (*id.* ¶ 45(b), 47(c)), but alleging contacts with an "enterprise" or as part of a conspiracy fails to satisfy any personal jurisdiction standard. Even where conspiracy claims are alleged in a complaint, a defendant's relationship with the forum "must arise out of contacts that the defendant *himself* creates with the forum[.]" *Walden*, 571 U.S. at 284 (cleaned up & emphasis in original).

Additionally, the conclusory allegation that the conduct of the CaribTrust Defendants was "directed at Plaintiffs in the United States" (Compl. ¶¶ 46, 48) should not be credited, especially given that Plaintiffs allege no facts suggesting that

these defendants' conduct—routine escrow agent activity—was directed at anyone in the United States, much less Plaintiffs.  To the extent that Plaintiffs suggest some downstream effects were felt in the United States, these, too, would be insufficient. A defendant's actions, not the effects resulting from those actions, are what matters for personal jurisdiction.  *See Herederos*, 43 F.4th at 1311 (determining the "incidental effects of a defendant's actions are not by themselves sufficient to justify jurisdiction over the defendant in the forum") (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295–96 (1980) (finding no jurisdiction where the only contact was injury in the forum)).

Given the paucity of jurisdictional facts pleaded, application of the minimum contacts test is abbreviated.  There simply are *no contacts* alleged with the United States, so there could be *no minimum contacts* that demonstrate the CaribTrust Defendants "purposefully availed" themselves of this forum, and the Court's analysis *can end here*.  *See, e.g.*, *Castillo v. Allegro Resort Mktg.*, 603 Fed. App'x 913, 916 (11th Cir. 2015) (conclusory allegations that a foreign company had contacts with Florida were insufficient to establish minimum contacts with the state).

An exercise of jurisdiction in this case would also surely offend notions of fair play and substantial justice.  It is undisputed that CaribTrust is an escrow agent operating exclusively in St. Kitts and that Lawrence resides in St. Kitts.  (Compl.

¶¶ 24-25.)   Additionally, neither CaribTrust nor Lawrence have operated, conducted, or engaged in or carried on a business venture, or had an office or agency in Florida or elsewhere in the United States.   (Declaration of Faron Lawrence, Doc. 116-5 ("Lawrence Decl."), ¶ 10; Jacqueline Decl. ¶ 7).   CaribTrust has serviced *no* clients nor generated any revenue from clients in the United States.  (Jacqueline Decl. ¶ 14.)   While the Complaint asserts in a conclusory fashion that all Defendants derive "substantial financial benefit" by using banks located in Miami (Compl. ¶ 53), neither CaribTrust nor Lawrence maintain a bank account in any bank operated in the United States.   (Lawrence Decl. ¶ 5; Jacqueline Decl. ¶ 4.)

The burden to litigate in Florida would be substantial, given that the CaribTrust Defendants are both located in St. Kitts.   (Compl. ¶¶ 24-25.)  Allowing this action to go forward against the CaribTrust Defendants, who have zero contacts with this forum and this country, would subject them to a deeply unfair burden.   The claims against them should be dismissed.

### e.   Emmanuel

Finally, Plaintiffs fail to establish personal jurisdiction as to Emmanuel.  Plaintiffs allege only that Emmanuel promoted the Saint Lucia CIP in the United States on two occasions.   (Compl. ¶ 51, 111.)   This does not satisfy the minimum contacts test.   *See Sea Lift*, 792 F.2d at 993 (finding that the "mere 'foot-fall'" on the

forum's soil does not invoke jurisdiction).  First, Plaintiffs claims do not relate to or arise from these two conferences.  Again, whether contacts give rise to a claim requires an analysis of "the direct causal relationship among 'the defendant, the forum, and the litigation,'" *Oldfield*, 558 F.3d at 1222 (quoting *Helicopteros*, 446 U.S. at 414), or whether a claim relates to the defendant's contacts with that forum. *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023) (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361–62 (2021)).  For but-for causation to exist, there must be a causal link between the contact and the alleged tort and additional circumstances that would suffice to put a defendant on notice that he may be subject to jurisdiction in the United States.  *Oldfield*, 558 F.3d at 1223.

Plaintiffs can neither show but-for causation nor establish that the claim relates to Emmanuel's contacts with the United States.  No Plaintiff  owns *any* shares in the Saint Lucia CIP.  No Plaintiff  took any action because of these conferences.  No Plaintiff  can allege their position changed because of these conferences.  Plaintiffs do not allege any of the purported fraudulent action took place at any of these conferences.  If Emmanuel had elected to stay home, no material aspect of the Complaint would change.  Plaintiffs cannot show but-for causation or that any claim relates to Emmanuel's contacts with the United States.

Nor can Emmanuel's limited contacts constitute his purposeful availment

of the United States as a forum.  Limited or discrete solicitation in the forum, without more, does not rise to the level of purposeful availment.  *Sea Lift*, 792 F.2d at 994 (noting that courts have found purposeful availment where there is solicitation coupled with an expectation of either a continuing relationship or in-forum performance by the plaintiff).  Even a meeting in the forum to discuss a contract that was eventually executed may not suffice to establish jurisdiction.  *Id.* at 993–94 (finding no jurisdiction where discussion of a "boilerplate" contract in Florida involved no significant negotiations of important terms).  As Plaintiffs cannot establish personal jurisdiction over Emmanuel (or any other Defendant), Plaintiffs' claims should be dismissed.

### B.    Plaintiffs Cannot Establish Personal Jurisdiction Based on a Group- or Conspiracy-Based Theory.

Plaintiffs cannot cure their inability to establish personal jurisdiction as to any Defendant individually by relying on the pervasive group pleading in the Complaint to establish jurisdiction.  *Andres v. Raytheon Techs. Corp.*, No. 21-61757-Civ-Scola, 2022 WL 1015489, at *3 (S.D. Fla. Apr. 5, 2022) (defendants cannot be lumped together without distinction to establish personal jurisdiction).  Plaintiffs also cannot premise personal jurisdiction on a conspiracy theory among Defendants because Rule 4(k)(2) does not allow for jurisdiction on a conspiracy-based theory.  *Schrier v. Qatar Islamic Bank*, 632 F. Supp. 3d 1335, 1366–67 (S.D. Fla. 2022) (collecting cases and noting this is the general view among the federal

courts and that "[n]o federal court in the country … has *ever* applied a conspiracy-based theory of jurisdiction under Rule 4(k)(2)").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss the Complaint with prejudice.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to M.D. Fla. L. R. 3.01(g), on October 30, 2024, counsel for Defendants conferred with Plaintiffs' counsel via email regarding this motion, and Plaintiffs oppose the requested relief.

Dated: November 1, 2024                    Respectfully submitted,


By: /s/ Christopher D. Joyce
Frank Robert Volpe (*pro hac vice*)
fvolpe@sidley.com
Kenneth A. Polite, Jr. (*pro hac vice*)
kpolite@sidley.com
**SIDLEY AUSTIN LLP**
1501 K Street, NW
Washington, DC 20005
Telephone: (202) 736-8000

Christopher Joyce (FBN 1020006)
cjoyce@sidley.com
**SIDLEY AUSTIN LLP**
1001 Brickell Bay Drive
Suite 900
Miami, Florida 33131
Telephone: (305) 391-5216

*Attorneys for Defendant Rt. Hon. Dr. Denzil Douglas*

By: <u>/s/ *Melissa S. Geller*</u>
Eric R. Breslin (admitted *pro hac vice*)
erbreslin@duanemorris.com
**DUANE MORRIS LLP**
200 Campus Drive, Suite 300
Florham Park, New Jersey 07932
(973) 424-2000

Melissa S. Geller (admitted *pro hac vice*)
msgeller@duanemorris.com
**DUANE MORRIS LLP**
1540 Broadway
New York, NY 10036-4086
Telephone: (212) 692-1000

Anoosheh A. Shaikh (FBN 1039830)
ashaikh@duanemorris.com
**DUANE MORRIS LLP**
201 South Biscayne Boulevard, Ste 3400
Miami, Florida 33131
Telephone: (305) 960-2200

*Attorneys for Defendant Timothy Harris and MC
Claude Emmanuel*

By:  /s/  *Samuel G. Williamson*
Samuel G. Williamson (FBN 1033817)
samwilliamson@quinnemanuel.com
Olga M. Vieira (FBN 29783)
olgavieira@quinnemanuel.com
David A. Nabors (FBN 102477)
davidnabors@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
2601 South Bayshore Drive, 15th Floor
Miami, FL 33133
Telephone: (305) 402-4880
Facsimile: (305) 901-2975

Ryan Landes (admitted *pro hac vice*)
ryanlandes@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Tracy Gao (admitted *pro hac vice*)
tracygao@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

*Attorneys for Defendants Caribbean Galaxy
Real Estate Corporation, Caribbean Galaxy
Real Estate Limited, and Ying Jin*

By: /s/ Jaimie Nawaday
Jaimie Nawaday, Esq. (*pro hac vice*)
Jack Yoskowitz, Esq. (*pro hac vice*)
Malavika A. Rao, Esq. (*pro hac vice*)
**SEWARD & KISSEL LLP**
One Battery Park Plaza
New York, New York 10004
(212) 574-1215
nawaday@sewkis.com
yoskowitz@sewkis.com
rao@sewkis.com


Richard S. Geller (FBN 106940)
rgeller@fishbacklaw.com
**FISHBACK DOMINICK**
1947 Lee Rd.
Winter Park, Florida 32789
Telephone: (407) 262-8400

*Attorneys for Defendants CaribTrust Ltd. and*
*Faron Lawrence*

## CERTIFICATE OF SERVICE

I certify that on November 1, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ *Christopher D. Joyce*
Attorney